NO. 26-1067

# United States Court of Appeals
## for the First Circuit

MIKHAEL EL-BAYEH,
*Plaintiff-Appellant*,

*v.*

MASSACHUSETTS DEPARTMENT OF STATE POLICE; MICHAEL P. SIERRA, in the individual capacity and official capacity as a uniformed member of the Massachusetts Department of State Police; COLLEEN OGILVIE, in the official capacity as Registrar of Motor Vehicles; MARIAN T. RYAN, in the official capacity as Middlesex County District Attorney; GEOFFREY NOBLE, in the official capacity as Colonel of the Massachusetts Department of State Police; JONATHAN GULLIVER, in the official capacity as Highway Administrator of the Massachusetts Department of Transportation,
*Defendants-Appellees.*

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

# BRIEF OF DEFENDANTS-APPELLEES COLLEEN OGILVIE, MARIAN T. RYAN, GEOFFREY NOBLE, AND JONATHAN GULLIVER

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*
Hannah C. Vail, 1st Cir. No. 1191161
*Assistant Attorney General*
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, Massachusetts 02108
(617) 963-2512
email: hannah.vail@mass.gov

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ........................................................................................1

ISSUES PRESENTED..................................................................................2

STATEMENT OF THE CASE.......................................................................3

I. El-Bayeh's 2018 Traffic Citation........................................................3

A. Traffic Fine And Civil Motor Vehicle Infraction Appeal ..........3

B. Related State Court Proceedings...............................................3

II. El-Bayeh's 2021 Traffic Citation........................................................4

A. Traffic Fine And Civil Motor Vehicle Infraction Appeal ..........4

B. Collateral Litigation ....................................................................6

1. State Court ........................................................................6

2. Federal Court ....................................................................7

a. Complaint ...............................................................7

b. Allegations Regarding The Other Citations Issued By Sierra....................................................8

c. District Court Opinion...........................................9

SUMMARY OF THE ARGUMENT ..........................................................10

ARGUMENT .............................................................................................11

I. The District Court Correctly Concluded that the Claims Against the Commonwealth Defendants Are Barred By Sovereign Immunity ..........................................................................11

A. Sovereign Immunity Precludes El-Bayeh's Claims .................12

B. The *Ex parte Young* Exception Does Not Apply......................13

1. The Adjudication of the 2021 Citation Is Not an Ongoing Violation of Federal Law.................................13

2. El-Bayeh Seeks Only Retrospective Relief to Avoid Liability for a Past Traffic Violation...................16

II. The District Court's Judgment May Be Affirmed on the Alternate Ground that El-Bayeh's Claims are Barred By Abstention Doctrines and Res Judicata...............................................18

A. El-Bayeh's Request to Enjoin Ongoing State Court Proceedings Violates the Abstention Doctrines .......................18

B. El-Bayeh's Claims Are Barred By Res Judicata ......................21

1. Judgment Should Be Affirmed Because Claim Preclusion Bars El-Bayeh's Claims................................22

2. Issue Preclusion Bars El-Bayeh's Claims ......................25

III. The District Court's Judgment May Be Affirmed On the Alternate Ground that the Complaint States No Plausible Claim for Relief Against the Commonwealth Defendants ............................26

A. The Statute of Limitations Bars El-Bayeh's Claims.................27

B. El-Bayeh's Complaint Does Not Plausibly Allege Any Constitutional Violation By the Commonwealth Defendants .........................................................................28

CONCLUSION ..........................................................................................32

ADDENDUM ............................................................................................35

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 28-29

*B & B Hardware, Inc. v. Hargis Indus., Inc.,* 575 U.S. 138 (2015) .......... 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 28

*Bellermann v. Fitchburg Gas & Elec. Light Co.*,
470 Mass. 43, 61, 18 N.E.3d 1050 (2014) .......... 26

*Cotto v. Campbell*, 126 F.4th 761 (1st Cir. 2025) .......... 13, 14

*Cromwell v. County of Sac*, 94 U.S. 351 (1877) .......... 21

*Davidson v. Howe*, 749 F.3d 21 (1st Cir. 2014) .......... 12

*Degiacomo v. City of Quincy*, 476 Mass. 38, 63 N.E.3d 365 (2016) .......... 24

*Dep't of State Police v. El-Bayeh*, 23-P-0675, 277 N.E.3d 1025,
2026 WL 849996 (Mass. App. Ct. March 27, 2026) .......... 5, 19, 35

*Dep't of State Police v. El-Bayeh,* No. 20-P-0700, 163 N.E.3d 1040,
2021 WL753530 (Mass. App. Ct. Feb. 26, 2021) .......... 3, 18, 35

*Edelman v. Jordan*, 415 U.S. 651 (1974) .......... 13, 17

*El Bayeh v. Massachusetts Dep't of Transp.*, No. 20-P-0728, 168 N.E.3d 1122,
2021 WL 1713099 (Mass. App. Ct. April 30, 2021) .......... 4, 18, 35

*El-Bayeh v. Massachusetts Dep't of Transp.*, 2023-P-0618, 238 N.E.3d 830,
2024 WL3517636 (Mass. App. Ct. July 24, 2024) .......... *passim*

*El-Bayeh v. Massachusetts Dep't of Transp.*,
487 Mass. 1108, 171 N.E.3d 721 (2021) .......... 4

*El-Bayeh v. Mass. Dep't of Transp.*,
495 Mass. 1102, 245 N.E.3d 1040 (2024). ........................................................7

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008) ......................................30

*Ex parte Young*, 209 U.S. 123 (1908) ..................................................................13

*Gagliardi v. Sullivan*, 513 F.3d 301 (1st Cir. 2008) ..............................................29

*Geo. Knight & Co. v. Watson Wyatt & Co.*, 170 F.3d 210 (1st Cir. 1999) ............28

*Goldstein v. Galvin*, 719 F.3d 16 (1st Cir. 2013) .................................................22

*Greenless v. Almond,* 277 F.3d 601 (1st Cir. 2002) ..............................................12

*Guardado v. United States*, 76 F.4th 17, 24 (1st Cir. 2023) ....................................5

*Hill v. Town of Conway*, 193 F.3d 33 (1st Cir. 1999)............................................20

*Hudson Savings Bank v. Austin*, 479 F.3d 102 (1st Cir. 2007) ..............................17

*In re San Juan Hotel Corp*., 841 F.2d 6 (1st Cir. 1988) .........................................24

*Jadoin v. Toyota Motor Corp.*, 284 F.3d 272 (1st Cir. 2002)..................................10

*Johnson v. Rodriguez,* 943 F.2d 104 (1st Cir.1991) ..............................................13

*Kassel v. Consolidated Freightways Corp. of Delaware*,
450 U.S. 662 (1981) ..........................................................................................32

*Kobrin v. Bd. of Regist. In Med.*,
444 Mass. 837, 832 N.E.2d 628 (2005) ........................................................ 22, 25

*Lebrón v. Puerto Rico*, 770 F.3d 25 (1st Cir. 2014) ...............................................12

*Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576 (1st Cir. 1994) ...................30

*Martins v. Boston Pub. Health Comm'n*, 77 F. App'x 4 (1st Cir. 2003)................25

*Mass. Coalition for the Homeless v. City of Fall River*,
486 Mass. 437, 158 N.E.3d 856 (2020) ....................20

*Montana v. United States*, 440 U.S. 147 (1979) ....................21

*New Hampshire State Lottery Comm'n v. Rosen*, 986 F.3d 38 (2021) ....................15

*Newman v. Krintzman*, 723 F.3d 308 (1st Cir. 2013) ....................22

*Nieves v. McSweeney,* 241 F.3d 46 (1st Cir. 2001) ....................27

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ....................19

*Oyler v. Boles*, 368 U.S. 448 (1962) ....................30

*Papasan v. Allain*, 478 U.S. 265 (1986) .................... 15, 16, 17

*Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89 (1984) ....................12

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993) ....................13

*Ramirez de Arellano v. Alvarez de Choudens,*
575 F.2d 315 (1st Cir. 1978) ....................27

*Reddy v. Foster,* 845 F.3d 493 (1st Cir. 2017) ....................15

*Rodriguez-Ramos v. Hernandez-Gregorat*, 685 F.3d 34 (1st Cir. 2012) ....................29

*Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23 (1st Cir. 1996) ....................31

*Rossi v. Gemma*, 489 F.3d 26 (1st Cir. 2007) ....................19

*Saccoccia v. United States*, 955 F.3d 171 (1st Cir. 2020) ....................10

*Salvati v. Fireman's Fund Ins. Co.*, 368 F.Supp.3d 85 (D. Mass. 2019) ....................22

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) ....................17

*Tagliente v. Himmer*, 949 F.2d 1 (1st Cir. 1991) ....................................................27

*Taylor v. Sturgell,* 553 U.S. 880 (2008) ........................................................... 21, 22

*TLT Const. Corp. v. A. Anthony Tappe and Asscs., Inc.*,
48 Mass. App. Ct. 1, 716 N.E.2d 1044 (1999) ...................................................24

*Tuper v. N. Adams Ambulance Serv., Inc.*,
428 Mass. 132, 697 N.E.2d 983 (1998) ...............................................................25

*Tyler v. Massachusetts*, 981 F. Supp. 2d 92 (D. Mass. 2013) .................................16

*Tyler v. Supreme Judicial Court of Massachusetts*,
914 F.3d 47 (1st Cir. 2019) ...................................................................................20

*United States v. Int'l Minerals & Chem. Corp*., 402 U.S. 558, 563 (1971) ............31

*Vaqueria Tres Monjitas, Inc. v. Irizarry,* 587 F.3d 464 (1st Cir. 2009) ..................18

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md*., 535 U.S. 635 (2002) ...................13

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) ....................................12

*Wojcik v. Massachusetts State Lottery Comm'n,* 300 F. 3d 92 (1st Cir. 2002) .......12

*Younger v. Harris*, 401 U.S. 37 (1971) ...................................................................19

**Statutes**

42 U.S.C. § 1983 ............................................................................................ *passim*

Mass. Gen. Laws c. 90C, § 3 ..............................................................................20

**Rules**

L.R. 30.0(d)(1) ...................................................................................................3

## INTRODUCTION

This is Plaintiff-Appellant Mikhael El-Bayeh's fifth court case challenging speed limit enforcement on U.S. Route 3 and he seeks an extraordinary remedy: a federal court order enjoining the ongoing state court adjudication of a traffic citation he received in 2021. In this case, El-Bayeh asserted three 42 U.S.C. § 1983 claims against Defendant-Appellees Geoffrey Noble, in his official capacity as Colonel of the Massachusetts Department of State Police; Jonathan Gulliver, in his official capacity as Highway Traffic Administrator of the Massachusetts Department of Transportation; Colleen Ogilvie, in her official capacity as Registrar of Motor Vehicles; and Marian T. Ryan, in her official capacity as Middlesex County District Attorney (collectively, the "Commonwealth Defendants") and claimed that the 2021 traffic citation he received violated the Fourteenth Amendment.[1] Specifically, El-Bayeh claimed that the Commonwealth Defendants, as well as Defendant State Trooper Michael P. Sierra, selectively enforced and prosecuted the speed limits on Route 3 on the basis of government affiliation by declining to issue speeding tickets to two employees of local government entities. El-Bayeh also contended that Gulliver failed to give him adequate notice that the posted speed limit on Route 3 was enforceable.

[1] The Massachusetts Department of State Police was named in the original complaint but dropped as a party in the operative amended complaint and therefore does not file a brief in this appeal. ECF No. 1 ¶ 12; ECF No. 24 ¶¶ 16-20.

The District Court correctly dismissed El-Bayeh's complaint. The District Court concluded that El-Bayeh's claims against the Commonwealth Defendants were barred by sovereign immunity and that the *Ex parte Young* doctrine did not apply because there was no ongoing violation of federal law to enjoin. Although not relied upon by the District Court, El-Bayeh's claims against the Commonwealth Defendants also were subject to dismissal under the doctrines of abstention and res judicata, and for failure to state a plausible claim for relief. El-Bayeh's legal arguments were correctly rejected by the District Court, as they have been several times by Massachusetts state courts, and this Court should affirm.

## ISSUES PRESENTED

1. Whether the District Court correctly concluded that El-Bayeh's claims against the Commonwealth Defendants were barred by sovereign immunity and did not fall within *Ex parte Young* exception.

2. Whether the District Court's judgment may be affirmed on the alternate ground that El-Bayeh's prior state court litigations and ongoing civil motor vehicle infraction appeal bar his claims under the doctrines of res judicata and abstention.

3. Whether the District Court's judgment may be affirmed on the alternate ground that El-Bayeh failed to plead a plausible claim for relief against the Commonwealth Defendants because the statute of limitations barred his 42 U.S.C.

§ 1983 claims and he failed to allege any actions by the Commonwealth Defendants that violated the Fourteenth Amendment.

## STATEMENT OF THE CASE[2]

### I. El-Bayeh's 2018 Traffic Citation

#### A. Traffic Fine And Civil Motor Vehicle Infraction Appeal

In 2018, El-Bayeh received a citation for driving 96 MPH in a 55 miles per hour ("MPH") zone on Route 3 ("2018 Citation"). Dkt. No. 24-9 ¶ 89. After initiating an appeal of this citation, a magistrate judge in Woburn District Court found El-Bayeh responsible for the 2018 Citation but reduced the fine from $415 to $300. ECF No. 24-9 ¶¶ 89-91.[3] El-Bayeh appealed to the Appellate Division of the Woburn District Court, which affirmed, and to the Massachusetts Appeals Court, which likewise affirmed. *Id.* ¶¶ 91-93; *Dep't of State Police v. El-Bayeh,* No. 20-P-0700, 163 N.E.3d 1040, 2021 WL753530, at *1-2 (Mass. App. Ct. Feb. 26, 2021) ("*El-Bayeh I"*).

#### B. Related State Court Proceedings

In 2019, El-Bayeh filed a lawsuit against the Massachusetts Department of Transportation and the Massachusetts Department of State Police in Suffolk

---

[2] The allegations as set forth in this section are derived from the amended complaint and its attached exhibits and are taken as true for purposes of this appeal only.

[3] All references to ECF numbers in this brief refer to the underlying proceedings before the District Court in *El-Bayeh v. Massachusetts Dep't. of State Police*, No. 25-10476-LTS (D. Mass.) pursuant to L.R. 30.0(d)(1).

