No. 26-1067
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

MIKHAEL EL-BAYEH,
Plaintiff-Appellant,

v.

MASSACHUSETTS DEPARTMENT OF STATE POLICE; MICHAEL P. SIERRA, in the individual capacity and official capacity as a uniformed member of the Massachusetts Department of State Police; COLLEEN OGILVIE, in the official capacity as Registrar of Motor Vehicles; MARIAN T. RYAN, in the official capacity as Middlesex County District Attorney; GEOFFREY NOBLE, in the official capacity as Colonel of the Massachusetts Department of State Police; JONATHAN GULLIVER, in the official capacity as Highway Administrator of the Massachusetts Department of Transportation,
Defendants - Appellees.

---

**ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

---

**BRIEF OF THE DEFENDANT-APPELLANT, MICHAEL P. SIERRA**

---

Joseph G. Donnellan
First Circuit Court of Appeals Bar #37075
Rogal & Donnellan, P.C.
100 River Ridge Drive, Suite 203
Norwood, Massachusetts 02062
(781) 255-1200
jdonnellan@rogalanddonnellan.com

## TABLE OF CONTENTS


I. Table of Authorities.................................... 3

II. Statement of the Issues................................ 6

III. Standard of Review.................................... 7

IV. Concise Statement of the Case.......................... 8

A. Statement of the Facts............................. 8
B. Procedural History................................. 9
C. Identification of Rulings Presented for Review... 12

V. Summary of the Argument................................ 12

VI. Argument.............................................. 14

A. Sovereign Immunity Bars an Official Capacity Claim Against Tpr. Sierra. ................................................... 14
B. Plaintiff's Equal Protection Claim Fails the "Substantially Similar" Test. ................................................... 16
C. Plaintiff's State Court Action Dooms his Claims Under the Doctrine of Res Judicata. ................................................... 21
D. Plaintiff Missed the Three-Year Statute of Limitations Period. ................................................... 25
E. Tpr. Sierra Has Absolute and Qualified Immunity from Plaintiff's Claims. ................................................... 27
F. Plaintiff's Request for a Preliminary Injunction is Moot. ................................................... 31

VII. Conclusion and Relief Requested....................... 32

VIII. Request for Oral Argument............................ 32

IX. Certificate of Compliance with Fed. R. A. P. 32....... 33

X. Certificate of Service.................................. 33

XI. Addendum............................................. A-1

## I. **Table Of Authorities**:

**Cases**:

Ashcroft v. Iqbal,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)
.............................................................. 21

Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.,
246 F.3d 1 (1st Cir. 2001).
.......................................................... 16, 17

Barrows v. New England Sch. of Acupuncture, 106 Mass. App. Ct.
1121, review denied, 497 Mass. 1109, 274 N.E.3d 1097 (2026).
.............................................................. 26

Brader v. Biogen, Inc., 983 F.3d 39 (1st Cir. 2020)
.............................................................. 26

Bryan v. City of Madison, Miss., 213 F.3d 267 (2000).
.............................................................. 21

Butz v. Economou, 438 U.S. 478, 515, 98 S.Ct. 2894 (1978)
.............................................................. 28

Cao v. Commonwealth of Puerto Rico, 525 F.3d 112 (1st Cir. 2008)
.......................................................... 14, 25

Cordi-Allen v. Conlon, 494 F.3d 245 (1st Cir. 2007)
.......................................................... 13, 17

Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13 (1st Cir. 1989)
.............................................................. 17

Durand v. Harpold, 807 F.3d 392 (1st Cir. 2015)
.............................................................. 31

El-Bayeh v. Massachusetts Department of Transportation, et al.,
104 Mass. App. Ct. 1115 (2024)
.............................................. 8, 11, 22, 24, 29

El-Bayeh v. Massachusetts Department of Transportation, et al.,
495 Mass. 1102 (2024)
.............................................................. 11

Fantini v. Salem State College, 557 F.3d 22 (1st Cir.2009)
.......................................................... 12, 15

Giragosian v. Ryan, 547 F.3d 59 (1st Cir. 2008)
.......................................................... 13, 22, 25

Graham v. Connor,
490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)
.............................................................. 30

Harlow v. Fitzgerald,
457 U.S. 800, 102 S.Ct. 2727, 72 L.Ed.2d 396 (1982)
.......................................................... 28, 29, 30

Imbler v. Pachtman,
424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)
.............................................................. 27

In re Sonus Networks, Inc, S'holder Derivative Litig.,
499 F.3d 47 (1st Cir. 2007)
.............................................................. 23

Kalina v. Fletcher,
522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)
.............................................................. 27

Kobrin v. Bd. of Registration in Med., 444 Mass. 837, 832 N.E.2d
(2005)
.............................................................. 23

Maldonado v. Fontanes, 568 F.3d 263 (2009)
.............................................................. 29

Malley v. Briggs, 475 U.S. 335 (1986)
.............................................................. 30

Martinez-Rivera v. Commonwealth of Puerto Rico,
812 F.3d 69 (1st Cir. 2016)
............................................................ 7-8, 22

Mancuso v. Kinchla, 60 Mass. App. Ct. 558, 806 N.E.2d 427 (2004)
.............................................................. 24

McDonough v. City of Quincy, 452 F.3d 8 (1st Cir. 2006)
.......................................................... 23, 24, 25

Migra v. Warren City Sch. Dist. Bd. of Educ.,
465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)
.............................................................. 23

Mlodzinski v. Lewis, 648 F.3d 24 (1st Cir. 2011)
........................................................... 29

Mulero-Carrillo v. Román-Hernández, 790 F.3d 99 (1st Cir. 2015)
........................................................... 15, 16

Newton Police Association v. Chief of Police of Newton,
63 Mass. App. Ct. 697, 828 N.E.2d 952 (2005)
........................................................... 20, 21, 27

Nieves v. McSweeney, 241 F.3d 46 (1st Cir. 2001)
........................................................... 14, 25

Pagliuca v. Boston, 35 Mass. App. Ct. 820, 626 N.E.2d 625 (1994)
........................................................... 26

Pearson v. Callahan,
555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)
........................................................... 29, 31

Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)
........................................................... 15

Rubinovitz v. Rogato, 60 F.3d 906 (1st Cir.1995)
........................................................... 16

Saucier v. Katz,
533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)
........................................................... 30

Shaw v. Reno,
509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993)
........................................................... 16

State Police Concord v. El-Bayeh, 99 Mass. App. Ct. 1113 (2021)
........................................................... 21

State Police Concord v. El-Bayeh, 106 Mass. App. Ct. 1128 (2026)
........................................................... 10, 14, 29, 32

State Police Concord v. El-Bayeh, FAR-30873
........................................................... 10

Tapalian v. Tusino, 377 F.3d 1 (1st Cir. 2004)
........................................................... 16, 17

TLT Const. Corp. v. A. Anthony Tappe, 48 Mass. App. Ct. 1, 107 N.E.3d 1255 (1999)
........................................................ 24, 25

United States v. Lewis, 517 F.3d 20 (1st Cir. 2008)
........................................................ 17

United States v. Smith, 231 F.3d 800 (11th Cir.2000)
........................................................ 17

United States Dept. of Agric. V. Moreno, 413 U.S. 528 (1973)
........................................................ 17

Village of Willowbrook v. Olech, 528 U.S. 562 (2000)
........................................................ 18, 20

Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698 (1st Cir. 1995)
........................................................ 15

Washington v. Davis, 426 U.S. 229 (1976)
........................................................ 20

White v. Peabody Constr. Co., 386 Mass. 121 (1982)
........................................................ 26

Will v. Michigan Dep’t of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)
........................................................ 12, 15

**Constitutional Amendments**:

U.S. Const. amend. XIV
........................................... 9, 13, 18, 25, 31

**Statutes**:

28 U.S.C. § 1738
........................................................ 13, 22

42 U.S.C. § 1983
........................................... 12, 15, 25, 27, 31

M. G. L. c. 90C, § 1
........................................................ 18

M. G. L. c. 90C, § 2
................................................... 28, 30, 31

M. G. L. c. 90C, § 3
................................................... 20, 21, 27

M. G. L. c. 260, § 2A
........................................................ 14, 25

**Rules of Court**:

Fed. R. Civ. P. 12(b)(1) (2009)
............................................................ 16

Fed. R. Civ. P. 12(b)(6) (2009)
........................................................ 7, 31

**II. Statement of the Issues**:

A. Whether the district court was correct as a matter of law when it dismissed the Plaintiff's claims against Tpr. Sierra in his official capacity?
.................................................... 19

B. Whether the district court was correct as a matter of law when it dismissed Plaintiff's Equal Protection claim?
.................................................... 19

C. Whether the Plaintiff's claims are barred by the doctrine of res judicata?
.................................................... 19

D. Whether the Plaintiff's claims are barred by the statute of limitations?
.................................................... 19

E. Whether Tpr. Sierra has immunity from Plaintiff's Claims?
.................................................... 19

F. Whether Plaintiff's Request for a Preliminary Injunction is Moot?
.................................................... 19

**III. Standard of Review**:

A review of the district court's order of dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is *de novo*. The court accepts well-pleaded facts as true and draws all reasonable

inferences in plaintiff's favor. Martinez-Rivera v. Commonwealth of Puerto Rico, 812 F.3d 69, 73 (1st Cir. 2016). The Appeals Court may affirm a dismissal **"on any ground supported by the record."** Id. at 74 (citations omitted, emphasis in original).

## IV. Concise Statement of the Case:

### A. Statement of the Facts

On August 4, 2021, Plaintiff, Mikhael El-Bayeh, ("Plaintiff" or "Mr. El-Bayeh") was issued a speeding violation subsequent to a motor vehicle stop that occurred on Route 3 in the community of Burlington, Massachusetts (Doc. No. 1 ¶¶ 16–18).[1] The stop was prompted by Tpr. Sierra observing Mr. El-Bayeh traveling at a speed of seventy-two miles per hour on Route 3 when the posted speed limit imposed a maximum rate of travel of fifty-five miles per hour (Doc. No. 1 at ¶¶ 18, 21–23).

Mr. El-Bayeh not only appealed the issuance of the speeding citation, he filed a civil complaint seeking money damages against Tpr. Sierra alleging that Tpr. Sierra had violated his civil rights in issuing him a speeding violation. He was unsuccessful in that suit. See El-Bayeh v. Massachusetts Department of Transportation, et al., 104 Mass. App. Ct. 1115 (2024) (Doc. No. 1 ¶¶ 109–125).

[1] References are to the docket entries in the district court.