Superior Court seeking injunctive relief and a declaratory judgment that the speed limit on Route 3 was unlawfully promulgated ("2019 Litigation"). ECF No. 24 ¶¶ 120-23; ECF 24-1 ¶¶ 37-53. The Massachusetts Appeals Court affirmed dismissal on the grounds that El-Bayeh lacked standing to challenge the posted speed limit given that he was cited for driving 96 MPH. ECF No. 24 ¶¶ 124-125; ECF No. 24-2 at 9-11; *El Bayeh v. Massachusetts Dep't of Transp.*, No. 20-P-0728, 168 N.E.3d 1122, 2021 WL 1713099 at *3-4 (Mass. App. Ct. April 30, 2021) ("*El-Bayeh II*"). The Supreme Judicial Court denied El-Bayeh's application for further appellate review. ECF No. 24-9 ¶ 103; *El-Bayeh v. Massachusetts Dep't of Transp.*, 487 Mass. 1108, 171 N.E.3d 721 (2021).

## II. El-Bayeh's 2021 Traffic Citation

### A. Traffic Fine And Civil Motor Vehicle Infraction Appeal

In 2021, the posted speed limit on Route 3 was 55 MPH. ECF No. 24-11 at 10. On August 4, 2021, Sierra stopped El-Bayeh while he was driving on Route 3 in Burlington and informed him that he had been stopped for driving 72 MPH in a 55 MPH zone. ECF No. 24 ¶¶ 21-23. During the traffic stop El-Bayeh did not indicate that he was affiliated with any governmental entity. *Id.* ¶ 31.

Sierra charged El-Bayeh with a civil motor vehicle infraction, which carried a fine of $175 ("2021 Citation"). ECF No. 24 ¶¶ 28, 32. The 2021 Citation required El-Bayeh to pay the assessed fine or appeal within 20 days. *Id.* ¶ 32. If El-Bayeh

did not contest the 2021 Citation, there would be some collateral consequences, such as an increase in car insurance premiums. *Id.* ¶ 33.

El-Bayeh filed a civil motor vehicle infraction appeal of the 2021 Citation in Woburn District Court. ECF No. 24 ¶¶ 170-72. The magistrate concluded that El-Bayeh was responsible for the civil infraction, and a Woburn District Court judge and the Appellate Division upheld that finding. *Id*. ¶¶ 173-78. El-Bayeh then appealed to the Massachusetts Appeals Court, which reversed and remanded the Appellate Division's decision on the grounds that the motion judge had abused its discretion by denying El-Bayeh's motion for discovery. *Id*. ¶ 179; *Dep't of State Police v. El-Bayeh*, 23-P-0675, 277 N.E.3d 1025, 2026 WL 849996, at *3-4 (Mass. App. Ct. March 27, 2026) ("*El-Bayeh IV*"). During the proceedings before the Appeals Court, El-Bayeh attempted to advance the same selective prosecution arguments that he makes in this litigation. ECF No. 24 ¶ 186; ECF No. 24-13 at 7-18; *see infra* 7-9.

Despite prevailing at the Massachusetts Appeals Court, El-Bayeh filed an application for further appellate review with the Supreme Judicial Court, which remains pending. Add026.[4] During the appellate proceedings, any payment obligation associated with the 2021 Citation is stayed. ECF No. 24 ¶ 195. If El-

[4] This Court may take judicial notice of state court dockets on appeal. *Guardado v. United States*, 76 F.4th 17, 24 (1st Cir. 2023).

Bayeh is found responsible on remand, he will be required to pay the Registrar the full amount of the imposed fine within twenty days of the final judgment or whenever his appeals are exhausted. *Id.* ¶ 197. If El-Bayeh fails to pay, he speculates that the Registrar may revoke his driver's license and the District Attorney may pursue a complaint for civil contempt. *Id.* ¶¶ 199-200.

**B. Collateral Litigation**

**1. State Court**

In 2022, El-Bayeh filed an amended complaint in yet another lawsuit, this time in Middlesex Superior Court, concerning speed enforcement on Route 3 ("2022 Litigation"). ECF No. 24 ¶¶ 141-42; ECF No. 24-9. This case named the Massachusetts Department of Transportation, Gulliver (in his individual and official capacities), Ogilvie (in her individual and official capacities), Massachusetts Department of State Police, Christopher S. Mason (in his individual capacity and official capacity as Colonel of Massachusetts Department of State Police), and Sierra (in his individual capacity) as defendants. ECF No. 24 ¶¶ 142-43; ECF No. 24-9 ¶¶ 5-10. The 2022 Litigation concerned the 2018 Citation and the 2021 Citation. ECF No. 24-9 ¶¶ 112-124. This lawsuit also challenged the promulgation of speed limits on Route 3 and asserted claims for declaratory judgment, injunctive relief, and various tort and 42 U.S.C. § 1983 claims. ECF No. 24 ¶¶ 142-144; ECF No. 24-9 at 49-57, 171-205.

The Massachusetts Appeals Court affirmed dismissal of the 2022 Litigation, reasoning that 42 U.S.C. § 1983 did not subject agencies of the Commonwealth to a suit for monetary damages. ECF No. 24 ¶ 146; ECF No. 24-10 at 6; *El-Bayeh v. Massachusetts Dep't of Transp.*, 2023-P-0618, 238 N.E.3d 830, 2024 WL3517636 at *2 (Mass. App. Ct. July 24, 2024) ("*El-Bayeh III*"). The Appeals Court also rejected El-Bayeh's argument that the speed limit on Route 3 was unlawfully promulgated and held the 55 MPH posted speed limit was enforceable as an emergency regulation. *El-Bayeh III,* 2024 WL3517636 at *2. The Supreme Judicial Court again denied El-Bayeh's application for further appellate review. *El-Bayeh v. Mass. Dep't of Transp.*, 495 Mass. 1102, 245 N.E.3d 1040 (2024).

**2. Federal Court**

**a. Complaint**

On February 27, 2025, El-Bayeh filed the current litigation. ECF No. 1. His complaint named Sierra, the Massachusetts Department of State Police, Ogilvie, and Ryan as defendants. *Id.* ¶¶ 12-15. On May 19, 2025, El-Bayeh filed an amended complaint ("Complaint") against Sierra and the Commonwealth Defendants in their official capacities. ECF No. 24 ¶¶ 16-20. The Complaint asserted three 42 U.S.C. § 1983 claims alleging Fourteenth Amendment violations. *Id*. ¶¶ 201-219. In his first two claims, El-Bayeh alleged that the speed limit was selectively enforced because he is not affiliated with a government entity. *Id.* ¶¶ 201-213. In his third claim, El-Bayeh alleged that Gulliver failed to provide him with fair notice on or before

August 4, 2021 that the speed limit on Route 3 was enforceable. *Id.* ¶¶ 214-219. El-Bayeh sought injunctive and declaratory relief "arising from the alleged August 4, 2021 speeding violation[.]" ECF No. 24 at 42.

#### b. Allegations Regarding The Other Citations Issued By Sierra

On March 30, 2022, Sierra stopped Daniel J. Snow on Route 3 in Bedford. ECF No. 24 ¶ 34. Snow, a corrections officer, wore a patch on his jacket that read "Middlesex Sheriff's Office," which El-Bayeh contends Sierra must have seen. *Id.* ¶¶ 38-40. Sierra stated that Snow had been driving 95 MPH, but he elected not to charge Snow with a speeding offense and instead released him with a written warning. *Id.* ¶¶ 41, 50. Sierra recorded Snow's speed as 65 MPH on the written warning. *Id.* ¶ 51. There is a common, informal practice of marking a lesser speed than the observed speed on a citation issuing a fine, but this practice does not, according to El-Bayeh, extend to written warnings. *Id*. ¶ 53. El-Bayeh alleges that Sierra released Snow with a warning rather than a citation based on Snow's affiliation with the Middlesex County Sheriff's Office. *Id*. ¶ 55. El-Bayeh "obtained complete knowledge" of the citation issued to Snow on December 20, 2022. *Id*. ¶ 100.

On October 2, 2022, Sierra stopped Thomas Blair on Route 2 in Littleton. *Id.* ¶ 63. Blair wore a baseball cap embroidered with "LFD" and told Sierra, when asked, that he worked for the Lincoln Fire Department. *Id.* ¶¶ 67, 70. Sierra stated

that Blair had been driving 86 MPH in a 55 MPH zone, but he elected not to charge Blair with a speeding offense and instead released him with a warning. *Id.* ¶¶ 71, 77. Sierra wrote 65 MPH rather than 86 MPH on the written warning issued to Blair. *Id.* ¶ 78. El-Bayeh alleges that Sierra released Blair with a warning due to his affiliation with the Lincoln Fire Department. *Id.* ¶ 82. El-Bayeh "obtained complete knowledge" of the Blair citation on January 13, 2025. *Id.* ¶ 102.

El-Bayeh contends that it would "not have been irregular" for Sierra to issue him a warning rather than a fine on August 4, 2021; he also contends that the warnings issued to Snow and Blair were "irregular." ECF No. 24 ¶¶ 97-98. Between July 1, 2019 and October 15, 2024, 421 written warnings issued by Sierra were reported to the Registry of Motor Vehicles. *Id.* ¶¶ 90-93. The mean and median difference between the reported violation and the speed limit for warnings issued by Sierra was 16 and 15 MPH respectively. *Id.* ¶ 96. El-Bayeh believes MSP may have discovery relevant to other of Sierra's traffic stops and has submitted numerous public records requests to MSP. *Id.* ¶¶ 106-119.

#### c. District Court Opinion

On December 18, 2025, the District Court granted the motions to dismiss filed by Sierra and the Commonwealth Defendants. ECF No. 53. The District Court concluded that El-Bayeh's claims against the Commonwealth Defendants were barred by the doctrine of sovereign immunity. *Id*. at 7. In doing so, the District

Court reasoned that the *Ex parte Young* exception to sovereign immunity did not apply because the 2021 Citation was not an ongoing violation of federal law. *Id*. at 7-9. The District Court further concluded that El-Bayeh had failed to state a plausible claim for relief against Sierra. *Id*. at 9-13.

## SUMMARY OF THE ARGUMENT

El-Bayeh's claims against the Commonwealth Defendants are barred by sovereign immunity. The Eleventh Amendment bars such claims against the Commonwealth and state officials named in their official capacities. El-Bayeh may not rely on the *Ex parte Young* exception to evade the sovereign immunity doctrine because the Complaint alleges no ongoing violation of federal law and instead challenges the issuance of a speeding ticket nearly five years ago. The *Ex parte Young* exception is also inapplicable because El-Bayeh's requested relief—declarations stating that the Commonwealth Defendants violated the constitution in the past and preventing prosecutorial action "arising from the alleged August 4, 2021 speeding violation"—cannot be fairly characterized as prospective relief.

Although not reached by the District Court, there are numerous alternative and independent grounds upon which this court can affirm. *Saccoccia v. United States*, 955 F.3d 171, 174 (1st Cir. 2020) ("We may affirm the decision below on any ground made manifest by the record.") (citations omitted); *Jadoin v. Toyota Motor Corp.*, 284 F.3d 272, 277 n.2 (1st Cir. 2002) ("[W]e may affirm a district

court judgment on any independently sufficient ground, including one not raised below.") (citations omitted). *First*, El-Bayeh's claims run afoul of the *Younger* and *Rooker-Feldman* abstention doctrines because his 2021 civil motor vehicle infraction appeal remains pending before the Supreme Judicial Court on an application for further appellate review. El-Bayeh appears to seek a federal court order halting those proceedings, which would unnecessarily embroil this Court in ongoing state court litigation. *Second*, res judicata bars El-Bayeh's claims against the Commonwealth Defendants because he has already litigated his § 1983 claims regarding the 2021 Citation in state court and lost. The Massachusetts state courts have also already rejected El-Bayeh's arguments regarding the enforceability of the speed limits on Route 3. *Third*, El-Bayeh has failed to state a plausible claim for relief because his claims are untimely, and he has not alleged any actions by the Commonwealth Defendants that infringe upon his constitutional rights. This Court should therefore affirm.

## ARGUMENT

### I. The District Court Correctly Concluded that the Claims Against the Commonwealth Defendants Are Barred By Sovereign Immunity

The District Court correctly dismissed the claims against the Commonwealth Defendants because they are barred by the doctrine of sovereign immunity. The *Ex parte Young* exception to the doctrine of sovereign immunity does not apply because

El-Bayeh has alleged no ongoing violation of federal law by the Commonwealth Defendants and seeks only retrospective relief relating to the past 2021 Citation.

### A. Sovereign Immunity Precludes El-Bayeh's Claims

Under the Eleventh Amendment, generally "states are immune ... from private suit in the federal courts, absent their consent." *Greenless v. Almond,* 277 F.3d 601, 606 (1st Cir. 2002). "This immunity extends to any entity that is an arm of the state." *Wojcik v. Massachusetts State Lottery Comm'n,* 300 F.3d 92, 99 (1st Cir. 2002) (citation omitted); *see also Lebrón v. Puerto Rico*, 770 F.3d 25, 32 (1st Cir. 2014) ("[A] suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.") (citation omitted). Sovereign immunity also bars suits against state officials in their official capacities because such claims are "no different from a suit against the State itself." *Davidson v. Howe*, 749 F.3d 21, 27 (1st Cir. 2014) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)). The claims against the Commonwealth Defendants are thus barred unless they are exempt from the doctrine of sovereign immunity.

Accordingly, this Court only has subject matter jurisdiction over El-Bayeh's claims against the Commonwealth Defendants if the Commonwealth has waived, or Congress has abrogated, sovereign immunity as to his claims. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99 (1984). No such waiver or abrogation exists that permits the § 1983 claims against the Commonwealth

Defendants. Neither the Commonwealth nor its agencies are persons subject to suit under 42 U.S.C. § 1983. *See Will*, 491 U.S. at 71. It is thus well-settled "that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir. 1991) (citing *Will*, 491 U.S. at 71).

### B. The *Ex parte Young* Exception Does Not Apply

The *Ex parte Young*, 209 U.S. 123 (1908) exception to the doctrine of sovereign immunity does not apply to El-Bayeh's claims. The exception is narrow. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Under *Ex parte Young*, federal courts may order prospective relief that enjoins state officials from committing future violations of federal law in their official capacities, but not retrospective relief that "make[s] reparation for the past." *Edelman v. Jordan*, 415 U.S. 651, 664-65 (1974) (quotations omitted). Specifically, the *Ex parte Young* exception applies if a plaintiff (1) "alleges an ongoing violation of federal law" by a state official and (2) "seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quotations omitted).