Now, through the action on appeal, filed on February 27, 2025, Mr. El-Bayeh has sought again to vindicate an alleged violation of his civil rights. This time, Mr. El-Bayeh alleges his rights as conferred through the Equal Protection Clause of the Fourteenth Amendment were violated by Tpr. Sierra. Mr. El-Bayeh brings this claim of a constitutional violation despite having asserted, and lost, numerous constitutional claims in his state action. Id. The newly asserted claims relate back to the issuance of the speeding ticket on August 4, 2021, some three years, six-months and twenty-three days prior to his filing of the action under appeal.

In support of the claims he has raised in his suit before the United States District Court, Mr. El-Bayeh points to Tpr. Sierra's decision to cite two motorists he stopped for speeding with non-monetary assessments instead of the monetary assessment Plaintiff received (Doc. No. 1 ¶¶ 27, 55, 68, 72). One of the those citations was issued approximately eight-months after Mr. El-Bayeh was cited by Tpr. Sierra and the other was issued approximately fourteen-months after Mr. El-Bayeh received his citation which included a monetary fine (Doc. No. 1 ¶¶ 29, 58).

**B. Procedural History:**

The traffic citation that underlies this appeal has prompted a multitude of complaints on the part of the Plaintiff. First, Mr. El-Bayeh claimed a hearing before a clerk-magistrate

of the Commonwealth's Woburn district court. From there, Mr. El-Bayeh's went before a judge of the Woburn district court and then to the Appellate Division of the Commonwealth's district court. At each step, Mr. El-Bayeh was denied the relief he sought; i.e., his speeding ticket was not overturned. Finally, his appeal found its way to the Massachusetts Appeals Court where the responsible finding on the citation was vacated and the matter was remanded so that Mr. El-Bayeh's outstanding discovery requests could be addressed.

> "Because the hearing judge may have relied upon LIDAR evidence in finding El-Bayeh responsible,[8] we are constrained to reverse the decision and order of the Appellate Division and remand to the Appellate Division for entry of an order vacating the District Court's finding of responsibility." See State Police Concord v. El-Bayeh, 106 Mass. App. Ct. 1128 (2026).

Mr. El-Bayeh has since filed an application for further appellate review of the Appeals Court decision. That application is now pending before the Commonwealth's Supreme Judicial Court ("SJC"). See State Police Concord v. El-Bayeh, FAR-30873. In remanding Plaintiff's appeal of his citation, the Massachusetts Appeals Court made clear Tpr. Sierra had probable cause for the issuance of the violation: "First, because the trooper testified that he observed El-Bayeh speeding, the trooper had probable cause to believe that El-Bayeh committed a civil motor vehicle infraction." El-Bayeh, 106 Mass. App. Ct. at 1128 (internal citations omitted).

In addition to appealing the citation, Mr. El-Bayeh filed a civil action in the Middlesex Superior Court of the Commonwealth of Massachusetts seeking compensation from Tpr. Sierra for a host of state and federal based claims all as a result of Tpr. Sierra's conduct in issuing Mr. El-Bayeh the speeding violation at issue here (Doc. No. 24-9). That complaint, filed in September 2021, was dismissed by the Commonwealth's Superior Court pursuant to a motion for judgment on the pleadings, a decision that was upheld by the Appeals Court of the Commonwealth. See El-Bayeh v. Massachusetts Department of Transportation, et al., 104 Mass. App. Ct. 1115 (2024) (Doc. No. 24-10). An application for further appellate review was denied by the SJC on November 14, 2024. See El-Bayeh v. Massachusetts Department of Transportation, et al., 495 Mass. 1102 (2024).

After the conclusion of Mr. El-Bayeh's first civil rights suit against Tpr. Sierra, he filed the action on appeal in the United States District Court on February 27, 2025, a full three years, six months, twenty-three days after the issuance of the August 4, 2021 traffic violation. On December 18, 2025, the district court (Sorokin, J.), issued an order (Doc. No. 53) on Tpr. Sierra's motion to dismiss and also entered an Order of Dismissal on that date (Doc. No. 54). Judge Sorokin also denied, as moot, Mr. El-Bayeh's request for an injunction. This appeal followed.

**C. Rulings Presented for Review:**

The district court, based on sovereign immunity, dismissed the official capacity claims against Tpr. Sierra. In addition, the district court found that Mr. El-Bayeh failed to sufficiently allege that Tpr. Sierra violated his rights as protected through the due process or equal protection clauses of the Constitution and denied as moot, Plaintiff's motion for a preliminary injunction (Doc. No. 53).

## V. Summary of the Argument:

The district court was correct, as a matter of law, when it dismissed so much of Plaintiff's claim that sought damages against Tpr. Sierra for actions taken in his "official capacity." "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citations omitted). Because "a state official acting in his official capacity may [not] be sued for damages in a section 1983 action.'" Fantini v. Salem State College, 557 F.3d 22, 33 (1st Cir.2009), Mr. El-Bayeh's "official capacity" claim was properly dismissed.

As to the personal capacity claims, the district court correctly found that Mr. El-Bayeh could not plausibly make out a

due process claim because Tpr. Sierra is not a policy maker with respect to the speed limit on Route 3. Moreover, Mr. El-Bayeh does not allege that Tpr. Sierra had any control or input into the setting of the speed limit on Route 3 (Doc. No. 53 at n.9).

Mr. El-Bayeh's attempt to make out a selective enforcement or selective prosecution argument under the equal protection clause of the Fourteenth Amendment also fails as his complaint does not allege that the other motorists he uses as comparators were similarly situated in that they had the same or similar driving records (Doc. No. 53 at 12–13). Plaintiff's failure to establish "substantial similarity" with his comparators is fatal to his claim. Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007).

Mr. El-Bayah's claims are barred under res judicata and the statute of limitations. Mr. El-Bayeh's state court civil rights case against Tpr. Sierra ended in all claims being dismissed. Res judicata, therefore, bars all claims that could or should have been brought forward in the state court action. "Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered." Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008).

Massachusetts has a three-year statute of limitations statute for personal injury claims. See M. G. L. c. 260, § 2A. Cao v. Commonwealth of Puerto Rico, 525 F.3d 112, 115 (1st Cir. 2008); Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). That three-year period accrues "when the aggrieved person 'knows, or has reason to know, of the injury on which the action is based.' " Cao, 525 F.3d at 115 (citations omitted). The filing date of this action – February 27, 2025 – is more than six months beyond the three-year statute of limitations.

Finally, to the extent Plaintiff seeks a review of the denial of his motion for a preliminary injunction, such a request is moot. See State Police Concord v. El-Bayeh, 106 Mass. App. Ct. 1128 (2026).

## VI. Argument:

### A. Sovereign Immunity Bars an Official Capacity Claim Against Tpr. Sierra.

To the extent Mr. El-Bayeh's complaint can be read to assert an "official capacity" claim against Tpr. Sierra, the district court correctly dismissed it (Doc. No. 1 ¶ 13). Sovereign immunity precludes Mr. El-Bayeh from pursing any claims against Tpr. Sierra in his "official capacity." "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit

against the State itself." Will, 491 U.S. at 71 (citations omitted).

A defense relying upon the Eleventh Amendment raises a jurisdictional question. Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105 (1st Cir. 2015). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to abrogate the Commonwealth's sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 341–42, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) ("[W]e simply are unwilling to believe...that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."). State officials, such as Tpr. Sierra, acting in their official capacity are considered to be an extension of the state; therefore, they are entitled to sovereign immunity as they do not constitute a "person" under Section 1983. See Will, 491 U.S. at 71 (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Dismissal of the claim against Tpr. Sierra in his "official capacity" was required because "'a state official acting in his official capacity may [not] be sued for damages in a section 1983 action.'" Fantini, 557 F.3d at 33 (quoting Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 700 (1st Cir.1995).

Based on the foregoing, the district court's decision to dismiss so much of Plaintiff's Complaint seeking damages against Tpr. Sierra for conduct undertaken in his "official capacity" was correct, as a matter of law as the district court lacks subject matter jurisdiction over such a claim. Mulero-Carrillo, 790 F.3d at 105; Fed. R. Civ. P. 12(b)(1).

**B. Plaintiff's Equal Protection Claim Fails the "Substantially Similar" Test.**

The Equal Protection Clause contemplates that similarly situated persons are to receive substantially similar treatment from their government. Tapalian v. Tusino, 377 F.3d 1, 5–6 (1st Cir. 2004) referencing Barrington Cove Ltd. P'ship *v.* R.I. Hous. and Mortgage Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001). The Equal Protection Clause's "central purpose" is to "prevent the States from purposefully discriminating between individuals on the basis of race." Shaw v. Reno, 509 U.S. 630, 642, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993).

> "Generally, for an equal protection claim to survive a motion to dismiss, a plaintiff must allege facts plausibly demonstrating that 'compared with others similarly situated, [the plaintiff was] selectively treated...based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Mulero-Carrillo, 790 F.3d at 106, Barrington Cove Ltd. P'ship, 246 F.3d at 7)(quoting Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir.1995)).

Although the standard does not require "an 'exact correlation,'" the Plaintiff must put forward "sufficient proof on the relevant aspects of the comparison to warrant a reasonable inference of substantial similarity." Cordi-Allen v. Conlon, 494 F.3d at 251 (quoting Tapalian, 377 F.3d at 6), Barrington Cove Ltd. P'ship, 246 F.3d at 8 ("In other words, apples should be compared to apples." (quoting Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989))). Mr. El-Bayeh falls short of this standard because of his driving record which distinguishes him from his comparators (Doc. No. 53 at 11–12).[2] See United States v. Smith, 231 F.3d 800, 812 (11th Cir.2000)(concluding that a prosecutor may "legitimately place a higher priority on prosecuting someone who commits an offense three, six or seven times, than someone who commits [that] offense once or twice, especially when the offense is a non-violent one"). United States v. Lewis, 517 F.3d 20, 26–28 (1st Cir. 2008).

[2] "The mere observation of El-Bayeh driving seventeen MPH above the posted speed limit reasonably warrants a stop and a citation. Cf. Mass. Gen. Laws ch. 90, § 17 (codifying speeding as prima facie evidence of violating Massachusetts traffic laws). Stopping a driver in those circumstances is plainly and rationally related to the Commonwealth's interest in maintaining traffic safety…particularly where a record check reveals a driving history with the same kind of infraction on the same highway once before." (Doc. No. 53 at 11–12).

Plaintiff bases his Fourteenth Amendment Claim on the fact that Tpr. Sierra's issued non-monetary citations to two government employees when was given a citation carrying a monetary assessment. Plaintiff claims he was discriminated against because he is not a government employee. Since there is no fundamental right to government employment, Plaintiff's claim is reviewed under the rational basis standard. That is, Plaintiff must put forth that Tpr. Sierra's decision to issue him a citation with a monetary assessment was not "rationally related to a legitimate governmental interest." United States Dept. of Agric. V. Moreno, 413 U.S. 528, 533 (1973). As previously noted, the district court found that Tpr. Sierra's conduct was rationally related to a legitimate government interest (Doc. No. 53 at 11-12 and see n.2).