#### 1. The Adjudication of the 2021 Citation Is Not an Ongoing Violation of Federal Law

The District Court correctly reasoned that this case presented no ongoing violation of federal law. ECF No. 53 at 8, citing *Cotto v. Campbell*, 126 F.4th 761

(1st Cir. 2025), *cert denied* 146 S. Ct. 1491 (2026). In *Cotto*, plaintiffs sought declaratory and injunctive relief, including an order requiring the Commonwealth to return property forfeited by Plaintiffs in connection with past criminal convictions that had previously been vacated by the Supreme Judicial Court. *Id.* at 764-65. This Court rejected plaintiff's characterization that the withholding of forfeited property constituted an ongoing violation subject to the *Ex parte Young* exception. *Id*. at 768. Instead, the failure to return forfeited property constituted "continuing liability for a past harm" rather than an ongoing violation. *Id*. at 769. The claims at issue in *Cotto* concerned "past actions of the Commonwealth either from the time of their forfeiture proceedings or from the time their convictions were vacated, rather than any current or future actions." *Id*. at 770 (quotations omitted).

The same reasoning applies here. As the District Court observed, "[e]ven if El-Bayeh's constitutional rights were violated during the traffic stop, he does not plausibly allege an ongoing violation of federal law by the Commonwealth Defendants." ECF No. 53 at 8. El-Bayeh has characterized the relief he seeks as an order "bar[ring] collection" of a "state-imposed assessment." Br. 52. That assessment was imposed nearly five years ago on August 4, 2021. ECF No. 24 ¶¶ 21, 32. The fact that there may be "contin[ued] liability for a past harm" does not transform the assessment and its adjudication into an ongoing violation. *Cotto*, 126

F.4th at 769. Rather, it is "a not-yet-extinguished liability" from a past incident. *See Papasan v. Allain*, 478 U.S. 265, 281 (1986).

The Amended Complaint speculates that the Commonwealth Defendants "would cause future injury to El-Bayeh if they were to exercise their legal authority to enforce currently stayed penalties imposed for the alleged traffic violation." ECF No. 24 ¶¶ 207, 213, 219. While El-Bayeh characterizes this posture as a "pre-enforcement challenge," Br. 54-55, his theory of the case is too attenuated to sustain such a "pre-enforcement challenge." *Compare Reddy v. Foster,* 845 F.3d 493, 502 (1st Cir. 2017) (affirming dismissal of a purported pre-enforcement challenge based on a "contingent future event[ ] that may not occur as anticipated, or indeed may not occur at all") (citation omitted) *with New Hampshire State Lottery Comm'n v. Rosen*, 986 F.3d 38, 50 (2021) (holding that a pre-enforcement challenge was justiciable where plaintiff continued to operate a lottery and the defendant had prosecuted seventeen cases regarding non-sports betting). Here, El-Bayeh speculates that he needs injunctive relief to prevent the scenario where *if* he is found to be responsible for the 2021 Citation, and *if* he refuses to pay the assessed fine, and *if* his license is revoked, and *if* he chooses to drive without a license, then the Commonwealth Defendants might choose to bring civil contempt charges. *See* Br. 55. The hypothetical harms that El-Bayeh identifies would also flow from his failure to follow the law rather than any ongoing violation by the Commonwealth Defendants.

As El-Bayeh concedes "the enforcement has not yet occurred," *id.,* and the mere possibility of future enforcement is not enough to sustain a pre-enforcement challenge.

As the District Court observed, El-Bayeh "may avoid license suspension or contempt by *paying the fine*." ECF No. 53 at 9 (emphasis in original). At present, he has alleged no ongoing violation by the Commonwealth Defendants and his claims against them were correctly dismissed.

**2. El-Bayeh Seeks Only Retrospective Relief to Avoid Liability for a Past Traffic Violation**

El-Bayeh's claims also falter on the second prong of the *Ex parte Young* analysis because he seeks only retrospective relief. The *Ex parte Young* exception is generally inapplicable where "federal law has been violated at one time or over a period of time in the past[.]" *See Papasan*, 478 U.S. at 277-78. The Complaint seeks to enjoin actions "arising from the alleged August 4, 2021 speeding violation[.]" ECF No. 24 at 42. This effort to challenge the "historical fact" of the speeding violation is impermissibly retrospective, regardless of the ongoing state court proceedings. *See Tyler v. Massachusetts*, 981 F. Supp. 2d 92, 94-96 (D. Mass. 2013) (finding relief impermissibly retrospective where plaintiff challenged ongoing probation conditions of a past criminal sentence).

El-Bayeh also incorrectly suggests that because he characterized his requested relief as non-monetary, it is therefore prospective. Br. 57-58. "The

Eleventh Amendment does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury, … it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996) (citations and internal quotation marks omitted). Retrospective remedies do not fall within the *Ex parte Young* doctrine, regardless of whether the plaintiff characterizes the relief sought as non-monetary. *Papasan*, 478 U.S. at 278 (forbidding relief "tantamount to an award of damages for a past violation of federal law, even though styled as something else."); *Edelman*, 415 U.S. at 666 (prohibiting relief that "in practice resemble[s] a money judgment" even if "labeled 'equitable' in nature.").

It is also misleading to suggest that El-Bayeh's requested relief "does not implicate the state treasury." Br. 57 (capitalization modified). "[A] court's appraisal of a claim of Eleventh Amendment immunity must focus on the practical effect of the suit as opposed to its abstract posture." *Hudson Savings Bank v. Austin*, 479 F.3d 102, 106-07 (1st Cir. 2007) (citations and internal quotation marks omitted). El-Bayeh himself describes the 2021 Citation as a "live debt… owe[d] to the government" and a "future deposit into the state treasury." Br. 53-54. Although the 2021 Citation is stayed pending the ongoing state court appeal, the relief sought here would necessarily implicate the Commonwealth's treasury by

eliminating that potential payment obligation.[5] *Cf. Vaqueria Tres Monjitas, Inc. v. Irizarry,* 587 F.3d 464, 479 (1st Cir. 2009) (holding that the Eleventh Amendment did not bar relief because the funds at issue "would, in no way, reach the coffers of the Commonwealth"). The relief El-Bayeh seeks is monetary and retrospective in nature, and therefore falls outside the *Ex parte Young* exception.

## II. The District Court's Judgment May Be Affirmed on the Alternate Ground that El-Bayeh's Claims are Barred By Abstention Doctrines and Res Judicata

Regardless of whether sovereign immunity applies, El-Bayeh's claims have already been litigated in state court. In addition to the pending 2021 CMVI Appeal currently before the Supreme Judicial Court, El-Bayeh has litigated to final judgment three cases in state court regarding speed enforcement on Route 3. Add026; *El-Bayeh III*, 2024 WL3517636, at *2; *El-Bayeh II*, 2021 WL 1713099 at *4; *El-Bayeh I*, 2021 WL753530, at *2. This Court should not allow him to relitigate the same issues here.

### A. El-Bayeh's Request to Enjoin Ongoing State Court Proceedings Violates the Abstention Doctrines

The District Court's order may be affirmed on abstention grounds because El-Bayeh appears to seek an injunction halting the ongoing state court proceedings.

[5] El-Bayeh suggests that without injunctive relief he will be left without a "federal remedy." Br. 60-61. As discussed, El-Bayeh has had the opportunity to pursue numerous remedies in state court. *See supra* 3-7. Furthermore, as the District Court observed, he could recover any monetary fine if he states a plausible claim against Sierra or another defendant. ECF No. 53 at 9.

Nearly five years after the issuance of the 2021 Citation, the only "enforcement" that can be enjoined is the 2021 civil motor vehicle infraction appeal pending before the Supreme Judicial Court. Add026. This collateral attack on state court proceedings ignores "the need for a proper balance in the concurrent operation of the federal and state courts counsels restraint against the issuance of injunctions against state officers engaged in the administration of the State's … laws[.]" *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974). This Court may properly abstain from embroiling itself in the ongoing state proceedings.

The *Younger* abstention doctrine, which reflects a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances," also counsels against federal intervention here. *Younger v. Harris*, 401 U.S. 37, 41 (1971). *Younger* abstention applies where plaintiff's requested relief in a federal complaint "would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." *Rossi v. Gemma*, 489 F.3d 26, 34-35 (1st Cir. 2007). State administrative enforcement proceedings are entitled to *Younger* deference. *See id*. at 34.

Here, all three elements are met. *First*, there is an ongoing state judicial proceeding. *See El-Bayeh IV*, 2026 WL 849996, at *3-4 & n.9-10 (remanding and noting the state of the evidence may change on remand); Add026. *Second*,

enforcement of the Commonwealth's traffic safety laws implicates an important state interest. *Mass. Coalition for the Homeless v. City of Fall River*, 486 Mass. 437, 443, 158 N.E.3d 856, 862 (2020) (acknowledging that "the State's interest in protecting public safety on its public ways is a compelling one"). *Third*, "[q]uestions of law arising in the disposition of a civil motor vehicle infraction" may be raised and later appealed in civil motor vehicle infraction proceedings. Mass. Gen. Laws c. 90C, § 3(A)(5).[6] This Court may therefore abstain from interjecting into the state court proceedings and affirm the District Court's order.

El-Bayeh's claims are also barred by the *Rooker–Feldman* doctrine. The *Rooker-Feldman* doctrine precludes a federal trial court from reviewing a final judgment of a state court. *Tyler v. Supreme Judicial Court of Massachusetts*, 914 F.3d 47, 50 (1st Cir. 2019). The doctrine applies where the issues presented are "inextricably intertwined" with questions previously adjudicated by a state court such that "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *See Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir.

---

[6] While the state district court judge expressed skepticism as to whether El-Bayeh could raise certain defenses in the civil motor vehicle infraction proceeding, ECF No. 24-11 at 10, El-Bayeh has raised the selective prosecution theory before the Appeals Court in the 2021 civil motor vehicle infraction appeal. ECF No. 24-13 at 7-17; ECF No. 24 ¶ 186. Regardless, to the extent that the Fourteenth Amendment issues that El-Bayeh advances here cannot properly be raised in the context of a civil motor vehicle infraction proceeding, he has had the opportunity to pursue such constitutional claims in the 2022 Litigation. ECF No. 24 ¶¶ 142-144; ECF No. 24-9 at 49-57.

1999) (quotations omitted). Here, the Massachusetts Appeals Court held in the 2022 Litigation that El-Bayeh's § 1983 claims regarding the 2021 Citation were barred by sovereign immunity and that the speed limit on Route 3 was lawfully promulgated. *El-Bayeh III,* 2024 WL3517636 at *2. Relitigating this same issue in federal court would constitute an inappropriate review of an inextricably intertwined state court judgment, and therefore this Court should affirm.

**B. El-Bayeh's Claims Are Barred By Res Judicata**

Res judicata also bars El-Bayeh's claims because he has already litigated § 1983 claims regarding the 2021 Citation and challenged the enforceability of the speed limit on Route 3 in state court. The Supreme Court of the United States has long recognized that "the determination of a question directly involved in one action is conclusive as to that question in a second suit." *B & B Hardware, Inc. v. Hargis Indus., Inc.,* 575 U.S. 138, 147 (2015) (quoting *Cromwell v. County of Sac,* 94 U.S. 351, 354 (1877)). Preventing repetitive litigations protects against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions," *Montana v. United States,* 440 U.S. 147, 153-154 (1979).

The doctrines of claim preclusion and issue preclusion govern whether a judgment precludes subsequent litigation. *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008). "[F]ederal courts must give preclusive effect to a state-court judgment if the

state court itself would." *Newman v. Krintzman*, 723 F.3d 308, 310 (1st Cir. 2013).[7] Here, El-Bayeh's claims are barred by both claim and issue preclusion under Massachusetts law.

### 1. Judgment Should Be Affirmed Because Claim Preclusion Bars El-Bayeh's Claims

Claim preclusion bars El-Bayeh's claims because he has already brought a 42 U.S.C. § 1983 claim against the Commonwealth Defendants regarding the 2021 Citation. "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor,* 553 U.S. at 892 (quotations omitted). Massachusetts law applies claim preclusion when: (1) "the parties to the prior or present actions" are "identical or in privity," (2) the claims "arise out of the same nucleus of operative fact," and (3) the prior action resulted in a "final judgment on the merits." *Goldstein v. Galvin*, 719 F.3d 16, 23 (1st Cir. 2013) (citing *Kobrin v. Bd. of Regist. In Med.*, 444 Mass. 837, 843, 832 N.E.2d 628, 634 (2005)).

---

[7] El-Bayeh's claims would also be barred under the federal claim preclusion standard. *Salvati v. Fireman's Fund Ins. Co.*, 368 F.Supp.3d 85, 90 (D. Mass. 2019) (noting the "lack of apparent difference" between federal and Massachusetts claim preclusion standards).

All three elements of claim preclusion are met with respect to the state court judgment in the 2022 Litigation. *First*, Gulliver, Ogilvie, and Noble[8] were all named in their official capacities as defendants in the 2022 Litigation, just as they are in this case. ECF No. 24-9 ¶¶ 6, 7, 9. *Second*, the 2022 Litigation and this litigation both asserted § 1983 claims and sought injunctive relief. *Compare* ECF No. 24 ¶¶ 202, 209, 215; *id*. at 42 *with* ECF No. 24-9 ¶¶ 180-91, 196-97; *id.* at 196-97. The facts in both litigations also revolved around the issuance of the 2021 Citation. *Compare* ECF No. 24 ¶¶ 21-28 ("On August 4, 2021 … Trooper Sierra activated his cruiser's blue lights and sirens and stopped El-Bayeh's vehicle") *with* ECF No. 24-9 ¶¶ 113-24 ("On August 4, 2021 ... Sierra … attempted to stop, detain, and confine El-Bayeh by … activating his blue lights and sirens"). *Third*, the 2022 Litigation resulted in a final judgment, reasoning that El-Bayeh's § 1983 claims were "properly dismissed" because "an agency of the Commonwealth is not a person subject to suit for money damages under § 1983" and that there was "no improper exercise of the department's regulatory discretion in its decision… to enact" the 55 MPH speed limit on Route 3. *El-Bayeh III*, 2024 WL3517636 *2 (affirming dismissal) (citations and quotations omitted).