Importantly, Plaintiff's Fourteenth Amendment claim also fails because he has failed to include in his pleading that Tpr. Sierra was motivated by ill-will toward him. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). Such an omission is fatal to his Fourteenth Amendment claim.

The first citation Mr. El-Bayeh complains of was issued by Tpr. Sierra some seven months after Mr. El-Bayeh was issued a speeding citation. That motor vehicle stop in March 2022 ended with Tpr. Sierra issuing a citation to a correctional officer that did not carry a monetary assessment. The second motor

vehicle stop in question occurred in October 2022 and resulted in Tpr. Sierra issuing a citation to an employee of the Lincoln fire department that did not carry a monetary assessment (Doc. No. 1 ¶¶ 29, 40, 58, 68). Neither action complained of involved Mr. El-Bayeh and neither action complained of acts to revive Mr. El-Bayeh's state complaint, nor does either act as an equitable tolling of the statute of limitations.

As a police officer, Tpr. Sierra is mandated by law to record any violations of the motor vehicle laws of the Commonwealth upon a citation; however, in filling out the citation, M. G. L. c. 90C, § 1 to Tpr. Sierra the sole discretion to determine if a "violator"[3] will receive a warning

---

[3] M. G. L. c. 90C, Section 1: Definitions

…

"Citation", a notice, whether issued in handwritten form from a citation book or issued electronically and then printed on paper, upon which a police officer shall record an occurrence involving all automobile law violations by the person cited. Each citation shall be numbered and shall be in such form and such parts as determined jointly by the administrative justice of the district court department and the registrar.

…

"Scheduled assessment", the amount of the civil assessment for a particular civil motor vehicle infraction, as established jointly by the chief justice of the district court department and the registrar. A scheduled assessment shall not exceed the maximum assessment or fine established by law for each such violation. A schedule of such assessments shall be visibly posted in each office of the registry of motor vehicles and in the clerk-magistrate's office of each district court.

…

or a monetary assessment. Newton Police Association v. Chief of Police of Newton, 63 Mass. App. Ct. 697, 699, 828 N.E.2d 952 (2005)(Interpreting M. G. L. c. 90C, § 3).[4]

Here, Mr. El-Bayeh seeks to turn Tpr. Sierra's discretionary acts into a violation of a constitutional nature. His attempt fails because he does not assert that Tpr. Sierra intentionally discriminated against him based on his membership in a protected class. Washington v. Davis, 426 U.S. 229, 247-248 (1976). Similarly missing from Mr. El-Bayeh's complaint is that Tpr. Sierra acted toward him with "illegitimate animus" or that he was "ill-will motivated" to act as he did toward Mr. El-Bayeh. Village of Willowbrook, 528 U.S. at 564 (2000). Since Mr. El-Bayeh does not allege any facts to claim membership in a protected class, nor does he allege being treated differently than similarly situated drivers due to ill-will or illegitimate

"Violator", a person, corporation, society, association or partnership accused of an automobile law violation. …(pertinent part only).

[4] M. G. L. c. 90C, § 3. Issuance of citations; hearing; appeal; summons or warrant; complaint; trial; license or permit suspension
(A) (1) If a police officer observes or has brought to the officer's attention the occurrence of a civil motor vehicle infraction, the officer may issue a written warning or may cite the violator for a civil motor vehicle infraction in accordance with this subsection. If the officer issues a citation solely for one or more civil motor vehicle infractions without any associated criminal violations, the officer shall indicate on the citation the scheduled assessment for each civil motor vehicle infraction alleged (emphasis supplied).

animus, his Equal Protection Clause claim fails. Bryan v. City of Madison, Miss., 213 F.3d 267, 276 (2000).

Moreover, Mr. El-Bayeh does nothing to establish how he and the other motorists were similarly situated. A police officer such as Tpr. Sierra may take into account a number of factors when deciding how to address a speeding motorist. Newton Police Association, 63 Mass. App. at 699 (2005)(Interpreting M. G. L. c. 90C, § 3). One such factor may be the driving history of the offender. Here, there are no facts alleged by Mr. El-Bayeh to suggest that the drivers were similarly situated in their driving records. See State Police Concord v. El-Bayeh, 99 Mass. App. Ct. 1113 (2021) (Upholding a prior citation issued to Mr. El-Bayeh who was found to be driving at ninety-six miles per hour on Route 3). Instead, he relies on conclusions that they were similarly situated without any factual support. Such bare allegations do not establish a violation of Plaintiff's Equal Protection rights nor are they sufficient to get beyond a motion to dismiss (Doc. No. 53 at 12). Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The district court was correct in dismissing Plaintiff's Equal Protection Claims.

### C. **Plaintiff's State Court Action Dooms his Claims Under the Doctrine of Res Judicata.**

Although the district court did not address the following arguments, which were fully briefed below, this Court may

dismiss Plaintiff's appeal **"on any ground supported by the record."** Martinez-Rivera, 812 F.3d at 74 (emphasis in original).

Plaintiff's claims are barred under the doctrine of res judicata because Plaintiff previously brought suit against Tpr. Sierra in the Superior Court of the Commonwealth alleging violations of his constitutional rights as a result of the August 4, 2021 traffic stop (Doc No. 1 ¶¶ 118, 125). A final judgment was entered against Mr. El-Bayeh on all claims in the Middlesex Superior Court (Doc No. 1 ¶¶ 121–122). Mr. El-Bayeh appealed that decision and the Appeals Court of the Commonwealth of Massachusetts affirmed the Superior Court's entry of judgment against Plaintiff. See El-Bayeh v. Massachusetts Department of Transportation, et al., 104 Mass. App. Ct. 1115 (2024) (Doc. No. 1 ¶ 125). Plaintiff's request to the Supreme Judicial Court for further review was denied.

The doctrine of res judicata bars Mr. El-Bayeh second action brought in the United States District Court because he previously brought the same claims against Tpr. Sierra in the Superior Court in a case that was dismissed on the merits (Doc. No. 1 at ¶¶ 118, 121, 122, 125).

Because Mr. El-Bayeh pursued his first action in the state court, Massachusetts law on the doctrine prevails. Giragosian, 547 F.3d at 63–64. "Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled

to the same preclusive effect in federal court as it would be given within the state in which it was rendered." In re Sonus Networks, Inc, S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir.2007) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)).

In Massachusetts, both claim preclusion and issue preclusion are encompassed within the doctrine of res judicata. Kobrin v. Board of Registration in Med., 444 Mass. 837, 634, 832 N.E.2d (2005). Claim preclusion prevents a losing party from the relitigating of all claims that the "litigant had the opportunity and incentive to fully litigate...in an earlier action." In re Sonus Networks, Inc, S'holder Derivative Litig., 499 F.3d at 56. Massachusetts evaluates three elements under the doctrine of claim preclusion: "(1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause[s] of action; and (3) a prior final judgment on the merits." McDonough v. City of Quincy, 452 F.3d 8, 16 (1st Cir. 2006).

Addressing each of the above three prongs in turn, there is sufficient identicality between the parties in this case and the parties in Mr. El-Bayeh's prior state court suit to establish privity of parties. Tpr. Sierra was named in both suits as was the Department of State Police and the Department of Transportation (Doc. No. 1 ¶ 120). The addition of District

Attorney Marian Ryan to this suit does nothing to undermine the privity of parties.

When assessing the second element of claim preclusion, Massachusetts courts find "[c]auses of action [to be] identical if they 'derive [ ] from the same transaction or series of connected transactions.'" TLT Const. Corp. v. A. Anthony Tappe, 48 Mass. App. Ct. 1, 8, 716 N.E.2d 1044 (1999) (internal citation omitted). "What factual grouping constitutes a transaction is to be determined pragmatically, giving weight to such factors as whether the facts are related in time, space and origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Mancuso v. Kinchla, 60 Mass. App. Ct. 558, 806 N.E.2d 427 (2004) McDonough v. City of Quincy, 452 F.3d 8, 16 (1st Cir. 2006). Here, the only transaction between Mr. El-Bayeh and Tpr. Sierra was the August 4, 2021 speeding citation that Tpr. Sierra issued to Mr. El-Bayeh (Doc. No. 1 ¶¶ 16–23). In both the state court action and this action, each claim against Tpr. Sierra relates directly to his decision to issue a speeding violation to Mr. El-Bayeh. See El-Bayeh v. Massachusetts Department of Transportation, et al., 104 Mass. App. Ct. 1115 (2024) and (Doc. No. 1 ¶ 125). Because Mr. El-Bayeh's complaint is limited to his alleged mistreatment by Tpr. Sierra that arose out of Mr. El-Bayeh being issued a motor

vehicle violation, his claims under the Equal Protection Clause of the Fourteenth Amendment fail as well because they are identical. TLT Const. Corp., 48 Mass. App. Ct. at 8.

Third, Mr. El-Bayeh's state court action ended in a judgment on the merits in favor of Tpr. Sierra, as did Mr. El-Bayeh's appeal of that judgment (Doc. No. 1 ¶¶ 122, 125, 129, 130; Doc. No. 24-10). Giragosian 547 F.3d at 63–64. With each element of the doctrine of res judicata met, Mr. El-Bayeh's is precluded from bringing a second civil rights action based on the "same transaction or series of connected transactions.' " TLT Const. Corp., 48 Mass. App. Ct. at 8; McDonough, 452 F.3d at 16.

**D. Plaintiff Missed the Three-Year Statute of Limitations Period.**

The statute of limitations period in the forum state determines the statute of limitation period in a Section 1983 case. Here, in Massachusetts, that period is three-years as determined by M. G. L. c. 260, § 2A. Cao v. Commonwealth of Puerto Rico, 525 F.3d 112, 115 (1st Cir. 2008); Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). The three-year statute of limitations accrues "when the aggrieved person 'knows, or has reason to know, of the injury on which the action is based.'" Cao, 525 F.3d at 115 (citations omitted).

The traffic stop occurred on August 4, 2021. That is the date Mr. El-Bayeh was on notice of the alleged wrong he claims to have suffered. The effort of Mr. El-Bayeh to extend the statute to cover Tpr. Sierra's subsequent traffic enforcement operations in March and October 2022 miss the mark as Tpr. Sierra's conduct was not directed at Mr. El-Bayeh. Rather, Mr. El-Bayeh seeks to establish a constitutional deprivation based on how Tpr. Sierra enforced the traffic laws against other citizens.