[8] Noble's predecessor, Colonel Christopher S. Mason, was the identified official capacity defendant for the Massachusetts Department of State Police in the 2022 Litigation. ECF No. 24-9 ¶ 9.

Although Ryan (Middlesex District Attorney) was not a named party to the 2022 Litigation, claim preclusion also bars the claims against her. A defendant who was not a party in the prior case is protected by claim preclusion when that defendant's "interest was represented by a party in the prior litigation." *See TLT Const. Corp. v. A. Anthony Tappe and Asscs., Inc.*, 48 Mass. App. Ct. 1, 5, 716 N.E.2d 1044, 1050 (1999) (citations and quotations omitted). Here, there is no divergence in interest between Ryan and the other Commonwealth Defendants, all of whom are Commonwealth officials. Indeed, Ryan is named as a defendant in her official capacity here for the sole reason that "Defendants Noble, Sierra, Ogilvie and/or Ryan would cause future injury to El-Bayeh if they chose to exercise their legal authority to enforce currently stayed penalties[.]" ECF No. 24 ¶ 207. *See also In re San Juan Hotel Corp.*, 841 F.2d 6, 10-11 (1st Cir. 1988) (finding claims barred under federal claim preclusion against a non-party to the prior suit where the non-party was alleged to have acted jointly with a previously named defendant). Ryan's future enforcement interests, which even in the Complaint are portrayed as a collective enforcement obligation shared among the Commonwealth Defendants, was adequately represented in the 2022 Litigation by the other Commonwealth Defendants. *See Degiacomo v. City of Quincy*, 476 Mass. 38, 47, 63 N.E.3d 365, 373 (2016) (holding that Attorney General sufficiently represented school's interests in prior litigation for claim preclusion purposes).

It also makes no difference to the claim preclusion analysis that El-Bayeh did not explicitly assert the selective prosecution and enforcement theories advanced here in the 2022 Litigation. The doctrine of claim preclusion "prevents relitigation of all matters that were or *could have been* adjudicated in the action." *Kobrin*, 444 Mass. at 843 (emphasis added) (quotation omitted). Failure "to take advantage of the opportunity" to advance those theories in the earlier litigation does not alter the claim preclusion analysis. *Martins v. Boston Pub. Health Comm'n*, 77 F. App'x 4, 7 (1st Cir. 2003) (affirming dismissal of Title VII claim on claim preclusion grounds based on prior defamation claim in state court). El-Bayeh cannot relitigate his § 1983 claims regarding the 2021 Citation that have already been rejected by state courts.

### 2. Issue Preclusion Bars El-Bayeh's Claims

El-Bayeh's claims would also be barred under issue preclusion. Issue preclusion prohibits re-litigating an issue where the Court finds: "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication." *Kobrin*, 444 Mass. at 843 (quoting *Tuper v. N. Adams Ambulance Serv., Inc.*, 428 Mass. 132, 134, 697 N.E.2d 983, 985 (1998)). "Issue preclusion may apply where the two adjudications involve the same subsidiary findings, even

if they involve different ultimate claims." *Bellermann v. Fitchburg Gas & Elec. Light Co.*, 470 Mass. 43, 61, 18 N.E.3d 1050, 1066 (2014). Two issues in this case have already been litigated by El-Bayeh: (1) whether the speed limit on Route 3 was enforceable, and (2) whether the Commonwealth Defendants are protected by sovereign immunity for their actions relating to the 2021 Citation.

All three elements of issue preclusion are met here. As discussed *supra*, the 2022 Litigation involved a final judgment involving the same parties. The Massachusetts Appeals Court also already rejected El-Bayeh's argument that the speed limit on Route 3 was not enforceable. *El-Bayeh III*, 2024 WL 3517636 at *2 ("We discern no improper exercise of the department's regulatory discretion in its decision, in 1996, to enact [the speed limit] as an emergency regulation"). The panel also rejected El-Bayeh's attempt to impose § 1983 liability on the Commonwealth Defendants based on the 2021 Citation, ruling that those claims "were likewise properly dismissed." *Id.* These determinations were essential to the judgment and issue preclusion prevents re-litigation here.

## III. The District Court's Judgment May Be Affirmed On the Alternate Ground that the Complaint States No Plausible Claim for Relief Against the Commonwealth Defendants

The District Court's Order may also be affirmed on the grounds that El-Bayeh has failed to allege a plausible claim for relief. His claims fall outside the statute of limitations and are therefore untimely. Furthermore, the Complaint contains no

plausible factual allegation that the Commonwealth Defendants infringed upon his constitutional rights.

### A. The Statute of Limitations Bars El-Bayeh's Claims

El-Bayeh's § 1983 claims are untimely. He challenges the 2021 Citation, which was issued on August 4, 2021. ECF No. 24 ¶¶ 21, 32. The § 1983 claims at issue in this case are subject to a three-year statute of limitations. *See Nieves v. McSweeney,* 241 F.3d 46, 51 (1st Cir. 2001) (applying a three-year statute of limitations for "section 1983 cases arising in Massachusetts"). El-Bayeh's claims must therefore have been filed by August 4, 2024. He did not initiate this litigation until February 27, 2025, six months after the statute of limitations on his claims expired. ECF No. 1.

El-Bayeh has no basis to evade the statute of limitations. His numerous filings in state court do not toll the statute of limitations. *Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d 315, 319-20 (1st Cir. 1978). Nor can he rely on the discovery rule to justify his late filing in this case. For the discovery rule to toll the statute of limitations, "the factual basis for the cause of action must have been inherently unknowable at the time of the injury." *Tagliente v. Himmer*, 949 F.2d 1, 4 (1st Cir. 1991) (quotations omitted). The factual basis is only "inherently unknowable" if it is "incapable of detection by the wronged party through the exercise of reasonable

diligence." *Geo. Knight & Co. v. Watson Wyatt & Co.*, 170 F.3d 210, 213 (1st Cir. 1999) (quotations omitted).

El-Bayeh's claims were not inherently unknowable. El-Bayeh could have asserted his procedural due process claim regarding notice of the speed limit's enforceability at the time the 2021 Citation was issued. The Complaint also provides no plausible reason to believe that El-Bayeh could not have discovered facts necessary to his selective enforcement and prosecution theories before the limitations ran on his action on August 4, 2024. The pleadings themselves allege that Trooper Sierra issued 421 speeding citations between July 1, 2019 and October 15, 2024 which Plaintiff could have ascertained prior to the expiration of the statute of limitations. ECF No. 24 ¶ 93; ECF No. 24-15 at 23-28 (listing numerous citations issued by Sierra prior to August 4, 2024). This Court can therefore affirm the District Court's dismissal on the grounds that El-Bayeh's claims are untimely.

### B. El-Bayeh's Complaint Does Not Plausibly Allege Any Constitutional Violation By the Commonwealth Defendants

This Court may also affirm on the basis that El-Bayeh has not alleged a plausible claim for relief against the Commonwealth Defendants. To survive dismissal, the Complaint must allege "enough to raise a right to relief above the speculative level . . . [based] on the assumption that all allegations in the complaint are true[.]" *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court need not accept legal conclusions framed as factual allegations. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). To plausibly allege a § 1983 claim, a plaintiff must allege that the defendant "deprived the plaintiff of rights secured by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). The Complaint contains no such allegations as to the Commonwealth Defendants.

The allegations in the Complaint are directed to Sierra and not the Commonwealth Defendants. There are no allegations that the Commonwealth Defendants were involved in the decision to issue the 2021 Citation or the traffic stops of Snow or Blair. *See, e.g.,* ECF No. 24 ¶¶ 21-89. In the Complaint, "*each* defendant's role … must be sufficiently alleged to make him or her a plausible defendant." *See Rodriguez-Ramos v. Hernandez-Gregorat*, 685 F.3d 34, 40 (1st Cir. 2012) (emphasis in original). El-Bayeh has failed to allege plausible allegations regarding the Commonwealth Defendants that would sustain a legal claim.

El-Bayeh has certainly not plausibly alleged any claim against Ryan or Ogilvie (Registrar of Motor Vehicles). The Complaint fails to allege any actions by Ryan and Ogilvie other than that they are public officials and may at some point in the future decide to bring some sort of enforcement action against him. ECF No. 24 ¶¶ 19-20, 207, 213, 219. The Complaint thus contains no plausible allegations that Ryan or Ogilvie violated El-Bayeh's Fourteenth Amendment rights acting in their official capacities.

El-Bayeh similarly has not alleged any plausible constitutional violation committed by Noble (Colonel of the Massachusetts Department of State Police). The Complaint focuses on Sierra's actions in issuing the 2021 Citation, and then tacks on that "Defendants Sierra and/or Noble have and continue to selectively treat El-Bayeh unfavorably[.]" ECF No. 24 ¶¶ 207, 210, 213. *First*, this allegation is insufficient to sustain a claim because law enforcement officers have discretion in issuing traffic tickets, and the Supreme Court itself has observed that "allowing an equal protection claim on the ground that a ticket was given to one person and not others … would be incompatible with the discretion inherent in the challenged action." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603-04 (2008); *see also Oyler v. Boles*, 368 U.S. 448, 456 (1962) ("[T]he conscious exercise of some selectivity in enforcement is not itself a federal constitutional violation."). *Second*, it is well established that "a superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory" and that any such liability must be based on the superior officer's "own acts or omissions[.]" *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994). Noble therefore cannot be held liable for Sierra's actions and the Complaint does not provide any factual allegations indicating that Noble had any role in enforcing or prosecuting El-Bayeh in his role as Colonel of the State Police.

El-Bayeh has also not plausibly alleged that Gulliver (Highway Administrator of the Massachusetts Department of Transportation) violated his procedural due process rights by failing to inform him that the posted speeding limit was enforceable. To prevail on a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the plaintiff has been deprived of a protected property or liberty interest, and (2) that deprivation was accomplished without due process of law. *See Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 32 (1st Cir. 1996). Here, El-Bayeh has not alleged any deprivation of a protected property interest but instead speculated about "future injury" that might arise. ECF No. 24 ¶¶ 197-200, 219.

As an initial matter, El-Bayeh's procedural due process claim appears to rely on the flawed premise that he should not have received the 2021 Citation because he was unaware that the speed limit was enforceable. ECF No. 24 ¶¶ 214-219. It is well-settled that ignorance of the law is not a defense. *See United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563 (1971) ("The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation."). El-Bayeh's even weaker position that ignorance of the enforceability of the law precludes the Commonwealth from enforcing its traffic safety laws is meritless. *See id.*

Regardless, El-Bayeh has not alleged that he was denied due process. He received notice of the speed limit via posted signs. ECF No. 24-11 at 10. There is no requirement that government officials provide notice of the enforceability of regulations; to impose such a requirement would be inconsistent with the "strong presumption of validity" afforded to state safety regulations. *Kassel v. Consolidated Freightways Corp. of Delaware*, 450 U.S. 662, 670 (1981) (quotations omitted). El-Bayeh has therefore not plausibly alleged a violation of his Fourteenth Amendment rights that could sustain his claims.

## **CONCLUSION**

The Commonwealth Defendants request that this Court affirm the judgment of the District Court.

Respectfully submitted,

Defendants-Appellees

COLLEEN OGILVIE in her official capacity, MARIAN T. RYAN in her official capacity, GEOFFREY NOBLE in his official capacity, and JONATHAN GULLIVER in his official capacity

By their attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Hannah C. Vail*
Hannah C. Vail, First Circuit No. 1191161
Assistant Attorney General
Government Bureau/Trial Division
One Ashburton Place
Boston, MA 02108
(617) 963-2512
hannah.vail@mass.gov

Date: July 20, 2026

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 7,566 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with 14-point, Times New Roman font.

*/s/ Hannah C. Vail*
Hannah C. Vail

## CERTIFICATE OF SERVICE

I, Hannah C. Vail, Assistant Attorney General, hereby certify that I have this day, July 20, 2026, served the foregoing document upon all parties by electronically filing the foregoing brief through the Court's Electronic Case Filing ("ECF") system.

*/s/ Hannah C. Vail*
Hannah C. Vail

## ADDENDUM


Order on Motion to Dismiss (Doc. Nos. 16, 20)................................ Add001

*El-Bayeh I*, No. 20-P-0700, 163 N.E.3d 1040,
2021 WL 753530 (Mass. App. Ct. Feb. 26, 2021)............................ Add014

*El-Bayeh II,* No. 20-P-0728, 168 N.E.3d 1122,
2021 WL 1713099 (Mass. App. Ct. April 30, 2021) ........................ Add016

*El-Bayeh III,* 2023-P-0618, 238 N.E.3d 830,
2024 WL 3517636 (Mass. App. Ct. July 24, 2024).......................... Add020

*El-Bayeh IV,* 23-P-0675, 277 N.E.3d 1025,
2026 WL 849996 (Mass. App. Ct. March 27, 2026) ........................ Add022

Docket, *State Police Concord v. Mikhael H. El Bayeh*,
No. FAR 30873 (Supreme Judicial Court)....................................... Add026

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIKHAEL EL-BAYEH,<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT OF STATE POLICE et al.,<br><br>Defendants. | Civil No. 25-10476-LTS |

ORDER ON MOTIONS TO DISMISS (DOC. NOS. 16, 20)

December 18, 2025

SOROKIN, J.

Mikhael El-Bayeh, representing himself, initiated this proceeding after he was stopped and ticketed for speeding by Trooper Michael P. Sierra. The defendants have moved to dismiss for lack of subject-matter jurisdiction, for failure to state a claim, and under the doctrine of res judicata. Doc. Nos. 16, 20, 29, 36.[1] El-Bayeh opposes dismissal and has separately moved for a preliminary injunction. Doc. Nos. 37, 45. The motions are ripe, and for the reasons that follow, the defendants' motions to dismiss are ALLOWED. El-Bayeh's motion for preliminary injunction is thus DENIED as moot.

## I. BACKGROUND

El-Bayeh has a storied history with a stretch of U.S. Route 3 running through Burlington, Massachusetts. On July 26, 2018, he was stopped on this road by the Massachusetts State Police

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header. The operative complaint is available at Doc. No. 24.