In Massachusetts, a plaintiff may, in some circumstances, rely upon the discovery rule to toll the statute of limitations. The tolling, however, lasts only until the plaintiff becomes aware he has suffered harm. "'The knowledge required 'is not notice of every fact which must eventually be proved in support of the claim,' but rather 'knowledge that an injury has occurred.'" Pagliuca v. Boston, 35 Mass. App. Ct. 820, 824, (1994), quoting White v. Peabody Constr. Co., 386 Mass. 121, 130 (1982), Barrows v. New England Sch. of Acupuncture, 106 Mass. App. Ct. 1121, review denied, 497 Mass. 1109 (2026).

To the extent Plaintiff seeks to rely on equitable tolling of the statute of limitations to justify his tardy filing, such an excuse is to be honored sparingly as statutes of limitations are important. Brader v. Biogen, Inc., 983 F.3d 39, 60 (1st Cir. 2020) (internal quotation omitted). Moreover, the initial

act that Plaintiff complains of must constitute a violation of Plaintiff's rights. Moreover, the subsequent violations as issued by Tpr. Sierra were not illegal acts as Tpr. Sierra had discretion as to how to handle those violators and the conduct was not directed at Plaintiff. Newton Police Association, 63 Mass. App. Ct. at 699 and M. G. L. c. 90C, § 3.

In the circumstances presented by Plaintiff, equitable tolling does not apply and his complaint should be dismissed for failure to meet the applicable three-year statute of limitations.

**E. Tpr. Sierra Has Absolute and Qualified Immunity from Plaintiff's Claims:**

If Tpr. Sierra was acting in the role of a prosecutor, as Plaintiff suggests, then he is entitled to absolute immunity from civil liability under § 1983 (Doc. No. 1 ¶¶ 44, 71, 143, 152). A Defendant, when "initiating a prosecution" and "presenting the State's case," is entitled to absolute immunity. Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Immunity is provided so as to protect the function of the prosecutor's office by protecting the prosecutor from harassing litigation so that the prosecutor may exercise independent judgment in deciding which actions to bring. See Kalina v. Fletcher, 522 U.S. 118, 125, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

The United States Supreme Court also has recognized absolute immunity for State agency officials who perform certain functions in administrative proceedings that are analogous to those of prosecutors initiating criminal proceedings on behalf of the State. Butz v. Economou, 438 U.S. 478, 515, 98 S.Ct. 2894 (1978). The Court has explained that "[t]he decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." Id. Here, Tpr. Sierra acted on behalf of the agency when he issued a motor vehicle citation to Mr. EL-Bayeh. Although the citation provided for a remedy through a civil proceeding, it was Tpr. Sierra's discretionary act that initiated the proceeding. See, M. G. L. c. 90C, §§ 2, 3. Based on Tpr. Sierra's status as someone performing a prosecutorial function, he is entitled to absolute immunity. Id.

The doctrine of qualified immunity protects a public employee, such as Tpr. Sierra, "from liability for civil damages insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 72 L.Ed.2d 396 (1982). To assess the applicability of qualified immunity to a given case the First Circuit has adopted a two-part test that was articulated by the Supreme

Court in Pearson v. Callahan, 555 U.S. 223 (2009). See Maldonado v. Fontanes, 568 F.3d 263, 269 (2009). Under this two-part test the court first looks to see if the plaintiff has alleged sufficient facts to make out a constitutional violation. The inquiry then turns to establish whether the right was clearly established at the time of the alleged misconduct by the defendant. Id. Under a qualified immunity analysis a plaintiff does not establish a right to recover damages upon a showing that he suffered a constitutional harm. A plaintiff must also show that it was the defendant's actions that caused the deprivation of the constitutional right. Harlow 457 U.S. at 800. See Mlodzinski v. Lewis, 648 F.3d 24, 33 (1st Cir. 2011) ("whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right").

Since it was established through Plaintiff's state action that Tpr. Sierra did not violate his civil rights, Tpr. Sierra is entitled to qualified immunity. El-Bayeh v. Massachusetts Department of Transportation, et al., 104 Mass. App. Ct. 1115 (2024); Harlow 457 U.S. 800. In addition, it has also been conclusively determined that Tpr. Sierra acted with probable cause in issuing Plaintiff a speeding violation. State Police Concord v. El-Bayeh, 106 Mass. App. Ct. at 1128 ("First, because the trooper testified that he observed El-Bayeh speeding, the

trooper had probable cause to believe that El-Bayeh committed a civil motor vehicle infraction.") Based on the findings in Plaintiff's previous litigation Mr. El-Bayeh has failed to show a deprivation of a civil right that is attributable to an action that Tpr. Sierra undertook; and, therefore, Tpr. Sierra is entitled to qualified immunity. Harlow 457 U.S. 800.

When Tpr. Sierra concluded based on the information available to him at the time he cited Mr. El-Bayeh that it was appropriate for him to act as he did his decision cannot be viewed as plainly incompetent nor can it be viewed as evidence of a deliberate violation of the law, Malley v. Briggs, 475 U.S. 335, 341 (1986); Graham v. Connor, 490 U.S. 386, 396–397 (1989). Rather, it was a decision he made based on the specific facts known to him at the time he acted and based on probable cause, Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), as "(t)he relevant, dispositive inquiry…is whether it would be clear to a reasonable [person] that his conduct was unlawful in the situation he confronted." Id. at 201. This is particularly so given the discretion the law provides Tpr. Sierra when confronted with a traffic violator. See, M. G. L. c. 90C, §§ 2, 3.

Qualified immunity is also appropriate on any claim that Plaintiff seeks to make that Tpr. Sierra denied him his rights under the traffic laws of the Commonwealth. See, M. G. L. c.

90C, §§ 2, 3. See 42 U.S.C. § 1983, which requires a that a state actor deprive someone of a right, privilege, or immunity secured by the Constitution and laws of the United States. a state law violation is not itself enough to render a seizure unreasonable for Fourth Amendment purposes. Durand v. Harpold, 807 F.3d 392, 394 (1st Cir. 2015).

Tpr. Sierra is also entitled to qualified immunity on the grounds that his actions, as alleged, did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

With Plaintiff unable to make out a violation of his Fourteenth Amendment rights, the district court was correct in dismissing Plaintiff's complaint (Doc. No. 53 at 12–13).

**F. Plaintiff's Request for a Preliminary Injunction is Moot:**

Because the district court dismissed Plaintiff's complaint based on his failure to state a claim, Fed. R. Civ. P. 12(b)(6), Plaintiff's request for a preliminary injunction was denied as moot (Doc. No. 53 at 13). Should this court deem it necessary to review Plaintiff's request, it should be denied as to Tpr. Sierra because it is moot for the reasons given by the district court and for the additional reason that Plaintiff's citation was remanded to the Commonwealth's Appellate Division of the

district court with an order that the finding of responsible be vacated. While further proceedings in the Commonwealth's district court are likely, Mr. El-Bayeh has been found not responsible at this stage of the litigation. State Police Concord v. El-Bayeh, 106 Mass. App. Ct. at 1128 ("[8] Given our disposition, we need not reach the issue of whether the evidence obtained from the LIDAR device was admissible. We also decline to reach the issue because the evidence may differ at any hearing after remand.").

## VII. **Conclusion and Relief Requested**:

Tpr. Michael P. Sierra respectfully requests that the decision of the district court dismissing the Plaintiff's complaint be upheld and that he be awarded costs and fees associated with this appeal.

## VIII. **Request for Oral Argument**:

Tpr. Sierra hereby requests oral argument on this appeal.

Respectfully submitted,
The Defendant-Appellee,
MICHAEL P. SIERRA,
By his attorneys,

ROGAL & DONNELLAN, P.C.

/s/ Joseph G. Donnellan
Joseph G. Donnellan, BBO# 558060
First Circuit Court of Appeals # 37075
100 River Ridge Drive, Suite 203
Norwood, Massachusetts 02062
(781) 255-1200
jdonnellan@rogalanddonnellan.com

Dated: July 20, 2025

## IX. **Certificate of Compliance**:

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using the Courier New font, a monospaced typeface of ten characters per inch, using Microsoft Word version 16.111. The portion of the document subject to page limitations in Fed. R. App. P. 32(b)(f) contains twenty-six pages, 5,814 words and 652 lines.

## X. **Certificate of Service**:

I hereby certify that I caused a copy of the foregoing brief of Michael P. Sierra to be served upon all parties or their counsel via ECF this 20th day of July 2026.

/s/ Joseph G. Donnellan
Joseph G. Donnellan

XI. Addendum

Table of Contents

Order on Motions to Dismiss (Doc. No. 53) ........................................................... A2

M. G. L. c. 90C, § 2 ........................................................... A15

M. G. L. c. 90C, § 3 ........................................................... A18

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MIKHAEL EL-BAYEH,<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT OF STATE POLICE et al.,<br><br>Defendants. | ) | Civil No. 25-10476-LTS |

ORDER ON MOTIONS TO DISMISS (DOC. NOS. 16, 20)

December 18, 2025

SOROKIN, J.

Mikhael El-Bayeh, representing himself, initiated this proceeding after he was stopped and ticketed for speeding by Trooper Michael P. Sierra. The defendants have moved to dismiss for lack of subject-matter jurisdiction, for failure to state a claim, and under the doctrine of res judicata. Doc. Nos. 16, 20, 29, 36.[1] El-Bayeh opposes dismissal and has separately moved for a preliminary injunction. Doc. Nos. 37, 45. The motions are ripe, and for the reasons that follow, the defendants' motions to dismiss are ALLOWED. El-Bayeh's motion for preliminary injunction is thus DENIED as moot.

## I. BACKGROUND

El-Bayeh has a storied history with a stretch of U.S. Route 3 running through Burlington, Massachusetts. On July 26, 2018, he was stopped on this road by the Massachusetts State Police

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header. The operative complaint is available at Doc. No. 24.

("MSP") and issued a citation that alleged "a single violation for speeding, 96 miles per hour ["MPH"] in a 55 [MPH] zone."[2] Doc. No. 24-9 ¶ 89. El-Bayeh contested this citation in the Woburn District Court, but he was found responsible. Id. ¶ 90. He exhausted all appellate avenues, to no avail. Id. ¶¶ 90–94; see also Dep't of State Police v. El-Bayeh, 163 N.E.3d 1040 (Table) (Mass. App. Ct. 2021). Meanwhile, El-Bayeh filed a complaint against MassDOT and MSP in the Suffolk County Superior Court on June 21, 2019, challenging the legality of the speed limit on U.S. Route 3. Doc. No. 24 ¶¶ 120–122; see Doc. No. 24-1. The Superior Court dismissed El-Bayeh's claims on February 3, 2020, and he again exhausted all avenues for appeal without success. Id. ¶¶ 124–125; see Doc. No. 24-2; El-Bayeh v. Mass. Dep't of Transp., 168 N.E.3d 372 (Table) (Mass. App. Ct. 2021), appeal denied, 171 N.E.3d 721 (Table) (Mass. 2021).