("MSP") and issued a citation that alleged "a single violation for speeding, 96 miles per hour ["MPH"] in a 55 [MPH] zone."[2] Doc. No. 24-9 ¶ 89. El-Bayeh contested this citation in the Woburn District Court, but he was found responsible. Id. ¶ 90. He exhausted all appellate avenues, to no avail. Id. ¶¶ 90–94; see also Dep't of State Police v. El-Bayeh, 163 N.E.3d 1040 (Table) (Mass. App. Ct. 2021). Meanwhile, El-Bayeh filed a complaint against MassDOT and MSP in the Suffolk County Superior Court on June 21, 2019, challenging the legality of the speed limit on U.S. Route 3. Doc. No. 24 ¶¶ 120–122; see Doc. No. 24-1. The Superior Court dismissed El-Bayeh's claims on February 3, 2020, and he again exhausted all avenues for appeal without success. Id. ¶¶ 124–125; see Doc. No. 24-2; El-Bayeh v. Mass. Dep't of Transp., 168 N.E.3d 372 (Table) (Mass. App. Ct. 2021), appeal denied, 171 N.E.3d 721 (Table) (Mass. 2021).

On August 4, 2021, the day after the Supreme Judicial Court ("SJC") denied El-Bayeh's motion to reconsider his application for further appellate review in his challenge to the Route 3 speed limit, El-Bayeh was stopped by Sierra on the same stretch of road, allegedly driving seventy-two MPH.[3] Doc. No. 24 ¶¶ 21, 23. Sierra charged El-Bayeh with a speeding offense and assessed a fine of $175, payable within twenty days. Id. ¶¶ 28, 32. El-Bayeh appealed the citation to the Woburn District Court on August 23, 2021, and a magistrate judge found El-Bayeh responsible but reduced the fine to $105. Id. ¶¶ 170, 173; Doc. No. 24-9 ¶¶ 164–166. El-Bayeh then appealed to the Massachusetts Appeals Court ("MAC"), which granted a stay in the case until January 10, 2025, for El-Bayeh to litigate his concurrent suit described below. Doc. No. 24 ¶¶ 173, 176–182. His fine remains unpaid.

---

[2] El-Bayeh has not conceded that he was driving this fast, nor does it seem he has ever admitted to speeding at all.

[3] Again, El-Bayeh has never conceded he was speeding. On July 22, 2024, the Massachusetts Department of Transportation ("MassDOT") increased the speed limit to sixty-five MPH. Doc. No. 24 ¶ 157.

On September 21, 2021, El-Bayeh filed another suit challenging the legality of the fifty-five MPH speed limit, this time in the Middlesex County Superior Court. Doc. No. 24 ¶ 141; see Doc. No. 24-9 (operative complaint). He named as defendants MassDOT; "Jonathan Gulliver, in his individual and official capacity as Highway Administrator of [MassDOT]; Colleen Ogilvie, in her individual and official capacity as Registrar of Motor Vehicles; [MSP]; Christopher S. Mason, in his individual and official capacity as Colonel of [MSP]; [and] Michael P. Sierra, in his individual capacity." Doc. No. 24-9 at 2, ¶¶ 4–10. El-Bayeh asserted eleven claims for relief, including six claims under 42 U.S.C. § 1983 and one requesting declaratory judgment that the promulgated fifty-five MPH speed limit is void. Id. ¶¶ 171–205. The Middlesex Superior Court dismissed all claims on April 13, 2023, and El-Bayeh again unsuccessfully appealed. Doc. No. 24 ¶¶ 145–146; see Doc. No. 24-10; El-Bayeh v. Mass. Dep't of Transp., 238 N.E.3d 830 (Table) (Mass. App. Ct. 2024), appeal denied, 245 N.E.3d 1040 (Table) (Mass. 2024).

Following the SJC's denial of review, El-Bayeh attempted to further stay the appellate proceedings challenging the citation itself, stating there was "newly available evidence supporting a prima facie claim of selective prosecution." Doc. No. 24-13 at 4 (emphasis in original). In support of this request, he submitted to the MAC a spreadsheet he had created illustrating all 421 written warnings for speeding reported by Sierra between July 1, 2019, and October 14, 2024. Id. at 12–13; Doc. No. 24-15 at 23–28. El-Bayeh included in the spreadsheet the difference between the posted speed limit and the reported speed of each violator, finding the average difference was sixteen MPH. Doc. No. 24-13 at 12–13. El-Bayeh did not submit similar data for citations issued by Sierra assessing fines for speeding (instead of mere warnings) in the same time period. The MAC denied a further stay on February 5, 2025. Doc. No. 24 ¶ 190.

El-Bayeh filed his initial complaint with this Court on February 27, 2025, then filed yet another motion to stay with the MAC the following day. Id. ¶ 192; Doc. No. 1. The latter request was denied on March 3, 2025, and the MAC proceedings remain pending. Doc. No. 24 ¶¶ 193–194; see also Doc. No. 24-17.

The "newly available evidence" referenced by El-Bayeh concerns two traffic stops made by Sierra in the fourteen months following El-Bayeh's most recent stop. On March 30, 2022, Sierra stopped a vehicle driven by Daniel J. Snow along U.S. Route 3 in Bedford, Massachusetts.[4] Doc. No. 24 ¶ 34. Snow was wearing a jacket with a patch that read "MIDDLESEX SHERIFF'S OFFICE" on his left sleeve. Id. ¶ 38. Sierra informed Snow that he was stopped because he was going ninety-five MPH, but after running a check on Snow's license and registration, he issued Snow a written warning without a fine. Id. ¶¶ 41, 44–46. On October 2, 2022, Sierra stopped Thomas Blair on Route 2 in Littleton, Massachusetts.[5] Id. ¶ 63. Blair wore a baseball cap embroidered with the abbreviation "LFD," and when Sierra asked Blair where he worked, Blair replied: "Lincoln Fire Department." Id. ¶¶ 67, 70. Sierra told Blair that he had been stopped for driving eighty-six MPH in a fifty-five MPH zone, but again issued a written warning without a fine after running a check on Blair's license and registration. Id. ¶¶ 71, 73. El-Bayeh alleges the reason Sierra did not assess a fine against Snow or Bair was their affiliation with governmental entities.[6] Id. ¶¶ 55, 82.

---

[4] The footage from Sierra's body-worn camera is available here: https://youtu.be/C2qVqxZ4xRc. Doc. No. 24 ¶ 36.

[5] The footage from Sierra's body-worn camera is available here: https://youtu.be/v_x2Yy2sI4I. Doc. No. 24 ¶ 65.

[6] El-Bayeh alleges that he "is not and has never been a member of law enforcement or a fire department." Doc. No. 24 ¶ 30. He has not alleged that this fact was known to Sierra at the time of the traffic stop.

On May 19, 2025, El-Bayeh filed an amended complaint with this Court, asserting claims against the following defendants:

> Geoffrey D. Noble, in his official capacity as Colonel of the [MSP]; Michael P. Sierra, in his individual capacity and official capacity as a uniformed member of the [MSP]; Jonathan Gulliver, in his official capacity as Highway Administrator of the [MassDOT]; Colleen Ogilvie, in her official capacity as Registrar of Motor Vehicles; [and] Marian T. Ryan, in her official capacity as Middlesex County District Attorney.[7]

Id. at 1; see also id. ¶¶ 15–20.

El-Bayeh brings three claims under the Fourteenth Amendment and 42 U.S.C. § 1983. Id. ¶¶ 202, 209, 215. The first is for selective enforcement under the Equal Protection Clause, alleging Sierra treated El-Bayeh worse than "other similarly situated individuals" due to their "affiliation with a governmental entity." Id. ¶¶ 201–207. El-Bayeh also asserts a selective prosecution claim, alleging Sierra deprived him of his right to equal protection by giving "favorable treatment [to] other similarly situated individuals . . . based on an arbitrary classification—affiliation with a governmental entity." Id. ¶¶ 208–213. Finally, El-Bayeh brings a procedural due process claim against Defendant Gulliver for allegedly "fail[ing] to provide El-Bayeh with fair notice . . . that the fifty-five [MPH] regulatory speed zone on U.S. Route 3 was enforceable." Id. ¶¶ 214–219.

Along with monetary damages from Sierra individually, El-Bayeh seeks declaratory judgments in his favor, and both preliminary and permanent injunctions "prohibiting [the] Defendants from taking any future enforcement or prosecutorial action against El-Bayeh . . . from the alleged August 4, 2021[,] speeding violation." Id. at 42–43. The defendants move to

[7] Though named in the original complaint, MSP was omitted from the Amended Complaint. Compare Doc. No. 1 at 1, with Doc. No. 24 at 1. In this Order, the Court refers to all five named defendants, to the extent they are sued in their official capacities, as "the Commonwealth Defendants." Only Sierra is also sued in his individual capacity.

dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[8] See Doc. Nos. 17, 21, 29, 36.

## II. LEGAL STANDARD

Jurisdictional issues must be decided before delving into any questions of fact or law. Bell v. Hood, 327 U.S. 678, 682 (1945); see also Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995) ("When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court . . . should ordinarily decide the 12(b)(1) motion first."). Since immunity acts as "a limitation on the federal court's judicial power," Calderon v. Ashmus, 523 U.S. 740, 745 n.2 (1998), immunity doctrines are often deemed jurisdictional questions appropriately addressed first, Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105 (1st Cir. 2015). Dismissal is appropriate when "the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003). The party invoking federal jurisdiction (here, El-Bayeh) has "the burden of proving its existence." Jonson v. Fed. Deposit Ins. Corp., 877 F.3d 52, 56 (1st Cir. 2017) (citation modified).

To survive a Rule 12(b)(6) challenge, a complaint must state sufficient factual matter that, when accepted as true, establishes a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Courtemanche v. Motorola Sols., Inc., 774 F. Supp. 3d 289, 310 (D. Mass. 2025) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Claims are considered

[8] The defendants also invoke res judicata, based on the Middlesex County Superior Court suit asserting claims arising out of the same traffic stop. See Doc. No. 24-9. Since El-Bayeh's claims are subject to dismissal under Rules 12(b)(1) and 12(b)(6), the Court need not evaluate res judicata here.

facially plausible where a court can draw a "reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). A claim must have a likelihood greater than a mere possibility to be plausible, and determining plausibility is a context-specific task that requires courts to draw on "judicial experience and common sense." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quoting Iqbal, 556 U.S. at 679).

## III. DISCUSSION

### A. The Commonwealth Defendants

El-Bayeh's claims against the Commonwealth Defendants are barred by the doctrine of sovereign immunity. "Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," Monell v. Dept. of Soc. Servs. of N.Y.C., 436 U.S. 658, 690 n.55 (1978), "a suit against a state official in his or her official capacity . . . is a suit against the official's office" that is "no different from a suit against the State itself," Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). It is settled that "a State is not a 'person' against whom a [42 U.S.C.] § 1983 claim for money damages might be asserted." Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002) (citing Will, 491 U.S. at 66). Nor did Congress intend to abrogate sovereign immunity under the statute. Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993); Tenney v. Brandhove, 341 U.S. 367, 376 (1951). Therefore, the Commonwealth Defendants generally enjoy sovereign immunity against suits brought against them in federal court in their official capacities.

El-Bayeh contends that the Ex parte Young exception to sovereign immunity applies here. Doc. No. 38 at 3–5; Doc. No. 45 at 5. Under this exception, state officials who have taken unconstitutional actions to enforce state law maintain immunity from retrospective relief but may

be subject to injunctions awarding prospective relief. Ex parte Young, 209 U.S. 123, 159–60 (1908); accord Edelman v. Jordan, 415 U.S. 651, 665–66 (1974). To determine whether the exception applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (citation modified). Where there is no ongoing violation by state officials, "there is no prospective or ancillary relief to grant." Cotto v. Campbell, 126 F.4th 761, 768 (1st Cir. 2025), petition for cert. filed, No. 24-1307 (June 18, 2025).

El-Bayeh's alleged harm cannot be characterized as "ongoing" for the purpose of the Ex parte Young exception, even assuming he was harmed by a violation of federal law during the traffic stop. The First Circuit recently addressed this principle. In Cotto, the plaintiffs sought an order requiring the Commonwealth to return property the SJC had determined was wrongfully forfeited. 126 F.4th at 765. Notwithstanding the Commonwealth's potential "continuing liability for a past harm," the First Circuit found no ongoing violation of federal law arising from the failure to return the property. Cotto, 126 F.4th at 769. The same reasoning applies here. El-Bayeh alleges an ongoing violation of federal law because he "continues to be in jeopardy of being coerced to remit the imposed assessment and suffer the associated collateral penalties based on this unconstitutional claim against him." Doc. No. 38 at 4. In other words, he still must pay the fine he was assessed in the past, and he may suffer adverse collateral consequences if he fails to do so. Even if El-Bayeh's constitutional rights were violated during the traffic stop, he does not plausibly allege an ongoing violation of federal law by the Commonwealth Defendants. Any "continuing liability" of Sierra or other government officials "for a past harm" does not transform actions to enforce the citation and recover the assessed fine into an ongoing

constitutional violation. The Ex parte Young exception thus cannot be applied here to circumvent sovereign immunity.

One final point bears mention. El-Bayeh can mitigate any "associated collateral penalties" he fears will arise from his failure to pay the assessed fine. If he exhausts all appeals and is nevertheless found responsible for the ticket, he may avoid license suspension or contempt by paying the fine. Plaintiffs, including those with § 1983 claims, have a general duty to mitigate their damages. E.g., Bogan v. City of Bos., 489 F.3d 417, 428 (1st Cir. 2007). El-Bayeh may do so here—and, were he to plausibly state a claim against Sierra or another defendant challenging the lawfulness of the stop and then prevail on the merits of that claim, he could recover the fine he paid as a part of his damages.

Because sovereign immunity prevents El-Bayeh from obtaining monetary damages or other retrospective relief against the Commonwealth Defendants, and because El-Bayeh has not plausibly alleged an ongoing violation of federal law, this Court lacks subject-matter jurisdiction over nearly all of his claims. The motions to dismiss are ALLOWED as to all claims asserted against the Commonwealth Defendants.

### B. Sierra in his Individual Capacity

All that remains are El-Bayeh's selective prosecution and enforcement claims against Sierra in his individual capacity.[9] These claims must also be dismissed for failure to state a claim.

[9] El-Bayeh's claim for a due process violation is not plausibly alleged against Sierra in his individual capacity. Sierra is not responsible for the promulgation of speed limits, and nothing in El-Bayeh's pleading plausibly alleges otherwise.