On August 4, 2021, the day after the Supreme Judicial Court ("SJC") denied El-Bayeh's motion to reconsider his application for further appellate review in his challenge to the Route 3 speed limit, El-Bayeh was stopped by Sierra on the same stretch of road, allegedly driving seventy-two MPH.[3] Doc. No. 24 ¶¶ 21, 23. Sierra charged El-Bayeh with a speeding offense and assessed a fine of $175, payable within twenty days. Id. ¶¶ 28, 32. El-Bayeh appealed the citation to the Woburn District Court on August 23, 2021, and a magistrate judge found El-Bayeh responsible but reduced the fine to $105. Id. ¶¶ 170, 173; Doc. No. 24-9 ¶¶ 164–166. El-Bayeh then appealed to the Massachusetts Appeals Court ("MAC"), which granted a stay in the case until January 10, 2025, for El-Bayeh to litigate his concurrent suit described below. Doc. No. 24 ¶¶ 173, 176–182. His fine remains unpaid.

---

[2] El-Bayeh has not conceded that he was driving this fast, nor does it seem he has ever admitted to speeding at all.

[3] Again, El-Bayeh has never conceded he was speeding. On July 22, 2024, the Massachusetts Department of Transportation ("MassDOT") increased the speed limit to sixty-five MPH. Doc. No. 24 ¶ 157.

On September 21, 2021, El-Bayeh filed another suit challenging the legality of the fifty-five MPH speed limit, this time in the Middlesex County Superior Court. Doc. No. 24 ¶ 141; see Doc. No. 24-9 (operative complaint). He named as defendants MassDOT; "Jonathan Gulliver, in his individual and official capacity as Highway Administrator of [MassDOT]; Colleen Ogilvie, in her individual and official capacity as Registrar of Motor Vehicles; [MSP]; Christopher S. Mason, in his individual and official capacity as Colonel of [MSP]; [and] Michael P. Sierra, in his individual capacity." Doc. No. 24-9 at 2, ¶¶ 4–10. El-Bayeh asserted eleven claims for relief, including six claims under 42 U.S.C. § 1983 and one requesting declaratory judgment that the promulgated fifty-five MPH speed limit is void. Id. ¶¶ 171–205. The Middlesex Superior Court dismissed all claims on April 13, 2023, and El-Bayeh again unsuccessfully appealed. Doc. No. 24 ¶¶ 145–146; see Doc. No. 24-10; El-Bayeh v. Mass. Dep't of Transp., 238 N.E.3d 830 (Table) (Mass. App. Ct. 2024), appeal denied, 245 N.E.3d 1040 (Table) (Mass. 2024).

Following the SJC's denial of review, El-Bayeh attempted to further stay the appellate proceedings challenging the citation itself, stating there was "newly available evidence supporting a prima facie claim of selective prosecution." Doc. No. 24-13 at 4 (emphasis in original). In support of this request, he submitted to the MAC a spreadsheet he had created illustrating all 421 written warnings for speeding reported by Sierra between July 1, 2019, and October 14, 2024. Id. at 12–13; Doc. No. 24-15 at 23–28. El-Bayeh included in the spreadsheet the difference between the posted speed limit and the reported speed of each violator, finding the average difference was sixteen MPH. Doc. No. 24-13 at 12–13. El-Bayeh did not submit similar data for citations issued by Sierra assessing fines for speeding (instead of mere warnings) in the same time period. The MAC denied a further stay on February 5, 2025. Doc. No. 24 ¶ 190.

El-Bayeh filed his initial complaint with this Court on February 27, 2025, then filed yet another motion to stay with the MAC the following day. Id. ¶ 192; Doc. No. 1. The latter request was denied on March 3, 2025, and the MAC proceedings remain pending. Doc. No. 24 ¶¶ 193–194; see also Doc. No. 24-17.

The "newly available evidence" referenced by El-Bayeh concerns two traffic stops made by Sierra in the fourteen months following El-Bayeh's most recent stop. On March 30, 2022, Sierra stopped a vehicle driven by Daniel J. Snow along U.S. Route 3 in Bedford, Massachusetts.[4] Doc. No. 24 ¶ 34. Snow was wearing a jacket with a patch that read "MIDDLESEX SHERIFF'S OFFICE" on his left sleeve. Id. ¶ 38. Sierra informed Snow that he was stopped because he was going ninety-five MPH, but after running a check on Snow's license and registration, he issued Snow a written warning without a fine. Id. ¶¶ 41, 44–46. On October 2, 2022, Sierra stopped Thomas Blair on Route 2 in Littleton, Massachusetts.[5] Id. ¶ 63. Blair wore a baseball cap embroidered with the abbreviation "LFD," and when Sierra asked Blair where he worked, Blair replied: "Lincoln Fire Department." Id. ¶¶ 67, 70. Sierra told Blair that he had been stopped for driving eighty-six MPH in a fifty-five MPH zone, but again issued a written warning without a fine after running a check on Blair's license and registration. Id. ¶¶ 71, 73. El-Bayeh alleges the reason Sierra did not assess a fine against Snow or Bair was their affiliation with governmental entities.[6] Id. ¶¶ 55, 82.

---

[4] The footage from Sierra's body-worn camera is available here: https://youtu.be/C2qVqxZ4xRc. Doc. No. 24 ¶ 36.

[5] The footage from Sierra's body-worn camera is available here: https://youtu.be/v_x2Yy2sI4I. Doc. No. 24 ¶ 65.

[6] El-Bayeh alleges that he "is not and has never been a member of law enforcement or a fire department." Doc. No. 24 ¶ 30. He has not alleged that this fact was known to Sierra at the time of the traffic stop.

On May 19, 2025, El-Bayeh filed an amended complaint with this Court, asserting claims against the following defendants:

> Geoffrey D. Noble, in his official capacity as Colonel of the [MSP]; Michael P. Sierra, in his individual capacity and official capacity as a uniformed member of the [MSP]; Jonathan Gulliver, in his official capacity as Highway Administrator of the [MassDOT]; Colleen Ogilvie, in her official capacity as Registrar of Motor Vehicles; [and] Marian T. Ryan, in her official capacity as Middlesex County District Attorney.[7]

Id. at 1; see also id. ¶¶ 15–20.

El-Bayeh brings three claims under the Fourteenth Amendment and 42 U.S.C. § 1983. Id. ¶¶ 202, 209, 215. The first is for selective enforcement under the Equal Protection Clause, alleging Sierra treated El-Bayeh worse than "other similarly situated individuals" due to their "affiliation with a governmental entity." Id. ¶¶ 201–207. El-Bayeh also asserts a selective prosecution claim, alleging Sierra deprived him of his right to equal protection by giving "favorable treatment [to] other similarly situated individuals . . . based on an arbitrary classification—affiliation with a governmental entity." Id. ¶¶ 208–213. Finally, El-Bayeh brings a procedural due process claim against Defendant Gulliver for allegedly "fail[ing] to provide El-Bayeh with fair notice . . . that the fifty-five [MPH] regulatory speed zone on U.S. Route 3 was enforceable." Id. ¶¶ 214–219.

Along with monetary damages from Sierra individually, El-Bayeh seeks declaratory judgments in his favor, and both preliminary and permanent injunctions "prohibiting [the] Defendants from taking any future enforcement or prosecutorial action against El-Bayeh . . . from the alleged August 4, 2021[,] speeding violation." Id. at 42–43. The defendants move to

[7] Though named in the original complaint, MSP was omitted from the Amended Complaint. Compare Doc. No. 1 at 1, with Doc. No. 24 at 1. In this Order, the Court refers to all five named defendants, to the extent they are sued in their official capacities, as "the Commonwealth Defendants." Only Sierra is also sued in his individual capacity.

dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[8] See Doc. Nos. 17, 21, 29, 36.

## II. LEGAL STANDARD

Jurisdictional issues must be decided before delving into any questions of fact or law. Bell v. Hood, 327 U.S. 678, 682 (1945); see also Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995) ("When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court . . . should ordinarily decide the 12(b)(1) motion first."). Since immunity acts as "a limitation on the federal court's judicial power," Calderon v. Ashmus, 523 U.S. 740, 745 n.2 (1998), immunity doctrines are often deemed jurisdictional questions appropriately addressed first, Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105 (1st Cir. 2015). Dismissal is appropriate when "the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003). The party invoking federal jurisdiction (here, El-Bayeh) has "the burden of proving its existence." Jonson v. Fed. Deposit Ins. Corp., 877 F.3d 52, 56 (1st Cir. 2017) (citation modified).

To survive a Rule 12(b)(6) challenge, a complaint must state sufficient factual matter that, when accepted as true, establishes a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Courtemanche v. Motorola Sols., Inc., 774 F. Supp. 3d 289, 310 (D. Mass. 2025) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Claims are considered

[8] The defendants also invoke res judicata, based on the Middlesex County Superior Court suit asserting claims arising out of the same traffic stop. See Doc. No. 24-9. Since El-Bayeh's claims are subject to dismissal under Rules 12(b)(1) and 12(b)(6), the Court need not evaluate res judicata here.

facially plausible where a court can draw a "reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). A claim must have a likelihood greater than a mere possibility to be plausible, and determining plausibility is a context-specific task that requires courts to draw on "judicial experience and common sense." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quoting Iqbal, 556 U.S. at 679).

## III. DISCUSSION

### A. The Commonwealth Defendants

El-Bayeh's claims against the Commonwealth Defendants are barred by the doctrine of sovereign immunity. "Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," Monell v. Dept. of Soc. Servs. of N.Y.C., 436 U.S. 658, 690 n.55 (1978), "a suit against a state official in his or her official capacity . . . is a suit against the official's office" that is "no different from a suit against the State itself," Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). It is settled that "a State is not a 'person' against whom a [42 U.S.C.] § 1983 claim for money damages might be asserted." Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002) (citing Will, 491 U.S. at 66). Nor did Congress intend to abrogate sovereign immunity under the statute. Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993); Tenney v. Brandhove, 341 U.S. 367, 376 (1951). Therefore, the Commonwealth Defendants generally enjoy sovereign immunity against suits brought against them in federal court in their official capacities.