El-Bayeh has failed to plausibly allege a violation of his Constitutional rights.[10] Plaintiffs stating a claim for relief under 42 U.S.C. § 1983 must "establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999); accord Lindke v. Freed, 601 U.S. 187, 194 (2024); Pike v. Budd, 133 F.4th 74, 83 (1st Cir. 2025); Yaghoobi v. Tufts Med. Ctr., Inc., 762 F. Supp. 3d 85, 92 (D. Mass. 2025). Section 1983 creates no rights of its own; instead, "it merely provides remedies for deprivations of rights established elsewhere." City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985). The first element of any claim brought under § 1983 is thus "whether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States." Martinez v. California, 444 U.S. 277, 284 (1980) (citation modified). "[A] violation of state law[] is not inherently sufficient to support a § 1983 claim." Boveri v. Town of Saugus, 113 F.3d 4, 7 (1st Cir. 1997); accord Durand v. Harpold, 807 F.3d 392, 394 (1st Cir. 2015).

El-Bayeh argues he was denied equal protection of the laws because Sierra denied him the "favorable treatment" Sierra afforded "other similarly situated individuals . . . based on an arbitrary classification—affiliation with a governmental entity." Doc. No. 24 at 39–40. But "affiliation with a governmental entity" is not a suspect class, nor does it implicate a fundamental right under the Constitution, so classification on this basis would not trigger heightened scrutiny.

[10] This finding supports dismissal for two reasons. First, the claims fail to withstand Sierra's Rule 12(b)(6) challenge. And second, Sierra would likely enjoy qualified immunity without a plausible allegation of a constitutional violation. See Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 8 (1st Cir. 2013) (describing two-step qualified immunity inquiry asking "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation" (citation modified)). The Court limits its discussion in the text to Rule 12(b)(6), which straightforwardly warrants dismissal.

See S.A. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973) (stating traditional indicia of suspect class is history of political powerlessness); see also United States v. Carolene Prods. Co., 304 U.S. 144, 152 n.4 (1938) (noting "discrete and insular minorities" are classes that are entitled to heightened scrutiny); cf. Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 313 (1976) (per curiam) (holding right of governmental employment is not fundamental). As such, any equal protection claims on this classification would be subject to rational basis review. Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 24 (2020) (Gorsuch, J., concurring) (per curiam) ("Rational basis review is the test this Court normally applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, or a claim of fundamental right." (emphasis in original)).

To state a claim that succeeds under rational basis review, El-Bayeh must plausibly allege that Sierra's decision to ticket him was not "rationally related to a legitimate governmental interest." U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 533 (1973); accord United States v. Montijo-Maysonet, 974 F.3d 34, 44 (1st Cir. 2020). Here, his allegations show the opposite. The Commonwealth of Massachusetts undoubtedly has a legitimate interest in ensuring traffic safety within its jurisdiction. Ry. Express Agency, Inc. v. N.Y., 336 U.S. 106, 109 (1949); accord Becky's Broncos, LLC v. Town of Nantucket, 138 F.4th 73, 80 (1st Cir. 2025). The question that remains, then, is whether Sierra's decision to assess a fine against El-Bayeh in the circumstances as El-Bayeh describes them was rationally related to this interest.

The answer is a resounding yes, even under the plaintiff-friendly Rule 12 standard. In El-Bayeh's own words, Sierra stopped him "because [Sierra] believed [he] was driving seventy-two [MPH] in a fifty-five [MPH] zone." Doc. No. 24 ¶ 23. The mere observation of El-Bayeh driving seventeen MPH above the posted speed limit reasonably warrants a stop and a citation.

Cf. Mass. Gen. Laws ch. 90, § 17 (codifying speeding as prima facie evidence of violating Massachusetts traffic laws). Stopping a driver in those circumstances is plainly and rationally related to the Commonwealth's interest in maintaining traffic safety. The decision to fine a motorist is just as rationally related to that interest, particularly where a record check reveals a driving history with the same kind of infraction on the same highway once before. In these circumstances, El-Bayeh has not plausibly alleged Sierra violated his right to equal protection under the Fourteenth Amendment.[11]

El-Bayeh's selective prosecution and enforcement claims against Sierra are implausible for a second reason: he has failed to plausibly allege that he is similarly situated to Snow and Blair. El-Bayeh contends they are similarly situated in all regards, except in their affiliation with a governmental entity. Doc. No. 24 ¶ 206. But simply saying this does not make it so. El-Bayeh cites to United States v. Lewis, 517 F.3d 20, 27 (1st Cir. 2007), to define "similarly situated" offenders as those who have "committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." But Lewis itself stresses a focus on "material prosecutorial factors," or those factors that "have some meaningful relationship either to the charges at issue or to the accused—and that might be considered by a reasonable prosecutor." Id. Here, such a material factor is squarely conceded in El-Bayeh's own pleadings and sets him apart from the comparators he describes—El-Bayeh's driving record.

During a traffic stop, police officers may perform "ordinary inquiries incident to the stop," such as "checking the driver's license and inspecting the automobile's registration and

[11] The only other authority El-Bayeh cites in alleging Sierra abused his enforcement or prosecutorial discretion is buried in an exhibit. There, El-Bayeh alleges Sierra's conduct violated Mass. Gen. Laws ch. 90C, § 2. Doc. No. 24-13 at 22. But Sierra's alleged state-law violation does not fall within the orbit of § 1983. See Sullivan, 526 U.S. at 49–50.

proof of insurance." Rodriguez v. United States, 575 U.S. 348, 355 (2015) (citation modified). It hardly needs saying that a motorist's driving record, revealed by "checking the driver's license," would be a relevant (and important) factor in an officer's assessment of whether to prosecute an alleged speeding offense. Cf. Commonwealth v. Rodriguez, 37 N.E.3d 611, 619 (Mass. 2015) (establishing "clear and compelling" government interest in allowing traffic stops for purpose of promoting public safety); United States v. Burleson, 657 F.3d 1040, 1046 (10th Cir. 2011) (stating background check may be run during traffic stop even if motorist's history is irrelevant to stop). El-Bayeh's driving record was blemished at least by his 2018 citation for traveling more than forty MPH over the speed limit, on the same highway where he was stopped by Sierra. Doc. No. 24-9 ¶ 89. El-Bayeh has not alleged that Snow or Blair had a driving record that was similarly blighted. This further dooms his equal protection claims against Sierra.

By failing to sufficiently allege a violation of his constitutional rights, El-Bayeh has failed to state a claim against Sierra upon which relief may be granted. Sierra's motion to dismiss is therefore ALLOWED with respect to the selective prosecution and enforcement claims against him in his individual capacity.

## IV. CONCLUSION

For the foregoing reasons, Sierra's Motion to Dismiss (Doc. No. 16) and the Commonwealth Defendants' Motion to Dismiss (Doc. No. 20) are ALLOWED. El-Bayeh's Motion for a Preliminary Injunction (Doc. No. 37) is DENIED as moot. The Clerk shall enter a separate judgment of dismissal and close this case. Each party shall bear their own fees and costs.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

99 Mass.App.Ct. 1113
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).
Appeals Court of Massachusetts.

DEPARTMENT OF STATE POLICE
v.
Mikhael EL-BAYEH.

20-P-700
|
Entered: February 26, 2021.

By the Court (Vuono, Rubin & Sullivan, JJ. [1] )

1 The panelists are listed in order of seniority.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

***1** Following a de novo hearing, a judge in the District Court found the defendant, Mikhael El-Bayeh, responsible for the civil motor vehicle infraction of speeding. El-Bayeh appealed to the Appellate Division. The decision was affirmed, and the appeal was dismissed. El-Bayeh now appeals from the order of dismissal and challenges the admissibility of the radar reading that showed he had been traveling ninety-six miles per hour. He further contends that, without the radar reading, the evidence was insufficient to prove that he was speeding. We affirm.

Background. We summarize the evidence presented at the hearing at which State Trooper John Ciszek testified and El-Bayeh, who appeared pro se, presented his case. On July 26, 2018, just before 9 A.M., Ciszek was patrolling Route 3 in Burlington when he observed a Subaru Impreza in the left lane "passing slower moving traffic." The trooper estimated that the vehicle was "traveling at a very high rate of speed, well above the posted [fifty-five] miles per hour speed limit." Using a hand-held light detection and ranging (LIDAR) unit, which measures the speed of vehicles using a laser, Ciszek determined that the vehicle was traveling ninety-six miles per hour. He stopped the car, identified the operator as El-Bayeh, and issued a citation.

El-Bayeh cross-examined Ciszek about his familiarity with the LIDAR unit and the accuracy of the reading Ciszek obtained when he pointed the device at El-Bayeh's car. In response, Ciszek described the two pre-operational tests that he performed on the LIDAR unit before using it on the day in question. Ciszek also described the manner in which he operated the device and acknowledged that he had targeted El-Bayeh's vehicle at a distance of 1,557.6 feet.

Thereafter, El-Bayeh introduced a number of exhibits in an attempt to show that the LIDAR device was not accurate at distances that exceeded 1,000 feet. [2] At the conclusion of the hearing, the judge found El-Bayeh responsible for speeding, but reduced the amount of the fine from $415 to $300. As previously noted, the judge's finding was affirmed by the Appellate Division.

2 El-Bayeh introduced a photograph of his vehicle from the same distance at which Ciszek measured its speed with the LIDAR unit; the calibration certificate for the LIDAR unit that Ciszek used when stopping El-Bayeh; the National Highway Traffic Safety Administration's Minimum Performance Standards for LIDAR Speed-Measuring Devices and Systems; and out-of-State authority for the proposition that radar measurements made at distances over 1,000 feet should be admissible only with supporting expert testimony.

Discussion. As an initial matter, although El-Bayeh challenged the accuracy of the LIDAR reading at his hearing, a question that concerns the weight of the evidence, he did not contest the admissibility of the reading itself. Accordingly, his argument that the judge should have excluded the radar reading is waived. See Police Department of Groveland v. Gallant, 76 Mass. App. Ct. 912, 913 (2010). [3]

3 Similarly, El-Bayeh did not request a Daubert-Lanigan hearing, and his claim that the judge failed to conduct one is also waived. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993); Commonwealth v. Lanigan, 419 Mass. 15 (1994).

***2** In any event, even if El-Bayeh had objected and preserved the issue, the radar reading was properly admitted. The evidence established that the radar device was not "untested" as El-Bayeh claims. During cross-examination, Ciszek testified that he was trained and certified to operate the LIDAR unit and described the two preoperational tests that he performed to confirm the accuracy of the device before using it on traffic patrol on the morning in question. First, Ciszek performed a "self test." If an error is detected during this test the LIDAR unit will not operate. The second test Ciszek performed was a "distance and accuracy" test. During this test, Ciszek used the LIDAR unit to measure two known distances. If the reading is within a "plus or minus one foot, then [it is] deemed to be accurate." Ciszek also described the manner in which he used the device to measure the speed of El-Bayeh's car. In addition, El-Bayeh himself produced the certification records showing that the radar device had been properly certified. [4]

4 Commonwealth v. Whynaught, 377 Mass. 14 (1979), on which El-Bayeh relies, is not to the contrary. In that case, the Supreme Judicial Court held that "where radar readings from untested equipment are admitted over objection and without independent corroborative evidence, we shall undoubtedly reverse any judgment of guilt and order that a judgment of not guilty be entered." Id. at 20-21. Here, as noted, El-Bayeh did not object to Ciszek's testimony that Ciszek had tested the device before using it. In addition, there was independent corroborative testimony from Ciszek that the defendant's car was traveling in excess of the speed limit.

In light of our conclusion that the radar reading was properly admitted, we discern no merit to El-Bayeh's argument that the evidence he was speeding was insufficient. The radar reading alone supported the judge's finding. In addition, apart from the reading, Ciszek testified that he observed the defendant's car traveling on a road with a posted speed limit of fifty-five miles per hour "at a very high rate of speed," and "passing slower moving traffic." This testimony formed an independent basis for the finding.

Decision and order of the Appellate Division affirmed.

**All Citations**

99 Mass.App.Ct. 1113, 163 N.E.3d 1040 (Table), 2021 WL 753530

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

99 Mass.App.Ct. 1122
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).
Appeals Court of Massachusetts.

Mikhael EL-BAYEH
v.
MASSACHUSETTS DEPARTMENT OF TRANSPORTATION.

20-P-728
|
Entered: April 30, 2021.

By the Court (Vuono, Rubin & Sullivan, JJ. [1])

1 The panelists are listed in order of seniority.

## MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

***1** After receiving a speeding ticket on a portion of Interstate Highway 3 (Route 3) near Burlington on which he regularly commutes, the plaintiff brought this action for a declaratory judgment and injunctive relief. In his complaint, he alleges that the defendant Massachusetts Department of Transportation (MassDOT) "special speed regulation" SSR #7659 (SSR), which sets the fifty-five miles per hour (mph) speed limit posted on this portion of Route 3, was unlawfully promulgated. In particular, he alleges that under MassDOT procedures and regulations, before a special speed regulation may be issued a traffic study including a speed study must be conducted. See Massachusetts Department of Transportation, Procedures for Speed Zoning on State Highways and Municipal Roads. [2] Those regulations provide that posted speed limits should in general be set based on a speed study that determines what the eighty-fifth percentile of traffic speed is under optimal conditions. See id. at § 5.f.

2 A copy of these regulations can be found at https://www.mass.gov/doc/procedures-for-speed-zoning-on-stateand-municipal-roadways/download.

The complaint alleges that the plaintiff submitted a public records request to ascertain whether a speed study had been conducted prior to the promulgation of SSR #7659 in 1996. He received no "responsive records indicating that SSR #7659 was supported by a speed study or promulgated in accordance with MassDOT [p]rocedures." He alleges that there is no evidence that a speed study was done prior to the promulgation of the SSR in 1996, and that after substantial work was completed upgrading this stretch of Route 3 so that its design speed was seventy mph, "MassHighway executed a speed study on U.S. Route 3 and issued an internal memorandum advising that the [fifty-five] mph posted speed limit was not in conformance with law and was a safety concern." He alleges that officers of the defendant Massachusetts State Police were improperly responsible for the decision not to raise the speed limit and argues that the posted speed limit must be consistent with the speed study. He seeks declarations, including that the speed limit was unlawfully promulgated and is unenforceable, and injunctive relief, including a requirement that MassDOT bring the speed limit into compliance with the law and that in the meantime it not be enforced.