El-Bayeh contends that the Ex parte Young exception to sovereign immunity applies here. Doc. No. 38 at 3–5; Doc. No. 45 at 5. Under this exception, state officials who have taken unconstitutional actions to enforce state law maintain immunity from retrospective relief but may

be subject to injunctions awarding prospective relief. Ex parte Young, 209 U.S. 123, 159–60 (1908); accord Edelman v. Jordan, 415 U.S. 651, 665–66 (1974). To determine whether the exception applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (citation modified). Where there is no ongoing violation by state officials, "there is no prospective or ancillary relief to grant." Cotto v. Campbell, 126 F.4th 761, 768 (1st Cir. 2025), petition for cert. filed, No. 24-1307 (June 18, 2025).

El-Bayeh's alleged harm cannot be characterized as "ongoing" for the purpose of the Ex parte Young exception, even assuming he was harmed by a violation of federal law during the traffic stop. The First Circuit recently addressed this principle. In Cotto, the plaintiffs sought an order requiring the Commonwealth to return property the SJC had determined was wrongfully forfeited. 126 F.4th at 765. Notwithstanding the Commonwealth's potential "continuing liability for a past harm," the First Circuit found no ongoing violation of federal law arising from the failure to return the property. Cotto, 126 F.4th at 769. The same reasoning applies here. El-Bayeh alleges an ongoing violation of federal law because he "continues to be in jeopardy of being coerced to remit the imposed assessment and suffer the associated collateral penalties based on this unconstitutional claim against him." Doc. No. 38 at 4. In other words, he still must pay the fine he was assessed in the past, and he may suffer adverse collateral consequences if he fails to do so. Even if El-Bayeh's constitutional rights were violated during the traffic stop, he does not plausibly allege an ongoing violation of federal law by the Commonwealth Defendants. Any "continuing liability" of Sierra or other government officials "for a past harm" does not transform actions to enforce the citation and recover the assessed fine into an ongoing

constitutional violation. The Ex parte Young exception thus cannot be applied here to circumvent sovereign immunity.

One final point bears mention. El-Bayeh can mitigate any "associated collateral penalties" he fears will arise from his failure to pay the assessed fine. If he exhausts all appeals and is nevertheless found responsible for the ticket, he may avoid license suspension or contempt by paying the fine. Plaintiffs, including those with § 1983 claims, have a general duty to mitigate their damages. E.g., Bogan v. City of Bos., 489 F.3d 417, 428 (1st Cir. 2007). El-Bayeh may do so here—and, were he to plausibly state a claim against Sierra or another defendant challenging the lawfulness of the stop and then prevail on the merits of that claim, he could recover the fine he paid as a part of his damages.

Because sovereign immunity prevents El-Bayeh from obtaining monetary damages or other retrospective relief against the Commonwealth Defendants, and because El-Bayeh has not plausibly alleged an ongoing violation of federal law, this Court lacks subject-matter jurisdiction over nearly all of his claims. The motions to dismiss are ALLOWED as to all claims asserted against the Commonwealth Defendants.

B. Sierra in his Individual Capacity

All that remains are El-Bayeh's selective prosecution and enforcement claims against Sierra in his individual capacity.[9] These claims must also be dismissed for failure to state a claim.

[9] El-Bayeh's claim for a due process violation is not plausibly alleged against Sierra in his individual capacity. Sierra is not responsible for the promulgation of speed limits, and nothing in El-Bayeh's pleading plausibly alleges otherwise.

El-Bayeh has failed to plausibly allege a violation of his Constitutional rights.[10] Plaintiffs stating a claim for relief under 42 U.S.C. § 1983 must "establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999); accord Lindke v. Freed, 601 U.S. 187, 194 (2024); Pike v. Budd, 133 F.4th 74, 83 (1st Cir. 2025); Yaghoobi v. Tufts Med. Ctr., Inc., 762 F. Supp. 3d 85, 92 (D. Mass. 2025). Section 1983 creates no rights of its own; instead, "it merely provides remedies for deprivations of rights established elsewhere." City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985). The first element of any claim brought under § 1983 is thus "whether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States." Martinez v. California, 444 U.S. 277, 284 (1980) (citation modified). "[A] violation of state law[] is not inherently sufficient to support a § 1983 claim." Boveri v. Town of Saugus, 113 F.3d 4, 7 (1st Cir. 1997); accord Durand v. Harpold, 807 F.3d 392, 394 (1st Cir. 2015).

El-Bayeh argues he was denied equal protection of the laws because Sierra denied him the "favorable treatment" Sierra afforded "other similarly situated individuals . . . based on an arbitrary classification—affiliation with a governmental entity." Doc. No. 24 at 39–40. But "affiliation with a governmental entity" is not a suspect class, nor does it implicate a fundamental right under the Constitution, so classification on this basis would not trigger heightened scrutiny.

---

[10] This finding supports dismissal for two reasons. First, the claims fail to withstand Sierra's Rule 12(b)(6) challenge. And second, Sierra would likely enjoy qualified immunity without a plausible allegation of a constitutional violation. See Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 8 (1st Cir. 2013) (describing two-step qualified immunity inquiry asking "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation" (citation modified)). The Court limits its discussion in the text to Rule 12(b)(6), which straightforwardly warrants dismissal.

See S.A. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973) (stating traditional indicia of suspect class is history of political powerlessness); see also United States v. Carolene Prods. Co., 304 U.S. 144, 152 n.4 (1938) (noting "discrete and insular minorities" are classes that are entitled to heightened scrutiny); cf. Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 313 (1976) (per curiam) (holding right of governmental employment is not fundamental). As such, any equal protection claims on this classification would be subject to rational basis review. Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 24 (2020) (Gorsuch, J., concurring) (per curiam) ("Rational basis review is the test this Court normally applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, or a claim of fundamental right." (emphasis in original)).

To state a claim that succeeds under rational basis review, El-Bayeh must plausibly allege that Sierra's decision to ticket him was not "rationally related to a legitimate governmental interest." U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 533 (1973); accord United States v. Montijo-Maysonet, 974 F.3d 34, 44 (1st Cir. 2020). Here, his allegations show the opposite. The Commonwealth of Massachusetts undoubtedly has a legitimate interest in ensuring traffic safety within its jurisdiction. Ry. Express Agency, Inc. v. N.Y., 336 U.S. 106, 109 (1949); accord Becky's Broncos, LLC v. Town of Nantucket, 138 F.4th 73, 80 (1st Cir. 2025). The question that remains, then, is whether Sierra's decision to assess a fine against El-Bayeh in the circumstances as El-Bayeh describes them was rationally related to this interest.

The answer is a resounding yes, even under the plaintiff-friendly Rule 12 standard. In El-Bayeh's own words, Sierra stopped him "because [Sierra] believed [he] was driving seventy-two [MPH] in a fifty-five [MPH] zone." Doc. No. 24 ¶ 23. The mere observation of El-Bayeh driving seventeen MPH above the posted speed limit reasonably warrants a stop and a citation.

Cf. Mass. Gen. Laws ch. 90, § 17 (codifying speeding as prima facie evidence of violating Massachusetts traffic laws). Stopping a driver in those circumstances is plainly and rationally related to the Commonwealth's interest in maintaining traffic safety. The decision to fine a motorist is just as rationally related to that interest, particularly where a record check reveals a driving history with the same kind of infraction on the same highway once before. In these circumstances, El-Bayeh has not plausibly alleged Sierra violated his right to equal protection under the Fourteenth Amendment.[11]

El-Bayeh's selective prosecution and enforcement claims against Sierra are implausible for a second reason: he has failed to plausibly allege that he is similarly situated to Snow and Blair. El-Bayeh contends they are similarly situated in all regards, except in their affiliation with a governmental entity. Doc. No. 24 ¶ 206. But simply saying this does not make it so. El-Bayeh cites to United States v. Lewis, 517 F.3d 20, 27 (1st Cir. 2007), to define "similarly situated" offenders as those who have "committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." But Lewis itself stresses a focus on "material prosecutorial factors," or those factors that "have some meaningful relationship either to the charges at issue or to the accused—and that might be considered by a reasonable prosecutor." Id. Here, such a material factor is squarely conceded in El-Bayeh's own pleadings and sets him apart from the comparators he describes—El-Bayeh's driving record.

During a traffic stop, police officers may perform "ordinary inquiries incident to the stop," such as "checking the driver's license and inspecting the automobile's registration and

[11] The only other authority El-Bayeh cites in alleging Sierra abused his enforcement or prosecutorial discretion is buried in an exhibit. There, El-Bayeh alleges Sierra's conduct violated Mass. Gen. Laws ch. 90C, § 2. Doc. No. 24-13 at 22. But Sierra's alleged state-law violation does not fall within the orbit of § 1983. See Sullivan, 526 U.S. at 49–50.

proof of insurance." Rodriguez v. United States, 575 U.S. 348, 355 (2015) (citation modified). It hardly needs saying that a motorist's driving record, revealed by "checking the driver's license," would be a relevant (and important) factor in an officer's assessment of whether to prosecute an alleged speeding offense. Cf. Commonwealth v. Rodriguez, 37 N.E.3d 611, 619 (Mass. 2015) (establishing "clear and compelling" government interest in allowing traffic stops for purpose of promoting public safety); United States v. Burleson, 657 F.3d 1040, 1046 (10th Cir. 2011) (stating background check may be run during traffic stop even if motorist's history is irrelevant to stop). El-Bayeh's driving record was blemished at least by his 2018 citation for traveling more than forty MPH over the speed limit, on the same highway where he was stopped by Sierra. Doc. No. 24-9 ¶ 89. El-Bayeh has not alleged that Snow or Blair had a driving record that was similarly blighted. This further dooms his equal protection claims against Sierra.

By failing to sufficiently allege a violation of his constitutional rights, El-Bayeh has failed to state a claim against Sierra upon which relief may be granted. Sierra's motion to dismiss is therefore ALLOWED with respect to the selective prosecution and enforcement claims against him in his individual capacity.