The motion judge allowed the defendant's motion to dismiss on the basis of an absence of an actual controversy sufficient to allow invocation of the declaratory judgment act, see G. L. c. 231A, § 1, a lack of standing, see New Bedford Educators Ass'n v. Chairman of the Mass. Bd. of Elementary & Secondary Educ., 92 Mass. App. Ct. 99, 107-108 (2017), and failure to state a claim upon which relief could be granted. See Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The plaintiff has appealed. "We review the denial of a motion to dismiss de novo," taking all the factual allegations in the complaint as true and making all the reasonable inferences that can be drawn therefrom in favor of the nonmoving party, here the plaintiff. Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011).

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

***2** MassDOT does not argue that the facts alleged amount to compliance with the regulations in promulgating the SSR or the posted speed limit, nor does it argue that it is permitted to promulgate an SSR in the absence of a speed study, or in this case, a speed limit that is lower than is consistent with the speed study. Rather, MassDOT notes that a facial challenge to a public safety regulation like a speed limit is an uphill battle, that rational presumptions must be made in favor of its validity, and that regulations must be deferred to. In its brief, MassDOT says that to be valid, the regulation must only be reasonably related to the purposes of the enabling legislation, and that MassDOT has extraordinarily broad power to manage highways as it sees fit and to set regulations for speed limits if it so chooses: "MassDOT saw fit to set and maintain a speed limit of [fifty-five] mph on Route 3. Setting a speed limit of [fifty-five] mph is reasonably related to MassDOT's legislative mandate to 'administer, control and operate the state highway system.' G. L. c. 6C, § 3 [13]. To state a plausible claim, Mr. El-Bayeh would have had to allege facts tending to show that there is no reasonable relationship between SSR #7659 and these broad grants of statutory authority." These arguments suggest that MassDOT may impose any reasonable speed limit, even if it fails to follow the regulatory procedure set out for the adoption of speed limits. But MassDOT cites no authority for the proposition that it may adopt an SSR or a posted speed limit without following its own regulations, including undertaking and utilizing a speed study, nor do they assert, at least so far as we understand their brief, that failure to conduct a speed study or to impose a speed limit consistent with it may cause no injury because, regardless of its results, the speed set by MassDOT for any particular road is within its discretion. And indeed, at argument, counsel conceded that MassDOT must comply with its own regulations in promulgating SSRs and speed limits.

In this case, however, we need not resolve any of the questions presented by the merits of the plaintiff's claim, because it founders on the preliminary matter of standing. We are faced with a question of who might have standing to enforce the regulation about promulgation of the SSR and the posting of the speed limit, and what form a challenge to the SSR and the speed limit might take. It is not enough to say that the "true" speed limit is always what is "reasonable and proper." G. L. c. 90, § 17. Although that is true, and it does permit one charged with speeding perhaps to avoid conviction in some circumstances notwithstanding a violation of the speed limit, violation of a posted limit is prima facie evidence of failure to drive at a reasonable and proper speed, and it is of course the primary basis upon which speeding violations are found.

It is clear, and counsel for MassDOT agreed at argument, that one charged with speeding might in defense of a speeding citation challenge the lawfulness of the promulgation of the posted speed limit sign. That is one avenue available for redress from an unlawfully promulgated speed limit. And there can be no doubt that one arrested for speeding on the basis of such a posted limit has standing to challenge that posted limit. The plaintiff, however, did not do so in contesting his speeding ticket, and he argues that, since MassDOT is not a party to speeding cases, and such cases provide no mechanism for invalidating the continued use of unlawfully promulgated speed limits or ensuring that they are promulgated only in accordance with the controlling regulations, defense of a single speeding ticket provides an inadequate remedy for those, like him, credibly threatened by citation for violation of what he alleges is an unlawfully promulgated regulation.

MassDOT agrees that it must follow its own regulations. But at argument it could not identify any party who, in its view, would have standing to challenge its promulgation of an unlawful speed limit. It argues that it cannot be that anyone who drives on Route 3 in Burlington can bring an action challenging the speed limit, and we agree that there must be some particularized harm done to a putative plaintiff in order for him or her to have standing. In this Commonwealth, though, our law, at the least, disfavors rights without remedies. Indeed, certiorari actions are available precisely when there is "no other available remedy." Rosenfeld v. Board of Health of Chilmark, 27 Mass. App. Ct. 621, 626 (1989). Likewise, "[t]he purpose of the declaratory judgment statute, G. L. c. 231A, is 'to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations.' G. L. c. 231A, § 9 .... '[A] complaint for declaratory relief is an appropriate way of testing the ... propriety of practices involving violations of rights, which are consistent and repeated in nature.' Nelson v. Commissioner of Correction, 390 Mass. 379, 388 n.12 (1983), citing G. L. c. 231A, § 2." Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 724-725 (2016).

***3** But even were we to assume someone has standing who has already been charged with speeding as a result of what he alleges is an unlawful speed limit on a particular stretch of highway, and who continues to use this same stretch of highway that he alleges has an unsafely low speed limit

regularly for his commute, thereby exposing him to the risk that by driving safely he will again subject himself to a civil citation, the plaintiff in this case would still lack standing to bring this claim. [3]

3 We note that in an unpublished memorandum and order pursuant to our former rule 1:28, Hingham Police Dep't v. Zotos, Mass. App. Ct., 11-P-1716 (May 16, 2012), which has no precedential value and is not raised by MassDOT, but which is addressed by the plaintiff in his brief, a panel of this court held that there was no prejudice to an individual charged with speeding who alleged that the speed limit was unlawfully promulgated where the speed he was traveling was above the speed limit that would have been applicable under G. L. c. 90, § 17, had the roadway been unposted. The maximum speed on an unposted roadway in the Commonwealth is fifty mph. See G. L. c. 90, § 17. Assuming without deciding that Zotos was decided correctly, we do not think it is applicable to a civil action such as this, as it would render every speed limit over fifty mph that is too low immune from challenge. In addition, it would not in any event be applicable here, since the plaintiff is alleging that under a 2005 speed study the speed limit should have been raised above fifty-five mph.

The rule we have assumed would theoretically apply only to those who have been charged with speeding as a result of the allegedly unlawfully low speed limit. Although the plaintiff does not advocate for a particular speed limit, he asserts in his complaint that the "design speed" of Route 3 is seventy miles per hour, [4] suggesting that he believes this could be an appropriate speed limit (the highest speed limit currently posted anywhere in the Commonwealth is sixty-five miles per hour). [5] Taking judicial notice, as we are allowed to do, see Flynn v. Brassard, 1 Mass. App. Ct. 678, 681 (1974), of the record of the plaintiff's case before this court challenging his speeding ticket, Massachusetts Dep't of State Police v. El-Bayeh, Mass. App. Ct., 20-P-700 (February 26, 2021) (unpublished opinion under rule 23.0), the charge against him was based on his traveling ninety-six miles per hour. Even if we assume, for the sake of argument, that seventy miles per hour is indeed the proper speed limit for Route 3, and we also assume that, as a practical matter, the police generally only stop people going more than ten miles per hour over the speed limit, that, at most, would afford standing to someone ticketed for traveling eighty miles per hour or less. The plaintiff was driving ninety-six miles per hour, twenty-six miles per hour above a speed limit he appears to believe is appropriate, one that is five miles per hour above the highest speed limit currently posted in Massachusetts. In such circumstances, his speeding ticket was not caused by the allegedly unlawfully low posted speed limit; he would have received a ticket even if the speed limit were raised to seventy -- or even eighty -- miles per hour.

4 The plaintiff explains in his complaint that the "design speed" is "the speed at which geometric features of the highway will reasonably accommodate a poor driver, in a poor vehicle, when the road surface is wet."

5 Although there appears to be no maximum speed limit in Massachusetts, G. L. c. 90, § 17A, provides, "[u]nless otherwise prohibited by federal law, the maximum speed for motor vehicles traveling on interstate highway route 90, the Massachusetts Turnpike, between the New York state border and the Westfield interchange, and from the Ludlow interchange to the Auburn interchange, interstate highway route 91 from the Vermont border to Northampton, Exit 21, and interstate 95 from the Newbury interchange 56 to the Danvers interchange 50, shall be sixty-five miles per hour." For context, as of February of 2021, the maximum posted speed limit in Massachusetts is sixty-five miles per hour, and the highest maximum posted speed limit nationwide is eighty-five miles per hour on certain portions of highway in Texas. See Insurance Institute for Highway Safety: Highway Loss Data Institute, Maximum Posted Speed Limits by State, https://www.iihs.org/topics/speed/speed-limit-laws#fn8.

***4** Therefore, because the plaintiff lacks standing, the order allowing the motion to dismiss is affirmed. [6]

6 We express no opinion whether a party with standing would properly bring a challenge to a speed limit as unlawfully promulgated by way of an action in the nature of certiorari, or by way of an action seeking a declaratory judgment, as the plaintiff did here.

So ordered.

Affirmed.


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**All Citations**

99 Mass.App.Ct. 1122, 168 N.E.3d 372 (Table), 2021 WL 1713099

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

104 Mass.App.Ct. 1115
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).
Appeals Court of Massachusetts.

Mikhael EL-BAYEH
v.
MASSACHUSETTS DEPARTMENT OF TRANSPORTATION & others. [1]

1 Jonathan Gulliver, in his individual and official capacity as Highway Administrator of the Department of Transportation; Colleen Ogilvie, in her individual and official capacity as Registrar of Motor Vehicles; Department of State Police; Christopher S. Mason, in his individual capacity; John E. Mawn, Jr., in his official capacity as Interim Colonel of the Department of State Police; and Michael P. Sierra, in his individual capacity.

23-P-618
|
Entered: July 24, 2024

By the Court (Green, C.J., Desmond & Hershfang, JJ. [2])

2 The panelists are listed in order of seniority.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

*1 After receiving a citation for speeding while driving on Route 3 in Burlington, the plaintiff brought an action in the Superior Court challenging the validity of the speed limit on which his citation was based and asserting claims for violation of his civil rights. The defendants moved successfully to dismiss the complaint, and the plaintiff appealed from the resulting judgment. We affirm.

For purposes of our review we assume, without deciding, that the plaintiff has standing to challenge the validity of the speed limit that formed the basis of his citation for speeding. [3]

3 The defendants continue to insist that the plaintiffs lack standing, though they have not identified who would have standing to question the validity of the speed limit, or in what circumstances.

The authority of the Department of Transportation (department) to establish speed limits is established by G. L. c. 90, § 18, which provides (inter alia) that the department “may make ... special regulations as to the speed of motor vehicles” on ways subject to its jurisdiction. [4] In 1996, the department adopted an emergency regulation, special speed regulation #7659 (SSR 7659), establishing a speed limit of fifty-five miles per hour on a number of roads, including the applicable stretch of Route 3. The plaintiff contends that SSR 7659 was invalid ab initio, because (i) at the time of its adoption a department requirement related to the establishment of speed limits required that any speed limit be supported by a traffic engineering study, and (ii) the department did not conduct a traffic engineering study before adopting SSR 7659.

4 The parties do not appear to dispute that Route 3 is subject to the department's jurisdiction for such purposes.

As a threshold matter, we note that nothing in G. L. c. 90, § 18, requires that a special speed regulation established thereunder be supported by a traffic engineering study. Though the plaintiff asserts that department procedures require such a study antecedent to the establishment of any special speed regulation, [5] the requirement the plaintiff cites is expressed in the department's “Procedures for Speed Zoning on State Highways and Municipal Roads” (Procedures), and those procedures reside at a sub-regulatory level and are not a regulation. [6] In addition, the department enjoys broad latitude to enact regulations consistent with the governing statutory framework. See, e.g., Berrios v. Department of Pub. Welfare, 411 Mass. 587, 595-596 (1992). The record reflects that

the speed limit set forth in the emergency speed regulation established by SSR #7659 in 1996 included the certification required by G. L. c. 90, § 18, that it "is consistent with the public interests."

5 The version of the Procedures included in the record (which included the requirement for an engineering study) bears a date of 2017. However, the plaintiff's complaint asserts that the same requirement was included in the version in effect in 1996, when SSR 7659 was adopted, and the department does not appear to contest that assertion. In any event, for purposes of reviewing the plaintiff's claim on a motion to dismiss, "the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." Iannacchino v. Ford Motor Co., 451 Mass. 623, 625 n.7, quoting Nader v. Citron, 372 Mass. 96, 98 (1977).

6 Nothing in the plaintiff's complaint, or otherwise in the record, identifies a basis to conclude that the procedures were adopted as a regulation pursuant to statutory directive or delegation.

***2** Moreover, though G. L. c. 85, § 2, incorporates the department's manual of procedures concerning speed limits by reference, for purposes of posting highway signs, [7] the same statute also authorizes the department to "make, alter, rescind or add to rules and regulations relative to such signs," giving the department discretion to depart from guidelines generally applicable to speed limits as incorporated in the traffic signs it installs. [8]

7 In pertinent part, the statute directs the department to "erect and maintain on state highways ... such direction signs, warning signs or lights, curb, street or other traffic markings, mechanical traffic signal systems, traffic devices or parking meters as it may deem necessary for promoting the public safety and convenience and shall likewise install and maintain in accordance with the department's current manual on uniform traffic control devices, such curb, highway, street or other traffic markings as conditions may require." G. L. c. 85 § 2.

8 We note as well that, with specific reference to speed control signs, § 2 states that "[n]otwithstanding the foregoing, speed control signs may be established only in accordance with the provisions of section eighteen of chapter 90." G. L. c. 85, § 2. As we have observed, nothing in G. L. c. 90, § 18, requires a traffic engineering study for the establishment of a special speed regulation established thereunder, and we are aware of no reference in any other statute stating or implying that the procedures set forth in the manual are mandatory or inalterable.

We discern no improper exercise of the department's regulatory discretion in its decision, in 1996, to enact SSR 7659 as an emergency regulation to maintain speed limits on a number of highways at the same speed (fifty-five miles per hour) as they had been before the repeal of Federal legislation previously in effect. [9]

9 We note that, though not in effect at the time the citation issued in the present case, by amendment to G. L. c. 90, § 18, effective on April 2, 2023, upon rescission of any special speed regulation enacted pursuant to that section, the fifty mile per hour speed limit established by G. L. c. 90, § 17, would govern. See St. 2022, c. 358, § 13.

The plaintiff's claims for violation of his civil rights against the individual defendants were properly dismissed based on qualified immunity, for the reasons explained in the motion judge's written memoranda of decision, included in the Appellant's record appendix at 493-494 and 497-498. Similarly, as explained by the motion judge, "[a]n agency of the Commonwealth is not a person subject to suit for money damages under § 1983," Laubinger v. Department of Rev., 41 Mass. App. Ct. 598, 601 (1996), and the plaintiff's § 1983 claims against the department were likewise properly dismissed.