## IV. CONCLUSION

For the foregoing reasons, Sierra's Motion to Dismiss (Doc. No. 16) and the Commonwealth Defendants' Motion to Dismiss (Doc. No. 20) are ALLOWED. El-Bayeh's Motion for a Preliminary Injunction (Doc. No. 37) is DENIED as moot. The Clerk shall enter a separate judgment of dismissal and close this case. Each party shall bear their own fees and costs.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

Massachusetts General Laws Annotated
Part I. Administration of the Government (Ch. 1-182)
Title XIV. Public Ways and Works (Ch. 81-92b)
Chapter 90C. Procedure for Motor Vehicle Offenses (Refs & Annos)

M.G.L.A. 90C § 2

# § 2. Citations and citation books

Effective: July 1, 2021
Currentness

Each police chief shall issue citation books to each permanent full-time police officer of his department whose duties may or will include traffic duty or traffic law enforcement, or directing or controlling traffic, and to such other officers as he at his discretion may determine. Each police chief shall obtain a receipt on a form approved by the registrar from such officer to whom a citation book has been issued. Each police chief shall also maintain citation books at police headquarters for the recording of automobile law violations by police officers to whom citation books have not been issued. The executive office of public safety and security shall promulgate rules and regulations establishing the standards required by this section for the issuance of electronic citations, including the proper equipment to be maintained by each department. In lieu of issuing citation books or in addition thereto, each police chief whose department issues citations electronically may grant authority to do so to each police officer of his or her department who has been trained pursuant to the regulations promulgated pursuant to this section.

Each police chief appointed by the trustees of the commonwealth's state universities and community colleges under section 22 of chapter 15A shall certify to the registrar, on or before January first of each year, that:

(1) the police officers appointed by the trustees at the state university or community college have been certified pursuant to chapter 6E;

(2) said officers have completed the annual in-service training required by the municipal police training committee established in section 116 of chapter 6;

(3) the state university or community college police department submits uniform crime reports to the Federal Bureau of Investigation;

(4) a memorandum of understanding has been entered into with the police chief of the municipality wherein the state university or community college is located outlining the policies and procedures for utilizing the municipality's booking and lock-up facilities, fingerprinting and breathalyzer equipment if the state university or community college police department does not provide booking and lock-up facilities, fingerprinting or breathalyzer equipment; and

(5) the state university or community college police department has policies and procedures in place for use of force, pursuit, arrest, search and seizure, racial profiling and motor vehicle law enforcement.

Nothing in this section, except the previous paragraph, shall limit the authority granted to the police chiefs and police officers at the state universities and community colleges under said section 22 of said chapter 15A or section 18 of chapter 73.

Notwithstanding the provisions of any general or special law, other than a provision of this chapter, to the contrary, any police officer assigned to traffic enforcement duty shall, whether or not the offense occurs within his presence, record the occurrence



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

of automobile law violations upon a citation, filling out the citation and each copy thereof as soon as possible and as completely as possible and indicating thereon for each such violation whether the citation shall constitute a written warning and, if not, whether the violation is a criminal offense for which an application for a complaint as provided by subsection B of section three shall be made, whether the violation is a civil motor vehicle infraction which may be disposed of in accordance with subsection (A) of said section three, or whether the violator has been arrested in accordance with section twenty-one of chapter ninety. Said police officer shall inform the violator of the violation and shall give a copy of the citation to the violator. Such citation shall be signed, manually or electronically, by the police officer, and whenever a citation is given to the violator in person that fact shall be so certified by the police officer. If a written warning is indicated, no further action need be taken by the violator. No other form of notice, except as provided in this section, need be given to the violator.

A failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation, except where the violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator, or where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure. In such case the violation shall be recorded upon a citation as soon as possible after such violation and the citation shall be delivered to the violator or mailed to him at his residential or mail address or to the address appearing on his license or registration as appearing in registry of motor vehicles records. The provisions of the first sentence of this paragraph shall not apply to any complaint or indictment charging a violation of section twenty-four, twenty-four G or twenty-four L of chapter ninety, providing such complaint or indictment relates to a violation of automobile law which resulted in one or more deaths.

At or before the completion of his tour of duty, a police officer to whom a citation book has been issued and who has recorded the occurrence of an automobile law violation upon a citation shall deliver to his police chief or to the person duly authorized by said chief all remaining copies of such citation, duly signed, except the police officer's copy which shall be retained by the police officer; provided, however, that if a citation has been issued electronically, an electronic record shall be made and delivered to the police chief. If the police officer has directed that a written warning be issued, the part of the citation designated as the registry of motor vehicles record shall be forwarded forthwith by the police chief or person authorized by him to the registrar and shall be kept by the registrar in his main office.

If the police officer has not directed that a written warning be issued and has not arrested the violator, the police chief or a person duly authorized by him shall retain the police department copy of each citation or, if issued electronically, shall retain the police department report of the issuance, and not later than the end of the sixth business day after the date of the violation:

(a) in the case of citations issued from a citation book alleging only one or more civil motor vehicle infractions, shall cause all remaining copies of such citations to be mailed or delivered to the registrar or, in the case of citations issued electronically alleging a civil motor vehicle infractions, shall ensure that such citations are electronically forwarded as required; or

(b) in the case of citations alleging one or more criminal automobile law violations, shall cause all remaining copies or electronic records of such citations to be delivered to the clerk-magistrate of the district court for the judicial district where the violation occurred. Failure to comply with the provisions of this paragraph shall not constitute a defense to any complaint or indictment charging a violation of section twenty-four, twenty-four G or twenty-four L of chapter ninety if such violation resulted in one or more deaths. Each clerk-magistrate shall maintain a record in the form prescribed by the chief justice of the district court department of such citations and shall notify the registrar of the disposition of such citations in accordance with the provisions of section twenty-seven of said chapter ninety.

If a citation issued from a citation book is spoiled, mutilated or voided, it shall be endorsed with a full explanation thereof by the police officer voiding such citation, and shall be returned to the registrar forthwith and shall be duly accounted for upon the audit sheet for the citation book from which said citation was removed. If any record of a citation issued electronically is



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

spoiled, mutilated or voided, the record of such electronic citation, to the extent it can be recovered, shall be endorsed with a full explanation thereof by the police officer voiding such electronic citation and it shall be forwarded to the registrar in a manner approved by the registrar and the officer shall be prepared to account for the void in an electronic audit trail.

**Credits**

Added by St.1982, c. 586, § 2. Amended by St.1984, c. 97, § 3; St.1985, c. 794, § 3; St.1986, c. 620, §§ 18, 19; St.1991, c. 138, § 160; St.1992, c. 379, § 4; St.2001, c. 67; St.2003, c. 46, § 99, eff. July 31, 2003; St.2006, c. 134, § 3A, eff. Sept. 28, 2006; St.2010, c. 189, §§ 75, 76, eff. Oct. 26, 2010; St.2016, c. 218, §§ 199 to 208, eff. Nov. 7, 2016; St.2020, c. 253, § 84, eff. July 1, 2021.

Notes of Decisions (102)

M.G.L.A. 90C § 2, MA ST 90C § 2

Current through Chapter 79 of the 2026 2nd Annual Session. Some sections may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag
Unconstitutional or PreemptedPrior Version Held Unconstitutional by Crawford v. Blue, D.Mass., Sep. 21, 2017

KeyCite Yellow Flag
Proposed Legislation

Massachusetts General Laws Annotated
Part I. Administration of the Government (Ch. 1-182)
Title XIV. Public Ways and Works (Ch. 81-92b)
Chapter 90C. Procedure for Motor Vehicle Offenses (Refs & Annos)

M.G.L.A. 90C § 3

# § 3. Issuance of citations; hearing; appeal; summons or warrant; complaint; trial; license or permit suspension

Effective: July 1, 2019
Currentness

(A) (1) If a police officer observes or has brought to the officer's attention the occurrence of a civil motor vehicle infraction, the officer may issue a written warning or may cite the violator for a civil motor vehicle infraction in accordance with this subsection. If the officer issues a citation solely for one or more civil motor vehicle infractions without any associated criminal violations, the officer shall indicate on the citation the scheduled assessment for each civil motor vehicle infraction alleged.

(2) The citation shall notify the violator that within twenty days of the date of the citation the violator must, for each civil motor vehicle infraction alleged, either pay the scheduled assessment or contest responsibility for the infraction by requesting a noncriminal hearing before a magistrate of the district court.

(3) The violator shall pay the assessment indicated by the officer for each such infraction within twenty days of the date of the citation: (a) by mailing the total amount of the indicated assessment, along with the citation appropriately marked, to the registrar at the address indicated on the citation, or (b) by delivering, personally or through an agent duly authorized in writing, the total amount of the indicated assessment, along with the citation appropriately marked, to any office of the registrar during normal business hours. Payment may be made in such forms, including payment by credit card or other recognized form of electronic payment, as the registrar shall determine.

Payment of the indicated assessment shall operate as a final disposition of the matter. The violator shall not be required to report to any probation officer, and no record of the matter shall be entered in any criminal or probation records of any court. The payment of the indicated assessment shall not be admissible as an admission of guilt, responsibility or negligence in any criminal or civil proceeding, except that such payment shall be an admission of responsibility and shall operate as a conviction for purposes of any action by the registrar pursuant to chapter ninety and for purposes of the safe driver insurance plan established by section one hundred and thirteen B of chapter one hundred and seventy-five.

(4) A violator may contest responsibility for the infraction by making a signed request for a noncriminal hearing on the citation and mailing such citation, together with a $25 court filing fee, to the registrar at the address indicated on the citation within 20 days of the citation. Notwithstanding any general or special law to the contrary, the registrar, in cooperation with the state comptroller, upon receipt of the $25 court filing fee, shall cause the court filing fee to be transferred to the trial court department;


WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

provided, however, that the registrar may periodically retain an amount necessary to pay refunds of said fees for dispositions that result in findings of not responsible; and provided further, that the registrar may retain an amount not greater than $200,000 annually for personnel costs associated with the processing of those filing fees.

A violator who does not, within twenty days of the date of the citation, request a noncriminal hearing shall not thereafter be given such a hearing, unless the registrar shall determine that the failure to make such a request timely was for good cause that was not within the control of the violator. The registrar's determination of such issue shall be final.

The registrar shall notify the clerk-magistrate of the district court for the judicial district in which the infraction occurred of such request for a noncriminal hearing, in such manner as the chief justice of the district court department and the registrar shall jointly determine. Unless a hearing date and time has already been assigned pursuant to procedures jointly established by the chief justice of the district court department and the registrar, the clerk-magistrate shall notify the police agency concerned and the violator of the date and time of the hearing before a magistrate of the court.

If the hearing is conducted by a magistrate other than a justice, either the violator or the police agency concerned may appeal the decision of the magistrate to a justice, who shall hear the case de novo. Any violator so appealing the decision of a magistrate shall be responsible for paying a fee of $50 prior to the scheduling of the appeal hearing before a justice. There shall be no right of jury trial for civil motor vehicle infractions.

In any such hearing before a magistrate or justice, the citation shall be admissible and shall be prima facie evidence of the facts stated therein. Compulsory process for witnesses may be had by either party in the same manner as in criminal cases. On a showing of need in advance of such hearing, the magistrate or justice may direct that the violator be permitted to inspect specific written documents or materials in the possession of the police officer or agency concerned that are essential to the violator's defense.