Judgment affirmed.

**All Citations**

104 Mass.App.Ct. 1115, 238 N.E.3d 830 (Table), 2024 WL 3517636

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

106 Mass.App.Ct. 1128
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).
Appeals Court of Massachusetts.

DEPARTMENT OF STATE POLICE
v.
Mikhael H. EL-BAYEH.

23-P-675
|
Entered: March 27, 2026

By the Court (Rubin, Henry & Wood, JJ. [1])

[1] The panelists are listed in order of seniority.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

***1** Following a de novo hearing, a judge of the District Court found the defendant, Mikhael El-Bayeh, responsible for the civil motor vehicle infraction of speeding, G. L. c. 90, § 17. El-Bayeh appealed to the Appellate Division, which affirmed the District Court judge's finding of responsibility. El-Bayeh now appeals, arguing, among other things, that (1) the de novo hearing judge (hearing judge) erred by denying El-Bayeh's motion to dismiss the speeding citation and (2) the motion judge (motion judge) erred by denying El-Bayeh's motion to permit inspection of written documents and materials in possession of the Department of State Police (department) that he argues were essential to his defense. We reverse the decision and order of the Appellate Division and remand for entry of an order vacating the District Court's finding of responsibility.

Background. 1. Procedural history. On August 4, 2021, a State trooper issued El-Bayeh a citation for speeding, which El-Bayeh appealed to a clerk-magistrate of the District Court. The clerk-magistrate found El-Bayeh responsible for the infraction. El-Bayeh then requested a de novo appeal to a judge of the District Court.

Prior to the hearing, El-Bayeh moved for, among other things, discovery. His motion was denied. We reserve for later discussion the discovery El-Bayeh sought. Following the de novo hearing, the hearing judge found El-Beyah responsible. El-Bayeh then appealed to the Appellate Division, which affirmed the finding of responsibility.

2. Statement of facts. We summarize the evidence presented at the de novo hearing at which State Trooper Michael Sierra testified and El-Bayeh, who represented himself, presented his case. On August 4, 2021, at approximately 6:30 P.M., the trooper was parked in the ramp area connecting Interstate Highway 95 and Route 3 in Burlington. It was slightly raining and cloudy, and the "roadways were slightly damp." The trooper heard an "engine sounded to be at full throttle," and when he looked up, he saw a gray Subaru Forester "flying past" him at the top of the ramp. The trooper visually estimated that the vehicle was traveling fifty miles per hour and accelerating, whereas other cars on the ramp were traveling at roughly thirty miles per hour. As the Forester accelerated past the trooper, he retrieved his light detection and ranging (LIDAR) [2] device. The trooper visually estimated that the Forester was by then traveling at seventy-five miles per hour, and the LIDAR device measured a speed of seventy-two miles per hour. The vehicle was traveling in a zone with a posted speed limit of fifty-five miles per hour. The trooper stopped the vehicle, identified the operator as El-Bayeh, and issued a citation.

[2] " 'Lidar,' a portmanteau of 'light' and 'radar,' refers to '[a]n optical sensing technology used to determine the position, velocity, or other characteristics of distant objects by analysis of pulsed laser light reflected from their surfaces' " (citation omitted). Commonwealth v. Crowder, 495 Mass. 552, 554 n.3 (2025).

***2** During the hearing, El-Bayeh objected to the introduction of LIDAR evidence, and he cross-examined the trooper about

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

how the trooper visually estimated the speed of El-Bayeh's vehicle. During the trooper's testimony, El-Bayeh moved to dismiss on the grounds that the citation was not entered into evidence. The hearing judge denied the motion to dismiss, found El-Bayeh responsible, and imposed a fine of $105. El-Bayeh appealed to the Appellate Division, which affirmed the de novo judge's finding of responsibility.

Discussion. 1. Motion to dismiss. El-Bayeh asserts that the hearing judge erred in denying his motion to dismiss because the trooper did not introduce a copy of the traffic citation into evidence and, therefore, the department did not show probable cause that he was speeding, and the department did not satisfy the "no-fix" law, G. L. c. 90C, § 2. We disagree.

First, because the trooper testified that he observed El-Bayeh speeding, the trooper had probable cause to believe that El-Bayeh committed a civil motor vehicle infraction. See Commonwealth v. Lobo, 82 Mass. App. Ct. 803, 808-809 (2012) (trooper's "immediate observation that none of [a vehicle's] occupants was wearing a seat belt provided a basis to cite ... all the vehicle's occupants ... for a seat belt law violation"); Commonwealth v. Zimmermann, 70 Mass. App. Ct. 357, 359 (2007) (trooper's visual observations provided probable cause that defendant was operating his motor vehicle at rate of speed that was greater than reasonable or prudent).

Second, we discern no error in the hearing judge's conclusion that the department complied with G. L. c. 90C, § 2, the "no fix" statute, which generally requires a law enforcement officer "to give a copy of the [traffic] citation to the violator at the time and place of the violation." Id. Here, the trooper testified that he gave a paper citation to El-Bayeh during the traffic stop. Contrast Commonwealth v. Carapellucci, 429 Mass. 579, 581 (1999) (complaint dismissed pursuant to G. L. c. 90C, § 2, where Commonwealth conceded that no copy of motor vehicle citation was ever mailed or delivered to defendant). We are not persuaded by El-Bayeh's argument that the best evidence rule required a copy of the citation to be introduced into evidence because the rules of evidence do not apply at hearings on civil motor vehicle infractions.[3] Rule VII(b)(1) of the Trial Court Rules, Uniform Rules on Civil Motor Vehicle Infractions (1986). Thus, the hearing judge did not err in denying El-Bayeh's motion to dismiss.[4]

3 Even if the rules of evidence did apply at the de novo hearing, the best evidence rule was inapplicable because the purpose of the trooper's testimony on this issue was not to prove the contents of the citation; it was to prove that he gave the citation to El-Bayeh. See Commonwealth v. Balukonis, 357 Mass. 721, 725 (1970) ("The best evidence rule is applicable to only those situations where the contents of a writing are sought to be proved").

4 We also reject El-Bayeh's argument that Trial Court Rule VII(d)(2) required the de novo judge to review a copy of the citation to find probable cause. See rule VII(d)(2) of the Trial Court Rules, Uniform Rules on Civil Motor Vehicle Infractions ("Upon receipt of a claim of appeal, the clerk shall promptly transmit a copy of it, together with copies of all papers in the case then on file, including the citation, front and back, to the appropriate Appellate Division"). On its face, rule VII(d)(2) governs the transmission of materials to the Appellate Division and does not prescribe what evidence must be presented to a judge conducting a de novo hearing in the District Court. Though it would have been the better practice for the department to introduce a copy of the citation into the record, this administrative rule does not set an evidentiary requirement. The hearing judge could conclude from the trooper's testimony alone that there was probable cause to issue a speeding citation to El-Bayeh. See rule VII(b)(1) of the Trial Court Rules, Uniform Rules on Civil Motor Vehicle Infractions (at hearings on civil motor vehicle infractions, "[t]he evidence shall be given such weight as the judge or clerk-magistrate deems appropriate").

***3** 2. Motion for discovery. Prior to the hearing on the de novo appeal, El-Bayeh filed a motion "to permit inspection of written documents, materials, and/or potentially exculpatory evidence." El-Bayeh requested to inspect (1) the LIDAR unit used by the trooper to measure the speed of El-Bayeh's vehicle; (2) the LIDAR unit's storage area; (3) the user manual for the LIDAR unit; and (4) the site where the LIDAR unit was last tested by the trooper before issuing the speeding citation at issue -- in this case, the trooper's backyard. The department opposed the motion, arguing that El-Bayeh failed to establish that the requested materials were relevant to demonstrate that the LIDAR device was inaccurate or defective. Following a hearing on El-Bayeh's motion, the motion judge denied the motion "for the reasons set forth in the Department of State Police's opposition."


WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

El-Bayeh is correct that pursuant to G. L. c. 90C, § 3 (A) (4), fifth par., he is entitled to at least some discovery, however, that determination is left to the motion judge in the first instance. The statute provides that "[o]n a showing of need in advance of [a civil motor vehicle infraction] hearing, the magistrate or justice may direct that the violator be permitted to inspect specific written documents or materials in the possession of the police officer or agency concerned that are essential to the violator's defense." G. L. c. 90C, § 3 (A) (4), fifth par. Fundamentally, while the rules of evidence do not apply at hearings on civil motor vehicle infractions, the judge or clerk-magistrate must preserve the alleged violator's right to a fair hearing. See Commonwealth v. Mongardi, 26 Mass. App. Ct. 5, 9 (1988) ("the procedure with respect to civil motor vehicle infractions authorized by [G. L.] c. 90C, §§ 1-3, ... seeks to attain prompt compliance with government regulations while preserving the right to a fair hearing").[5]

5 After Mongardi, the Legislature rewrote c. 90C, § 3, to expressly allow for discovery in advance of hearings on civil motor vehicle infractions. G. L. c. 90C, § 3, as amended through St. 1991, c. 138, § 161.

Given that the department intended to -- and ultimately did -- rely in part on LIDAR evidence to prove that El-Bayeh had been speeding, written documents and materials relevant to the reliability of the LIDAR unit were "essential" to his defense. G. L. c. 90C, § 3 (A) (4), fifth par. El-Bayeh argued in his motion that inspection of the LIDAR unit user manual could help him cross-examine the trooper about whether the device was properly stored and calibrated on the day of the incident. Moreover, while the department did not object to this request it did not provide the user manual. Similarly, records of the calibration of the unit are essential to determine whether the unit was properly calibrated. Where production of this discovery could have assisted El-Bayeh in challenging the admissibility of the LIDAR reading or in cross-examining the trooper, and where such production would not have unduly burdened the department, it was an abuse of discretion for the motion judge not to allow this discovery.[6]

6 While the trooper did bring the State police LIDAR guide with him to the hearing and the hearing judge offered to pause the hearing to allow El-Bayeh time to inspect it, he maintained his objection because this did not allow him to prepare before the hearing.

As for El-Bayeh's requests to inspect the LIDAR unit, the storage area, and the testing site, those requests must be evaluated in light of any written discovery that is ordered consistent with this memorandum and order. In that context, the motion judge will be better equipped to evaluate and balance the parties' competing interests and whether such discovery is essential to El-Bayeh's defense. Here, El-Bayeh argued in his motion that inspection of the LIDAR unit would allow him to verify the existence and condition of the unit; inspection of the storage area would allow him to confirm if the device was properly stored according to the user manual; and inspection of the testing site, which was at the trooper's home, would allow El-Bayeh to examine if the site complied with the unit's pre-operational testing requirements.[7]

7 For example, the hearing judge should factor in that El-Bayeh has independently learned and confirmed the trooper's home address so the confidentiality of that information is no longer at issue.

***4** Simply put, El-Bayeh must be provided sufficient discovery to challenge the accuracy of the LIDAR unit.[8] Commonwealth v. Whynaught, 377 Mass. 14, 18 (1979) ("most courts have agreed that the admission of radar evidence is conditioned on a demonstration to the court of the accuracy of the radar apparatus"). It also might be that after receiving the written discovery, El-Bayeh may no longer need the additional discovery, or that his interests may be served by examining photographs of the LIDAR unit, where it was stored, and where it was calibrated.

8 Of course, if the department elects to proceed without the use of LIDAR evidence, this discovery will not be necessary. "[L]ike many lay witnesses who directly observe a motor vehicle while it is moving, a police officer is likely to be qualified to offer an estimate of the speed of that vehicle." Peterson v. Foley, 77 Mass. App. Ct. 348, 351 (2010). We express no opinion on the sufficiency of the non-LIDAR evidence to support a finding of responsibility.

Conclusion. Because the hearing judge may have relied upon LIDAR evidence in finding El-Bayeh responsible,[9] we are constrained to reverse the decision and order of the Appellate Division and remand to the Appellate Division for entry of an order vacating the District Court's finding of responsibility.[10]


WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

9 Given our disposition, we need not reach the issue of whether the evidence obtained from the LIDAR device was admissible. We also decline to reach the issue because the evidence may differ at any hearing after remand.

10 El-Bayeh's request for a refund of his filing fees pursuant to G. L. c. 90C, § 3 (A) (4), first par., is denied. That provision allows a refund when the disposition on appeal results in a finding of not responsible, which has not occurred here.

So ordered.

**All Citations**

106 Mass.App.Ct. 1128, 277 N.E.3d 1025 (Table), 2026 WL 849996

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# SUPREME JUDICIAL COURT
for the Commonwealth
Case Docket

## DEPARTMENT OF STATE POLICE vs. MIKHAEL H. EL-BAYEH
FAR-30873

### CASE HEADER

| | |
|---|---|
| Case Status | FAR application pending |
| Status Date | 06/26/2026 |
| Nature | Motor Vehicle Infraction |
| Entry Date | 04/16/2026 |
| Appeals Ct Number | 2023-P-0675 |
| Response Date | 07/10/2026 |
| Appellant | Defendant |
| Applicant | Defendant |
| Citation | |
| Case Type | Civil |
| Full Ct Number | |
| TC Number | 2153MV000407 |
| Lower Court | Woburn District, MI |
| Lower Ct Judge | Marianne C. Hinkle, J. |

| INVOLVED PARTY | ATTORNEY APPEARANCE |
|---|---|
| **State Police Concord**<br>Plaintiff/Appellee | Siobhan Kelly, Esquire<br>Jennifer M. Staples, Special A.A.G. |
| **Mikhael H. El-Bayeh**<br>Pro Se Defendant/Appellant | |

### DOCKET ENTRIES

| Entry Date | Paper | Entry Text |
|---|---|---|
| 04/16/2026 | | Docket opened. |
| 04/16/2026 | #1 | MOTION to file FAR application late filed by Mikhael El-Bayeh. (4/23/2026: The motion is allowed). |
| 05/20/2026 | #2 | MOTION to file FAR application late filed by Mikhael H. El-Bayeh. (5/21/2026: The motion is allowed. Further enlargements of time should not be anticipated). |
| 06/26/2026 | #3 | FAR APPLICATION filed by Mikhael H. El-Bayeh. |
| 07/09/2026 | #4 | Response to FAR application filed for State Police Concord by Attorney Siobhan Kelly. |

As of 07/09/2026 5:20pm