At the conclusion of the hearing, the magistrate or justice shall announce a finding of responsible or not responsible. The magistrate or justice shall enter a finding of responsible if it was shown by a preponderance of the credible evidence that the violator committed the infraction alleged; otherwise the magistrate or justice shall enter a finding of not responsible, which shall be communicated to the registrar. No other disposition shall be permitted, and such matters shall not be continued without a finding, dismissed, or filed.

If the violator is found responsible after a noncriminal hearing, the magistrate or justice shall require the violator to pay to the registrar an assessment which shall not exceed the scheduled assessment for that infraction. Such assessment shall be in accordance with any guidelines promulgated by the chief justice of that department of the trial court, which shall be binding on magistrates and justices, to the end that such assessments are made as uniformly as possible, and which may include provisions requiring a prescribed or a minimum assessment for specified civil motor vehicle infractions.

The violator shall pay to the registrar the assessment imposed by the magistrate or justice within twenty days of the date the violator is personally notified or is mailed notice of the decision of the magistrate or justice, unless for good cause the magistrate or justice allows the violator a longer time to pay the imposed assessment.

The violator's obligation to pay such imposed assessment shall automatically be stayed during the pendency of any timely appeal to the appellate division or any subsequent appeal to an appellate court. The violator shall be required to pay such imposed assessment to the registrar within twenty days of the date the appellate division or the appellate court renders a decision that is adverse to the violator and that has not been further appealed.

(5) Questions of law arising in the disposition of a civil motor vehicle infraction in a noncriminal hearing before a justice may be appealed to the appellate division. Such appeals shall be governed by a simplified method of appeal established by rules promulgated by the chief justice of the district court department, subject to the approval of the supreme judicial court. Claims of



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

appeal shall be accompanied by an entry fee in an amount established by the chief justice of the trial court. Proceedings under this chapter shall not be reviewable by a civil action in the nature of certiorari.

(6) (a) If a violator:

(i) fails either to pay the full amount of the scheduled assessment to the registrar or to request a noncriminal hearing within twenty days of the date of the citation plus such grace period as the registrar shall allow, or

(ii) fails to appear for a noncriminal hearing before a magistrate or a justice at the time required after having been given notice of such hearing either personally or by first class mail directed to such violator's mail address as reported to the registrar and after notice of such failure has been given to the registrar by the clerk-magistrate, the registrar shall notify such violator by first class mail directed to such violator's mail address that unless and until the violator pays to the registrar the full amount of the scheduled or imposed assessments for such civil motor vehicle infractions, plus any late fees or other administrative fees provided for by law or regulation:

(i) in the case of an operator violation, such violator's operators license, learners permit or right to operate will be suspended by operation of law and without further notice or hearing at the expiration of thirty days from the date of the mailing of such notice, and any license to operate a motor vehicle issued to such violator by the registrar will not be renewed upon or after the expiration date of such license; or

(ii) in the case of an owner violation, any registration of a motor vehicle issued to such violator will be suspended by operation of law and without further notice or hearing at the expiration of thirty days from the date of the mailing of such notice, and any registration of a motor vehicle issued to such violator by the registrar will not be renewed upon or after the expiration date of such registration.

Unless such notice is sooner cancelled by the registrar, in the case of an operator violation, such violator's operators license, learners permit or right to operate, or in the case of an owner violation any registration of a motor vehicle issued to such violator by the registrar, shall be deemed suspended by operation of law on the date indicated on the notice mailed by the registrar, and shall remain suspended until reinstated by the registrar upon payment of the scheduled or imposed assessments for such civil motor vehicle infractions, plus any late fees or other administrative fees which the registrar is required or authorized by law or regulation to impose, unless such fees are waived in whole or in part by the registrar.

(b) If a violator attempts to pay a scheduled assessment with a check, credit card, debit card, or any other payment method that is returned unpaid or rejected, or fails to pay the full amount of an assessment imposed by a magistrate or justice pursuant to this section within the time allowed plus such grace period as the registrar shall allow, the registrar shall revoke any operator's license, learner's permit, certificate of registration or title, number plate, sticker, decal or other item issued by the registrar and held by the violator and order the return thereof forthwith. Such violator may not apply for or receive any operators license, learners permit, certificate of registration or title, number plate, sticker, decal or other item issued by the registrar until such amount has been paid in full, plus any late fees or other administrative fees which the registrar is required or authorized by law or regulation to impose, unless such fees are waived in whole or in part by the registrar.

(c) Payment of a scheduled assessment or an assessment imposed by a magistrate or justice pursuant to this section, plus any late fees or other administrative fees provided for by law or regulation, shall operate as a final disposition of the matter. The



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

violator shall not be required to report to any probation officer, and no record of the matter shall be entered in any criminal or probation records of any court.

(B) (1) If a police officer observes or has brought to the officer's attention the occurrence of an automobile law violation that constitutes a criminal offense, the police officer: (a) may direct that a written warning be issued; (b) may arrest the violator without a warrant in accordance with the provisions and limitations of section twenty-one of chapter ninety for such offenses as are specified in that section; or (c) may determine that an application for criminal complaint shall be filed.

(2) If the police officer determines that an application for criminal complaint shall be filed, the officer shall so indicate on the citation. The citation shall notify the violator that a violator accused of a misdemeanor, with no accompanying felony, will be granted a hearing before such complaint issues, as provided in section thirty-five A of chapter two hundred and eighteen, if the violator so requests in writing within four days of the violation to the clerk-magistrate of the district court for the judicial district where the offense occurred. Such notification on the citation shall satisfy the notice requirements of section thirty-five A of chapter two hundred and eighteen.

The citation shall serve as the application for criminal complaint, supplemented if necessary with such additional information as shall be required by the administrative justice of the district court department. If a criminal complaint is issued, the procedure established for criminal cases shall then be followed. Each police chief may, from time to time, designate one person to sign all such complaints.

(3) If a violator in the case of a citation which alleges one or more criminal automobile law violations:

(a) fails without good cause to appear in court as required after having been summonsed or after having been given notice to appear either personally or by first class mail directed to such person's mail address as reported to the registrar, or such person's last known address as furnished by such person to the citing officer or to the court; or

(b) fails to pay within the time allowed the full amount of a fine, penalty, assessment, or other lawful amount required by a justice pursuant to law; or

(c) attempts to pay such fine, penalty, assessment, or other lawful amount with a check that is returned, unpaid, the clerk-magistrate shall notify the registrar. Such notice to the registrar may be given more than once in the same case if necessary.

Upon receipt of such notice, the registrar shall revoke any operators license, learners permit, certificate of registration or title, number plate, sticker, decal or other item issued by the registrar and held by the violator and order the return thereof forthwith. Such violator may not apply for or receive any operators license, learners permit, certificate of registration or title, number plate, sticker, decal or other item issued by the registrar unless and until the violator presents the registrar with a certificate of the clerk-magistrate of the court that the matter has been fully disposed of in accordance with law or, in the case of a matter still pending before the court, that the violator is attending to the matter to the satisfaction of the court. The court shall not unreasonably withhold such certificate. The registrar may cancel such revocation, and so notify the court, if satisfied that it resulted through error of the registrar or the court.

Nothing herein shall limit the availability to the court of other enforcement mechanisms in addition to notice to the registrar, including the issuance of additional written notices, summonses or warrants, including warrants of distress as provided for in section forty-two of chapter two hundred and seventy-nine, or proceedings for civil or criminal contempt. Civil contempt actions


WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

shall be prosecuted by the district attorney or police prosecutor and heard by a justice pursuant to rules of court. Any summons or warrant issued pursuant to this subsection may be served by any officer authorized to service criminal process.

(C) If a violator is cited for a civil motor vehicle infraction in conjunction with and arising from the same occurrence as an automobile law violation that constitutes a criminal offense, both shall be recorded on the same citation whenever feasible, in a format acceptable to the district court, and all parts of the citation shall be deposited with the clerk-magistrate as provided in section two.

The civil motor vehicle infraction shall retain its character as such and shall be decided and disposed of under the same general procedures and with the same provisions as to disposition and assessments as provided in subsection (A), with the following exceptions:

(1) The violator may not dispose of the civil motor vehicle infraction by paying the scheduled assessment to the registrar until there has been an adjudication of the associated automobile law violation.

(2) The violator may request a noncriminal hearing on such civil motor vehicle infraction by making a written request therefor at any time prior to the commencement of trial on the associated criminal automobile law violation. Such noncriminal hearing shall be conducted by a justice, and either may be conducted simultaneously with the criminal trial, or may be severed from the trial of the associated criminal automobile law violation if justice so requires. If the violator exercises the right to trial by jury in the first instance with respect to the associated criminal automobile law violation, the noncriminal hearing shall be conducted by the justice presiding over such trial.

(3) If the violator has been found guilty of, and is simultaneously being sentenced on, the criminal automobile law violation, the justice may order filed without imposition of an assessment any associated civil motor vehicle infraction as to which the violator admits responsibility or has been found responsible. In all other cases, if the violator admits responsibility or has been found responsible for the civil motor vehicle infraction, the justice shall require the violator to pay a civil assessment in accordance with subsection (A). Such civil assessment shall be paid directly to the registrar, or shall be paid to the clerk-magistrate and then paid over to the registrar, as the registrar and the chief justice of the district court shall jointly determine.

If the violator in such a case defaults solely on the portion of such citation that constitutes one or more civil motor vehicle infractions, such default shall be dealt with as indicated in subsection (A). If the violator in such a case defaults on the portion of such citation that constitutes one or more criminal automobile law violations, such default shall be dealt with as indicated in subsection (B).

**Credits**

Added by St.1982, c. 586, § 2. Amended by St.1985, c. 794, § 3; St.1986, c. 35, § 1; St.1986, c. 712, §§ 1, 2; St.1987, c. 399, § 3; St.1991, c. 138, § 161; St.1992, c. 379, §§ 5, 5A; St.1993, c. 12, § 2; St.1996, c. 394, § 3; St.2003, c. 26, § 236, eff. July 1, 2003; St.2009, c. 27, §§ 73, 74, eff. July 1, 2009; St.2010, c. 131, § 57, eff. July 1, 2010; St.2010, c. 359, § 16, eff. Oct. 15, 2010; St.2011, c. 93, § 17, eff. July 1, 2012; St.2016, c. 218, §§ 209, 210, eff. Nov. 7, 2016; St.2019, c. 41, §§ 39, 40, eff. July 1, 2019.

Notes of Decisions (42)

M.G.L.A. 90C § 3, MA ST 90C § 3

Current through Chapter 79 of the 2026 2nd Annual Session. Some sections may be more current, see credits for details.



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.