**No. 26-1067**

# United States Court of Appeals
# For The First Circuit

MIKHAEL EL-BAYEH,

*Plaintiff-Appellant,*

v.

MASSACHUSETTS DEPARTMENT OF STATE POLICE; MICHAEL P. SIERRA, in the individual capacity and official capacity as a uniformed member of the Massachusetts Department of State Police; COLLEEN OGILVIE, in the official capacity as Registrar of Motor Vehicles; MARIAN T. RYAN, in the official capacity as Middlesex County District Attorney; GEOFFREY NOBLE, in the official capacity as Colonel of the Massachusetts Department of State Police; JONATHAN GULLIVER, in the official capacity as Highway Administrator of the Massachusetts Department of Transportation,

*Defendants-Appellees.*

**On Appeal from United States District Court for the District of Massachusetts**
Civil Case No. 1:25-cv-10476-LTS
The Honorable Leo T. Sorokin, Judge

## REPLY BRIEF OF PLAINTIFF-APPELLANT

Mikhael El-Bayeh
*pro se*
10 Dewey Ave
Woburn, MA 01801
Tel: (508) 789-2605
mikhael.e@gmail.com

## TABLE OF CONTENTS

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... iii

ARGUMENT .......... 1

Introduction .......... 1

I. Equal Protection .......... 1

A. The District Court Tested the Fine, Not the Classification .......... 1

B. Class-of-One Authority Against a Class-Based Claim .......... 2

C. The Arbitrary Classification Pleaded Suffices Alone .......... 4

D. The Comparators Are Pleaded; Sierra Wants Them Proved .......... 6

E. The Classification Serves No Legitimate Interest .......... 8

II. Sovereign Immunity .......... 9

A. Both Briefs Answer a Claim Nobody Brought .......... 9

B. Papasan Is About What the State Owes, Not What It Is Owed .......... 10

C. Pay or Lose the License; No Path Loses Nothing .......... 11

D. Nothing to Undo, Nothing to Recover .......... 12

III. The Unreached Grounds Do Not Support Affirmance .......... 14

A. No Judgment to Disturb, No Proceeding to Protect .......... 14

i. Rooker-Feldman .......... 14

ii. Younger Abstention .......... 17

B. Preclusion Fails on Both Branches ........ 20

i. Issue Preclusion ........ 21

ii. Claim Preclusion ........ 23

C. No Claim Accrued on August 4, 2021 ........ 29

D. Personal Immunities Reach Damages Only, and Sierra Proves Neither ........ 33

i. Prosecutorial Immunity ........ 34

ii. Qualified Immunity ........ 38

E. Notice of the Sign Is Not Notice That It Binds ........ 42

CONCLUSION ........ 47

CERTIFICATE OF COMPLIANCE ........ 48

CERTIFICATE OF SERVICE ........ 49

## TABLE OF AUTHORITIES

**Cases**

*Akinci-Unal* v. *Unal*,
64 Mass. App. Ct. 212, 832 N.E.2d 1 (2005)....................................20

*Alexis* v. *McDonald's Rests. of Mass., Inc.*,
67 F.3d 341 (1st Cir. 1995)....................................38

*Algonquin Gas Transmission, LLC* v. *Weymouth, Mass.*,
919 F.3d 54 (1st Cir. 2019)....................................33

*Alston* v. *Town of Brookline*,
997 F.3d 23 (1st Cir. 2021)....................................25, 39, 41

*Baker* v. *McCollan*,
443 U.S. 137 (1979)....................................26

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund* v. *Ferbar Corp. of Cal.*,
522 U.S. 192 (1997)....................................30, 31

*Buckley* v. *Fitzsimmons*,
509 U.S. 259 (1993)....................................36

*Burlington Police Dep't* v. *Hagopian*,
100 Mass. App. Ct. 720, 184 N.E.3d 789 (2022)....................................9

*Burns* v. *Reed*,
500 U.S. 478 (1991)....................................34

*Butz* v. *Economou*,
438 U.S. 478 (1978)....................................34, 35

*Cheek* v. *United States*,
498 U.S. 192 (1991)....................................43

*Cleavinger* v. *Saxner*,
474 U.S. 193 (1985)....................................36

*Cordi-Allen* v. *Conlon*,
494 F.3d 245 (1st Cir. 2007) ........ 6

*Cotto* v. *Campbell*,
126 F.4th 761 (1st Cir. 2025) ........ 11

*D.C. Court of Appeals* v. *Feldman*,
460 U.S. 462 (1983) ........ 16

*Davison* v. *Gov't of P.R.-P.R. Firefighters Corps*,
471 F.3d 220 (1st Cir. 2006) ........ 15

*Degiacomo* v. *City of Quincy*,
476 Mass. 38, 63 N.E.3d 365 (2016) ........ 21, 28

*Delgado-Caraballo* v. *Hosp. Pavia Hato Rey, Inc.*,
889 F.3d 30 (1st Cir. 2018) ........ 29

*Dep't of State Police* v. *El-Bayeh*,
106 Mass. App. Ct. 1128, 277 N.E.3d 1025, 2026 WL 849996
(2026) (unpublished) ........ 17, 40

*DiMarco-Zappa* v. *Cabanillas*,
238 F.3d 25 (1st Cir. 2001) ........ 39, 41, 42

*Edelman* v. *Jordan*,
415 U.S. 651 (1974) ........ 13

*El-Bayeh* v. *Mass. Dep't of Transp.*,
104 Mass. App. Ct. 1115, 238 N.E.3d 830, 2024 WL 3517636
(2024) (unpublished) ........ passim

*El-Bayeh* v. *Mass. Dep't of Transp.*,
99 Mass. App. Ct. 1122, 168 N.E.3d 372, 2021 WL 1713099
(2021) (unpublished) ........ 46

*Engquist* v. *Oregon Dep't of Agric.*,
553 U.S. 591 (2008) ........ 2, 3

*Ex parte Virginia*,
100 U.S. 339 (1880) ........ 37

*Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005) .......... 14, 15, 16, 17

*Fassas* v. *First Bank & Tr. Co. of Chelmsford*,
353 Mass. 628, 233 N.E.2d 924 (1968) .......... 24

*FCC* v. *Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .......... 45

*Fincher* v. *Town of Brookline*,
26 F.4th 479 (1st Cir. 2022) .......... 5

*Forrester* v. *White*,
484 U.S. 219 (1988) .......... 37

*Gen. Elec. Co.* v. *EPA*,
53 F.3d 1324 (D.C. Cir. 1995) .......... 45, 46

*Ginther* v. *Comm'r of Ins.*,
427 Mass. 319, 693 N.E.2d 153 (1998) .......... 22

*Goldstein* v. *Galvin*,
719 F.3d 16 (1st Cir. 2013) .......... 26

*Green* v. *Brennan*,
578 U.S. 547 (2016) .......... 31

*Guadalupe-Báez* v. *Pesquera*,
819 F.3d 509 (1st Cir. 2016) .......... 39

*Guillemard-Ginorio* v. *Contreras-Gomez*,
585 F.3d 508 (1st Cir. 2009) .......... 19

*Hafer* v. *Melo*,
502 U.S. 21 (1991) .......... 10, 34

*Harlow* v. *Fitzgerald*,
457 U.S. 800 (1982) .......... 34, 37

*Harron* v. *Town of Franklin*,
660 F.3d 531 (1st Cir. 2011) .......... 5

*Hayden* v. *Grayson*,
134 F.3d 449 (1st Cir. 1998) .......... 5

*Heacock* v. *Heacock*,
402 Mass. 21, 520 N.E.2d 151 (1988) .......... 21, 23, 27

*Hill* v. *Town of Conway*,
193 F.3d 33 (1st Cir. 1999) .......... 16

*Imbler* v. *Pachtman*,
424 U.S. 409 (1976) .......... 34, 36

*In re Colonial Mortg. Bankers Corp.*,
324 F.3d 12 (1st Cir. 2003) .......... 20

*In re Sonus Networks, Inc., S'holder Derivative Litig.*,
499 F.3d 47 (1st Cir. 2007) .......... 28

*In re Valente*,
360 F.3d 256 (1st Cir. 2004) .......... 33

*Irish* v. *Maine*,
849 F.3d 521 (1st Cir. 2017) .......... 41

*Jarosz* v. *Palmer*,
436 Mass. 526, 766 N.E.2d 482 (2002) .......... 22

*Kassel* v. *Consol. Freightways Corp. of Del.*,
450 U.S. 662 (1981) .......... 44

*Kentucky* v. *Graham*,
473 U.S. 159 (1985) .......... 10

*Kercadó-Meléndez* v. *Aponte-Roque*,
829 F.2d 255 (1st Cir. 1987) .......... 18

*Kobrin* v. *Bd. of Registration in Med.*,
444 Mass. 837, 832 N.E.2d 628 (2005) .......... 21, 23, 27, 28

*Lachance* v. *Town of Charlton*,
990 F.3d 14 (1st Cir. 2021) .......... 14

*LaChapelle* v. *Berkshire Life Ins. Co.*,
142 F.3d 507 (1st Cir. 1998) .......... 29, 32

*Lambert* v. *California*,
355 U.S. 225 (1957) .......... 43

*Lance* v. *Dennis*,
546 U.S. 459 (2006) .......... 14, 17

*Landrigan* v. *City of Warwick*,
628 F.2d 736 (1st Cir. 1980) .......... 25

*Maldonado-González* v. *P.R. Aqueduct & Sewer Auth.*,
158 F.4th 27 (1st Cir. 2025) .......... 38

*Malley* v. *Briggs*,
475 U.S. 335 (1986) .......... 34, 36, 37

*Mancuso* v. *Kinchla*,
60 Mass. App. Ct. 558, 806 N.E.2d 427 (2004) .......... 24

*Manego* v. *Orleans Bd. of Trade*,
773 F.2d 1 (1st Cir. 1985) .......... 27

*McCoy* v. *Town of Pittsfield*,
59 F.4th 497 (1st Cir. 2023) .......... 5

*Mihos* v. *Swift*,
358 F.3d 91 (1st Cir. 2004) .......... 23

*Miller* v. *Nichols*,
586 F.3d 53 (1st Cir. 2009) .......... 15

*Mulero-Carrillo* v. *Román-Hernández*,
790 F.3d 99 (1st Cir. 2015) .......... 4, 5, 6, 7

*New Orleans Pub. Serv., Inc.* v. *Council of City of New Orleans*,
491 U.S. 350 (1989) .......... 19, 20

*Newton Police Ass'n* v. *Police Chief of Newton*,
63 Mass. App. Ct. 697, 828 N.E.2d 952 (2005) .......... 9

*Nieves* v. *McSweeney*,
241 F.3d 46 (1st Cir. 2001) .......... 30

*Ouellette* v. *Beaupre*,
977 F.3d 127 (1st Cir. 2020) .......... 30

*Oyler* v. *Boles*,
368 U.S. 448 (1962) .......... 3, 4, 6

*Papasan* v. *Allain*,
478 U.S. 265 (1986) .......... 10, 11

*Pennhurst State Sch. & Hosp.* v. *Halderman*,
465 U.S. 89 (1984) .......... 13

*Pierson* v. *Ray*,
386 U.S. 547 (1967) .......... 36

*Porn* v. *Nat'l Grange Mut. Ins. Co.*,
93 F.3d 31 (1st Cir. 1996) .......... 24

*Puerto Ricans for P.R. Party* v. *Dalmau*,
544 F.3d 58 (1st Cir. 2008) .......... 15

*Reddy* v. *Foster*,
845 F.3d 493 (1st Cir. 2017) .......... 12

*Rio Grande Cmty. Health Ctr., Inc.* v. *Rullan*,
397 F.3d 56 (1st Cir. 2005) .......... 19, 20

*Rodríguez-Reyes* v. *Molina-Rodríguez*,
711 F.3d 49 (1st Cir. 2013) .......... 6

*Rossi* v. *Gemma*,
489 F.3d 26 (1st Cir. 2007) .......... 18

*Rubinovitz* v. *Rogato*,
60 F.3d 906 (1st Cir. 1995) .......... 5, 30

*Sandler* v. *Silk*,
292 Mass. 493, 198 N.E. 749 (1935) .......... 24

*Seminole Tribe of Fla.* v. *Florida*,
517 U.S. 44 (1996) .......... 13

*Sirva Relocation, LLC* v. *Richie*,
794 F.3d 185 (1st Cir. 2015) .......... 18

*Skinner* v. *Switzer*,
562 U.S. 521 (2011) .......... 17

*Sprint Commc'ns, Inc.* v. *Jacobs*,
571 U.S. 69 (2013) .......... 18, 19

*T.M.* v. *Univ. of Md. Med. Sys. Corp.*,
146 S. Ct. 1739 (2026) .......... 15

*Tapalian* v. *Tusino*,
377 F.3d 1 (1st Cir. 2004) .......... 5, 6

*Taylor* v. *Sturgell*,
553 U.S. 880 (2008) .......... 28, 29

*TLT Constr. Corp.* v. *A. Anthony Tappe & Assocs., Inc.*,
48 Mass. App. Ct. 1, 716 N.E.2d 1044 (1999) .......... 24

*Town of Barnstable* v. *O'Connor*,
786 F.3d 130 (1st Cir. 2015) .......... 13

*Trans-Spec Truck Serv., Inc.* v. *Caterpillar Inc.*,
524 F.3d 315 (1st Cir. 2008) .......... 29

*United States ex rel. Duxbury* v. *Ortho Biotech Prods., LP*,
579 F.3d 13 (1st Cir. 2009) .......... 29

*United States ex rel. Est. of Cunningham* v. *Millennium Labs. of Cal., Inc.*,
713 F.3d 662 (1st Cir. 2013) .......... 42

*United States* v. *Anzalone*,
766 F.2d 676 (1st Cir. 1985) .......... 45

*United States* v. *Int'l Minerals & Chem. Corp.*,
402 U.S. 558 (1971) .......... 43

*United States* v. *Lachman*,
387 F.3d 42 (1st Cir. 2004) .......... 45, 46

*United States* v. *Lewis*,
517 F.3d 20 (1st Cir. 2008) .......... 7

*United States* v. *Smith*,
231 F.3d 800 (11th Cir. 2000) .......... 7, 8

*United States* v. *Zannino*,
895 F.2d 1 (1st Cir. 1990) .......... 41

*Village of Willowbrook* v. *Olech*,
528 U.S. 562 (2000) .......... 2, 4

*Wallace* v. *Kato*,
549 U.S. 384 (2007) .......... 30

*Wayte* v. *United States*,
470 U.S. 598 (1985) .......... 6

*Whren* v. *United States*,
517 U.S. 806 (1996) .......... 40

*Will* v. *Mich. Dep't of State Police*,
491 U.S. 58 (1989) .......... 10, 23, 32

*Yan* v. *ReWalk Robotics Ltd.*,
973 F.3d 22 (1st Cir. 2020) .......... 14

*Yerardi's Moody St. Rest. & Lounge, Inc.* v. *Bd. of Selectmen of Randolph*,
878 F.2d 16 (1st Cir. 1989) .......... 41

*Yick Wo* v. *Hopkins*,
118 U.S. 356 (1886) .......... 41

**Statutes**

42 U.S.C. § 1983 .......... passim

Mass. Gen. Laws ch. 260, § 2A ........ 30

Mass. Gen. Laws ch. 268A, § 23(b)(2)(ii) ........ 9

Mass. Gen. Laws ch. 90, § 18 (version effective to Apr. 1, 2023) ........ 43, 44, 46

Mass. Gen. Laws ch. 90, § 20 ........ 44

Mass. Gen. Laws ch. 90C, § 2 ........ 8, 9, 34, 35

Mass. Gen. Laws ch. 90C, § 3(A)(1) ........ 8, 35

Mass. Gen. Laws ch. 90C, § 3(A)(2) ........ 35

Mass. Gen. Laws ch. 90C, § 3(A)(3) ........ 35

Mass. Gen. Laws ch. 90C, § 3(A)(4) ........ 17, 19, 35

Mass. Gen. Laws ch. 90C, § 3(A)(6)(a) ........ 11, 35

**Rules**

Fed. R. Civ. P. 12(b)(1) ........ 14

Fed. R. Civ. P. 12(b)(6) ........ passim

L.R. 31.0(a)(1) ........ 1

Trial Court Rule VII(c)(1), (5) ........ 29

**Other Authorities**

Restatement (Second) of Judgments § 27 cmt. h (Am. L. Inst. 1982) ........ 22

## ARGUMENT

### Introduction

Two grounds were decided below: sovereign immunity for the official-capacity claims, and Rule 12(b)(6) plausibility for the claims against Trooper Sierra individually. Everything else the appellees offer (*Rooker-Feldman*, abstention, preclusion, limitations, absolute and qualified immunity, and the merits of Count III) the district court did not reach.[1]

### I. Equal Protection

#### *A. The District Court Tested the Fine, Not the Classification*

Trooper Sierra cited El-Bayeh and released Snow and Blair with warnings, differential treatment "based on an arbitrary classification," their "affiliation with a governmental entity." AC ¶¶ 55, 82, 204–205. The district court never tested that classification, asking instead "whether Sierra's decision to assess a fine against El-Bayeh in the circumstances

[1] This reply answers the appellee briefs; El-Bayeh's opening-brief arguments are preserved and incorporated by reference rather than restated. *See* L.R. 31.0(a)(1). The Commonwealth Defendants' brief is cited as "CW Br.," Trooper Sierra's as "Sierra Br.," and El-Bayeh's opening brief as "Br." Record citations follow Br. 1 n.1.

as El-Bayeh describes them was rationally related" to the Commonwealth's interest in traffic safety. Doc. No. 53 at 11. Sierra parrots that framing, defending the "decision to issue him a citation with a monetary assessment," Sierra Br. 18, not the warn-or-cite decision drawn on governmental affiliation. He also recasts the claim, saying El-Bayeh "claims he was discriminated against because he is not a government employee." Sierra Br. 18. The complaint asserts no entitlement to public employment or its benefits; it alleges that a trooper sorted stopped drivers by governmental affiliation.

### *B. Class-of-One Authority Against a Class-Based Claim*

El-Bayeh's equal protection claim runs on two independent theories, class-based and class-of-one. The former names governmental affiliation as the arbitrary classification. AC ¶¶ 55, 82, 205. Against that, the appellees bring class-of-one authority. *Olech* recognized the claim of a plaintiff who "did not allege membership in a class or group." *Village of Willowbrook* v. *Olech*, 528 U.S. 562, 564 (2000) (per curiam). *Engquist* held that the theory does not reach public employment. Neither decision sets the standard for a claim that pleads the classification *Olech*'s plaintiff never alleged.

Even if the class-of-one cases were responsive to that theory, read whole they cut the other way. *Engquist*, on which the Commonwealth relies, CW Br. 30, itself confirms that a class-based allegation states a claim: "Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns." *Engquist* v. *Oregon Dep't of Agric.*, 553 U.S. 591, 604 (2008); *accord id.* at 605 (the Clause is "implicated when the government makes class-based decisions," including non-suspect classifications reviewed for rationality). The passage the Commonwealth quotes also hypothesizes a highway officer facing speeders with "no basis upon which to distinguish them," where "not all speeders can be stopped and ticketed," and rejects the complaint "that one has been singled out for no reason." *Id.* at 603–04. Each condition fails here. Trooper Sierra stopped all three drivers, the speeds distinguished them, and the reason for the sorting is pleaded.

As to *Oyler*, the sentence following the one the Commonwealth quotes, CW Br. 30, explains what the claim lacked: even though "the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable

standard such as race, religion, or other arbitrary classification." *Oyler* v. *Boles*, 368 U.S. 448, 456 (1962). The complaint here supplies it. AC ¶¶ 55–56, 82–83, 205.

Sierra twice cites *Olech*'s page 564 for an ill-will requirement, calling the failure to plead that he "was motivated by ill-will" "fatal." Sierra Br. 18, 20. Page 564 does speak of motive — as the Seventh Circuit's holding, that a plaintiff may allege a violation by asserting action motivated solely by a "spiteful effort to 'get' him." On the same page the Supreme Court stated its own two-element standard, which says nothing of motive, then affirmed "but d[id] not reach the alternative theory of 'subjective ill will' relied on by that court." 528 U.S. at 564–65. What Sierra calls fatal is the theory the Supreme Court declined to reach.

### *C. The Arbitrary Classification Pleaded Suffices Alone*

Sierra's class-based authority cuts against him. The sentence before his block quotation states the rule: the Equal Protection Clause "prohibits a state from treating similarly situated persons differently because of their classification in a particular group." *Mulero-Carrillo* v. *Román-Hernández*, 790 F.3d 99, 105–06 (1st Cir. 2015); Sierra Br. 16. And the standard he does quote is disjunctive: selective treatment "based

on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz* v. *Rogato*, 60 F.3d 906, 910 (1st Cir. 1995); *Mulero-Carrillo*, 790 F.3d at 106; *Harron* v. *Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011) (a complaint must "put forth some facts showing the existence of malice or some other impermissible consideration"); *Tapalian* v. *Tusino*, 377 F.3d 1, 5–6 (1st Cir. 2004) (a claim resting on "the latter prong, *viz.*, an allegation of malice or bad faith" must normally establish a "gross abuse of power" (internal quotation marks omitted)). El-Bayeh proceeds on the arbitrary classification branch, which requires no malice. *See Fincher* v. *Town of Brookline*, 26 F.4th 479, 486 (1st Cir. 2022) (stating the elements of a racial-discrimination claim with no malice branch); *McCoy* v. *Town of Pittsfield*, 59 F.4th 497, 508 n.9 (1st Cir. 2023) (malice not alleged; claim analyzed under the constitutional-rights consideration).

Sierra's assertion that El-Bayeh pleads no "membership in a protected class," Sierra Br. 20, truncates the element. The doctrine reaches "any arbitrary classification of persons for unfavorable governmental treatment." *Hayden* v. *Grayson*, 134 F.3d 449, 453 n.3 (1st

Cir. 1998); *accord Oyler*, 368 U.S. at 456; *Wayte* v. *United States*, 470 U.S. 598, 608 (1985). Suspectness determines the tier of scrutiny, not the claim's existence. *Mulero-Carrillo*, 790 F.3d at 106; Doc. No. 53 at 10–11.

### *D. The Comparators Are Pleaded; Sierra Wants Them Proved*

Sierra's comparator argument stands on the district court's ruling without answering the opening brief. He quotes the pleading standard, under which a plaintiff must "allege facts plausibly demonstrating" selective treatment, Sierra Br. 16 (quoting *Mulero-Carrillo*, 790 F.3d at 106), and demands "sufficient proof on the relevant aspects of the comparison," Sierra Br. 17. That demand is trial-stage language. *Cordi-Allen*, his source for it, calls similarity a "fact-bound inquiry," "normally grist for the jury's mill." *Cordi-Allen* v. *Conlon*, 494 F.3d 245, 251 (1st Cir. 2007). *Tapalian*, another of his authorities, reviewed a judgment entered on a jury verdict. *Tapalian*, 377 F.3d at 5–6. A complaint may not be tested "in a crucible hotter than the plausibility standard demands," and the prima facie case "is an evidentiary standard, not a pleading standard." *Rodríguez-Reyes* v. *Molina-Rodríguez*, 711 F.3d 49, 53, 54 (1st Cir. 2013).

The complaint pleads what *Mulero-Carrillo* requires. It identifies Snow and Blair, stopped by the same trooper for speeding over a 55-mph limit on the same type of roadway and facing the same two dispositions, AC ¶¶ 34, 41, 50–51, 63, 71, 77, and pleads the impermissible consideration, ¶¶ 55, 82, 205. Sierra proposes only one differentiator, driving records. Sierra Br. 13, 21. The opening brief answered that theory on several grounds, Br. 28–36, and he engages none of them.

Sierra cites *Lewis* without answer to the opening brief's argument that it does not govern. *United States* v. *Lewis*, 517 F.3d 20, 26–28 (1st Cir. 2008); *see* Br. 28–31. *Smith* resolved a criminal selective-prosecution motion after a four-and-a-half-day evidentiary hearing. *See United States* v. *Smith*, 231 F.3d 800, 806 (11th Cir. 2000). The driving-record distinction he invokes to apply *Smith* assumes a fact nowhere pleaded: that Trooper Sierra knew the record when he acted. The complaint alleges no roadside check; the "record check" that "reveals a driving history" comes from the district court's order, not the pleadings, Doc. No. 53 at 12, quoted at Sierra Br. 17 n.2. *See* Br. 32–33. Even on his own premises, *Smith* would not help him: it permits prioritizing the offender who commits an offense "three, six or seven times" over one who commits

it "once or twice." Sierra Br. 17 (quoting 231 F.3d at 812). One prior citation is the low-priority case, with no comparator records to rank El-Bayeh against. And *Smith*'s definitional prong undercuts him: a comparator is one "against whom the evidence was as strong or stronger." 231 F.3d at 810. At 95 and 86 miles per hour against El-Bayeh's alleged 72, the evidence ran strongest against the drivers he warned. AC ¶¶ 28, 41, 71.

### *E. The Classification Serves No Legitimate Interest*

Neither brief names an end served by the classification, nor answers the opening brief's showing that sorting stopped drivers by governmental affiliation serves none. Br. 17–20. The interest Sierra does name, traffic safety, Sierra Br. 17 n.2, 18, is offered for citing El-Bayeh. For warning Snow and Blair, at 95 and 86 miles per hour, he offers nothing. AC ¶¶ 41, 71. Nor could he. The Legislature made a warning and a citation the two available dispositions for the same infraction, Mass. Gen. Laws ch. 90C, §§ 2, 3(A)(1), and in doing so treated either as sufficient for the traffic-safety end of enforcement. An interest served equally by either outcome cannot be the reason one was chosen over the other.

Sierra turns to *Newton Police Ass'n* for an officer's discretion. He omits that the case reads that discretion together with the no-fix law, § 2. *Newton Police Ass'n* v. *Police Chief of Newton*, 63 Mass. App. Ct. 697, 700, 828 N.E.2d 952, 955 (2005). That discretion is not discretion to issue warnings "in favor of the well-connected." *Burlington Police Dep't* v. *Hagopian*, 100 Mass. App. Ct. 720, 729, 184 N.E.3d 789, 799 (2022). And the ethics law bars a state employee from knowingly using official position to secure for others "unwarranted privileges or exemptions which are of substantial value and which are not properly available to similarly situated individuals." Mass. Gen. Laws ch. 268A, § 23(b)(2)(ii). A classification the Commonwealth's own statutes forbid is not one any conceivable state of facts could make legitimate.

## II. Sovereign Immunity

### *A. Both Briefs Answer a Claim Nobody Brought*

Sierra defends the dismissal of "so much of Plaintiff's claim that sought damages against Tpr. Sierra for actions taken in his 'official capacity,'" Sierra Br. 12,[2] and the Commonwealth invokes the same damages rule. CW Br. 12–13. The complaint's only damages prayer runs

[2] Sierra develops no argument that immunity bars equitable relief.

against "Defendant Sierra in his individual capacity," AC Prayer ¶ F, and "[t]he Eleventh Amendment does not bar such suits." *Hafer* v. *Melo*, 502 U.S. 21, 31 (1991). A personal-capacity award "can be executed only against the official's personal assets." *Kentucky* v. *Graham*, 473 U.S. 159, 166 (1985).

Nor is there a statutory barrier to the equitable claims. A state official sued in his official capacity for injunctive relief is a "person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will* v. *Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (quoting *Graham*, 473 U.S. at 167 n.14).

What sovereign immunity would bar, El-Bayeh does not seek; what he seeks, sovereign immunity does not bar.

### *B. Papasan Is About What the State Owes, Not What It Is Owed*

The Commonwealth reaches for *Papasan* to recast the assessment El-Bayeh owes as *Papasan*'s "not-yet-extinguished liability." CW Br. 15. In *Papasan* the State trustee itself would have been "required, because of the past loss of the trust corpus, to use its own resources to take the place of the corpus." *Papasan* v. *Allain*, 478 U.S. 265, 281 (1986). The

Commonwealth inverts that liability into what a citizen owes the State. *Cotto* is the same shape. The grievance there was the Commonwealth's "continued withholding of forfeited assets," *Cotto* v. *Campbell*, 126 F.4th 761, 769 (1st Cir. 2025), and the claims rested on "the past actions of the [Commonwealth]" rather than on any current or future action, *id.* at 770 (quoting *Papasan*, 478 U.S. at 282 (holding a present-disparity claim not barred)). Nothing of El-Bayeh's is being withheld; a demand is being made of him. The panel also qualified that analysis: "Plaintiffs here did not file a pre-enforcement suit, so our analysis focuses on whether any violation is ongoing, rather than anticipated." *Id.* at 767 n.3. El-Bayeh has brought that pre-enforcement challenge. *See* Br. 54–57; AC ¶¶ 207, 213, 219.

### *C. Pay or Lose the License; No Path Loses Nothing*

The Commonwealth's "too attenuated" argument counts four conditionals. CW Br. 15. There is one. El-Bayeh pays or he does not, and both branches injure him. Paying the challenged assessment is not an escape from the deprivation but the deprivation itself. Or, if El-Bayeh does nothing, his license is "suspended by operation of law and without further notice or hearing." Mass. Gen. Laws ch. 90C, § 3(A)(6)(a). There

is no third branch to hang attenuation on — one where El-Bayeh both does nothing and loses nothing.

*Reddy*, the Commonwealth's authority for contingency, turned on an unsatisfied precondition to enforcement; the government there had "affirmatively disavowed prosecution" until it was met. *Reddy* v. *Foster*, 845 F.3d 493, 502 (1st Cir. 2017); CW Br. 15. Nothing here has been disavowed.

### *D. Nothing to Undo, Nothing to Recover*

The Commonwealth says the complaint is an "effort to challenge the 'historical fact' of the speeding violation" and on that account "impermissibly retrospective." CW Br. 16. Nothing turns on whether El-Bayeh sped. The equitable claims challenge enforcement still to come, not the conduct already past, and the prayer asks that "future enforcement or prosecutorial action" be barred, AC Prayer ¶¶ D–E, not that the speeding accusation be adjudicated. Nor does the age of the citation decide anything. "[M]ost unconstitutional agency determinations will have occurred in the past by the time a lawsuit is brought; sovereign immunity does not necessarily prevent suits against such state actions when the alleged violation they spur is ongoing and no raid on the state

treasury will result." *Town of Barnstable* v. *O'Connor*, 786 F.3d 130, 141 (1st Cir. 2015).

The treasury argument also inverts *Edelman*, which bars retroactive monetary awards while recognizing that an "ancillary effect on the state treasury is a permissible and often an inevitable consequence" of prospective relief, and that the injunction in *Ex parte Young* itself "was not totally without effect on the State's revenues." *Edelman* v. *Jordan*, 415 U.S. 651, 667–68 (1974). The Commonwealth protests that the relief "would necessarily implicate the Commonwealth's treasury by eliminating that potential payment obligation." CW Br. 17–18. But every injunction against collecting a fine, a tax, or a penalty eliminates a potential payment obligation, and on the Commonwealth's reasoning none could issue.

*Seminole Tribe*'s "indignity" passage, CW Br. 16–17, concerns suits against the State itself, *Seminole Tribe of Fla.* v. *Florida*, 517 U.S. 44, 58 (1996), and "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst State Sch. & Hosp.* v. *Halderman*, 465 U.S. 89, 102 (1984). This is such a suit.

## III. The Unreached Grounds Do Not Support Affirmance

The district court decided narrowly and said so. It reserved res judicata, mentioned but declined to rely on qualified immunity, deciding on Rules 12(b)(1) and 12(b)(6). Doc. No. 53 at 6 n.8, 10 n.10. As to any issue not passed on below, it is "often appropriate to leave such a matter for the district court to address in the first instance on remand, especially when the grounds are not fully developed or fairly contested on appeal." *Yan* v. *ReWalk Robotics Ltd.*, 973 F.3d 22, 39 (1st Cir. 2020); *see also* *Lachance* v. *Town of Charlton*, 990 F.3d 14, 31 (1st Cir. 2021) (declining, on that standard, the defendants' "numerous alternative bases for affirmance").

### *A. No Judgment to Disturb, No Proceeding to Protect*

#### *i. Rooker-Feldman*

*Rooker-Feldman* reaches only "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," *Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), and "is not simply preclusion by another name." *Lance* v. *Dennis*, 546 U.S. 459, 466 (2006)

(per curiam); *see also T.M.* v. *Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1754 (2026) (leaving the doctrine "as it found it: narrowly confined to" the *Exxon* formulation). In this circuit, "if the plaintiff alleges a constitutional violation by an adverse party independent of the injury caused by the state court judgment, the doctrine does not bar jurisdiction." *Davison* v. *Gov't of P.R.-P.R. Firefighters Corps*, 471 F.3d 220, 222 (1st Cir. 2006).

The injury claimed against Sierra flows from his own decision to cite, not from any court or judgment, and no adjudicative process preceded it. AC ¶¶ 21, 32. The claims against the officials seek to prevent future injury from collection of the citation assessment. *See supra* Section II. Neither injury flows from the judgment the Commonwealth identifies, *El-Bayeh* v. *Mass. Dep't of Transp.*, 104 Mass. App. Ct. 1115, 238 N.E.3d 830, 2024 WL 3517636 (2024) (unpublished). CW Br. 20–21. Nor does any claim invite review of what it decided. The judgment affirms a dismissal; it orders nothing against El-Bayeh and awards nothing to anyone. Nothing sought here "would amount to a reversal" of that judgment. *Miller* v. *Nichols*, 586 F.3d 53, 59 (1st Cir. 2009); *see also Puerto Ricans for P.R. Party* v. *Dalmau*, 544 F.3d 58, 68 (1st Cir. 2008) (§ 1983 claims

that defendants "favored" one party "and disfavored" the plaintiff did "not seek to reverse" the state judgment).

The Commonwealth's *Rooker-Feldman* argument never says otherwise. Its theory is that the 2024 decision "held" the § 1983 claims "were barred by sovereign immunity" and the speed limit "was lawfully promulgated," and that "[r]elitigating this same issue in federal court" is forbidden. CW Br. 21. The first holding does not exist, *see infra* Section III.B.i, and the doctrine turns on neither. The "inextricably intertwined" standard is no second test. The phrase, as *Exxon* recounts, described "constitutional claims attacking a state-court judgment," *Exxon*, 544 U.S. at 286 n.1 (describing *D.C. Court of Appeals* v. *Feldman*, 460 U.S. 462, 482 n.16 (1983)), and the sentence the Commonwealth quotes from *Hill* asks the same question — whether relief requires holding the state judgment wrong. *Hill* v. *Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999). "Relitigating" is the operative word because injury cannot be: the argument traces no pleaded injury to that judgment. The doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," and "[p]reclusion, of course, is not a

jurisdictional matter." *Exxon*, 544 U.S. at 293. Even a claim a plaintiff "could have raised" in state court has no bearing. *Skinner* v. *Switzer*, 562 U.S. 521, 533 n.11 (2011).

The Commonwealth's summary reaches instead for the civil motor vehicle infraction (CMVI) appeal. CW Br. 11. That proceeding adjudicates one question, responsibility for the infraction, and permits "[n]o other disposition." Mass. Gen. Laws ch. 90C, § 3(A)(4). That question bears on none of El-Bayeh's claims. Nor does it supply a state-court loser. *Exxon*, 544 U.S. at 284; *Lance*, 546 U.S. at 464. The Massachusetts Appeals Court reversed the Appellate Division and ordered the responsible finding vacated. *Dep't of State Police* v. *El-Bayeh*, 106 Mass. App. Ct. 1128, 277 N.E.3d 1025, 2026 WL 849996, at *4 (2026) (unpublished). Any adverse judgment yet to come on remand would postdate the federal filing. *Exxon*, 544 U.S. at 292–93 (a state-court judgment reached "while the case remains sub judice in a federal court" goes to preclusion, not jurisdiction).

*ii. Younger Abstention*

The Commonwealth asks this Court to "abstain from interjecting into the state court proceedings and affirm the District Court's order."

CW Br. 20. *Younger* has no purchase here twice over. The only state proceeding is one *Younger* does not reach, and the complaint seeks no relief against that proceeding.

The Commonwealth, CW Br. 19–20, runs the three factors in *Rossi* v. *Gemma*, 489 F.3d 26, 34–35 (1st Cir. 2007), without asking whether *Younger* reaches a CMVI appeal at all. The factors "do not operate as a free-standing test." *Sirva Relocation, LLC* v. *Richie*, 794 F.3d 185, 192 (1st Cir. 2015). *Younger* reaches only "exceptional" state proceedings, and the only conceivable class here, civil enforcement "characteristically initiated to sanction the federal plaintiff," *Sprint Commc'ns, Inc.* v. *Jacobs*, 571 U.S. 69, 79 (2013), by "the State in its sovereign capacity," *id.* at 80 (internal quotation marks omitted), describes the inverse of the CMVI appeal.

The distinction is between a proceeding that was "an option available to the federal plaintiff on her own initiative to redress a wrong inflicted by the state" and one the plaintiff "did not initiate, but in which [his] presence was mandatory." *Kercadó-Meléndez* v. *Aponte-Roque*, 829 F.2d 255, 260 (1st Cir. 1987). The Commonwealth initiated nothing in state court. The complaint pleads that El-Bayeh "claimed his exclusive

right to a remedial action" and "caused the state court proceedings to initiate by paying the required $25 court filing fee." AC ¶¶ 170–171; Mass. Gen. Laws ch. 90C, § 3(A)(4). Such "post-hoc remedial proceedings initiated by the plaintiffs are not of the type to which deference under *Younger* applies," *Guillemard-Ginorio* v. *Contreras-Gomez*, 585 F.3d 508, 522 (1st Cir. 2009). The civil-enforcement extension runs instead to proceedings "brought by the state as enforcement actions against an individual." *Rio Grande Cmty. Health Ctr., Inc.* v. *Rullan*, 397 F.3d 56, 69 (1st Cir. 2005). This Court affirmed a refusal to abstain where the state case was "not an enforcement proceeding brought by the state or an agency against [the plaintiff]." *Id.* at 70.

The Supreme Court, too, has twice rejected abstention in this configuration. In *Sprint*, the only pending state matter was the plaintiff's own petition for review of an agency order. 571 U.S. at 74. In *NOPSI*, the utility had likewise petitioned for state review, *New Orleans Pub. Serv., Inc.* v. *Council of City of New Orleans* (*NOPSI*), 491 U.S. 350, 357 (1989), and "it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action." *Id.* at 368. This Court has applied that rule: "the state court

action, like that in *NOPSI*, is judicial review of executive action, rather than an enforcement proceeding." *Rio Grande*, 397 F.3d at 70. El-Bayeh's CMVI appeal is exactly that: his own petition for review of a trooper's otherwise final and payable roadside assessment. AC ¶¶ 32, 170–171.

The Commonwealth says El-Bayeh "appears to seek an injunction halting the ongoing state court proceedings." CW Br. 18. The complaint seeks nothing against that proceeding. It seeks an injunction "prohibiting Defendants from taking any future enforcement or prosecutorial action" arising from the 2021 stop, AC Prayer ¶¶ D–E, and damages from Sierra alone, AC Prayer ¶ F. Nothing sought would restrain that proceeding.

### *B. Preclusion Fails on Both Branches*

Res judicata is an affirmative defense; "the party asserting it has the burden of establishing the facts necessary to support it." *Akinci-Unal* v. *Unal*, 64 Mass. App. Ct. 212, 220, 832 N.E.2d 1, 7 (2005). On a Rule 12(b)(6) motion it succeeds only where facts "definitively ascertainable" from the complaint and judicially noticeable materials "conclusively establish the affirmative defense." *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003).

*i. Issue Preclusion*

Issue preclusion requires that the issue in the prior adjudication was "identical to the issue in the current adjudication," "essential to the earlier judgment," and "actually litigated in the prior action." *Degiacomo* v. *City of Quincy*, 476 Mass. 38, 42, 63 N.E.3d 365, 369 (2016) (internal quotation marks omitted); *Heacock* v. *Heacock*, 402 Mass. 21, 25, 520 N.E.2d 151, 153 (1988). Massachusetts courts "look to the record to see what was actually litigated." *Kobrin* v. *Bd. of Registration in Med.*, 444 Mass. 837, 844, 832 N.E.2d 628, 634 (2005).

The Commonwealth's first candidate issue is whether "the speed limit on Route 3 was enforceable." CW Br. 26. The Appeals Court held there was "no improper exercise of the department's regulatory discretion." *Mass. Dep't of Transp.*, 2024 WL 3517636, at *2. No claim in the state action put fair notice under the Due Process Clause in issue. Its issues ran elsewhere: probable cause under the Fourth Amendment and article 14, and the validity of promulgation, on El-Bayeh's petition for a declaration. Doc. No. 24-9 at 49–57. Count III, by contrast, contests the absence of "fair notice on or before August 4, 2021" that the limit "was enforceable and not unenforceable." AC ¶ 217. A limit may be validly

enacted and MassDOT's published interpretations may still have left its enforceability neither definite nor knowable. *See infra* Section III.E.

Nor was enforceability, or anything else about the limit, decided in the sense issue preclusion requires. The court reached the limit's validity only past a threshold it reserved: "we assume, without deciding, that the plaintiff has standing to challenge the validity of the speed limit." *Mass. Dep't of Transp.*, 2024 WL 3517636, at *1. Standing in Massachusetts is treated as "an issue of subject matter jurisdiction." *Ginther* v. *Comm'r of Ins.*, 427 Mass. 319, 322, 693 N.E.2d 153, 156 (1998). If El-Bayeh lacked standing, the same dismissal results, with no ruling on the limit. "If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded." *Jarosz* v. *Palmer*, 436 Mass. 526, 533, 766 N.E.2d 482, 489 (2002) (quoting Restatement (Second) of Judgments § 27 cmt. h (Am. L. Inst. 1982)). The Commonwealth asserts essentiality in one sentence and argues it nowhere. CW Br. 26.

The second candidate issue is whether the Commonwealth Defendants "are protected by sovereign immunity." CW Br. 26. Sovereign immunity appears nowhere in the 2024 decision, which dismissed the

§ 1983 claims against the agency on statutory construction alone: "[a]n agency of the Commonwealth is not a person subject to suit for money damages under § 1983." *Mass. Dep't of Transp.*, 2024 WL 3517636, at *2 (internal quotation marks omitted). A Massachusetts court had no power to adjudicate the Commonwealth's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 63–64 (reaching the statutory personhood question on review of a state-court § 1983 suit because "the Eleventh Amendment does not apply in state courts"). A state court's decision of the question before it does not preclude one it did not address. *Mihos* v. *Swift*, 358 F.3d 91, 101 (1st Cir. 2004).

*ii. Claim Preclusion*

Claim preclusion requires identity of the cause of action, identity or privity of the parties, and a prior final judgment on the merits. *Kobrin*, 444 Mass. at 843. The doctrine is "based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit." *Heacock*, 402 Mass. at 24 (internal quotation marks omitted). Causes of action are the same where they are "based on the same set of operative facts and seek redress for the same wrongs."

*TLT Constr. Corp.* v. *A. Anthony Tappe & Assocs., Inc.*, 48 Mass. App. Ct. 1, 8, 716 N.E.2d 1044, 1051 (1999).

Counts I and II are completed by Trooper Sierra's stops of Snow on March 30, 2022, and of Blair on October 2, 2022. AC ¶¶ 34, 63. The state action was filed on September 21, 2021, before either stop, and its operative complaint alleges neither. AC ¶ 141; Doc. No. 24-9; *see* Doc. No. 53 at 3. While a second suit that pleads only "a new ground to support the same cause" is barred, a suit whose theory arises "out of events subsequent to or separate from the wrong alleged in the prior suit" is not. *Fassas* v. *First Bank & Tr. Co. of Chelmsford*, 353 Mass. 628, 630, 233 N.E.2d 924, 925 (1968); *Sandler* v. *Silk*, 292 Mass. 493, 499–500, 198 N.E. 749, 752 (1935) (two suits on the same mortgage were for distinct wrongs and not barred "even though they arose out of related transactions and involved the same subject matter").

Sierra's factual-grouping authority weighs whether "the witnesses or proof needed in the second action [would] overlap substantially with those used in the first action." *Mancuso* v. *Kinchla*, 60 Mass. App. Ct. 558, 571–72, 806 N.E.2d 427, 439 (2004) (alteration in original) (quoting *Porn* v. *Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 36 (1st Cir. 1996)); Sierra

Br. 24. They would not: the 2021 citation issuance proves nothing about the Snow and Blair warnings. *See Landrigan* v. *City of Warwick*, 628 F.2d 736, 741 (1st Cir. 1980) (later claim against the same officer not precluded where "separate and distinct wrongs" rested "on different factual bases"); *Alston* v. *Town of Brookline*, 997 F.3d 23, 39–40 (1st Cir. 2021) (claims not identical where the later facts "go significantly beyond the nucleus of operative facts alleged in the state-court case, both in time and scope"). Count III's later facts include the 2024 decision's construal of the 2017 Speed Zoning Procedures. AC ¶¶ 147–148.

The claims differ because the facts do. The state complaint pleaded false imprisonment, unlawful issuance of a citation, and violation of the rights to travel and of privacy. AC ¶ 144; Doc. No. 24-9 at 54–57. The unlawful-issuance counts pleaded deprivation of the "right to be free from the burden of traffic citations alleging offenses not supported by probable cause" under the Fourth Amendment and article 14. Doc. No. 24-9 ¶¶ 197, 199. The wrongs alleged there were a speed limit unlawfully promulgated and a citation issued without probable cause; none required a comparator or turned on notice. The wrongs alleged here are a citation issued to El-Bayeh and not to drivers like him, under the Fourteenth

Amendment's Equal Protection Clause (Counts I and II), and a limit enforced against him without notice of the interpretation enforced, under its Due Process Clause (Count III). AC ¶¶ 201–219. The first cannot be pleaded without the comparators; the second turns on what MassDOT published, what it conceded in court, and what the Appeals Court held in 2024. No count turns on probable cause or the validity of the limit, nor is any a new ground for the same cause.

Neither showing overcomes any of this. The Commonwealth's is that "the 2022 Litigation and this litigation both asserted § 1983 claims and sought injunctive relief." CW Br. 23. Sierra's is that El-Bayeh "previously brought the same claims." Sierra Br. 22. Section 1983 confers no rights of its own, *Baker* v. *McCollan*, 443 U.S. 137, 144 n.3 (1979), so a shared vehicle says nothing about the wrongs either action alleges. The factual showings fail the Commonwealth's own test, that the claims "arise out of the same nucleus of operative fact." CW Br. 22 (quoting *Goldstein* v. *Galvin*, 719 F.3d 16, 23 (1st Cir. 2013)). The Commonwealth says the facts of both suits "revolved around the issuance of the 2021 Citation," CW Br. 23; Sierra says "the only transaction between Mr. El-Bayeh and Tpr. Sierra was the August 4, 2021 speeding citation,"

Sierra Br. 24. Snow and Blair appear nowhere in either preclusion argument, and Sierra's merits pages refute him: they recount the Snow and Blair stops and litigate whether those comparators were similarly situated. Sierra Br. 18–19, 21. He cannot attack the comparators on the merits and then erase them for preclusion.

Both appellees fall back on the rule that claim preclusion "prevents relitigation of all matters that were or could have been adjudicated in the action." CW Br. 25 (emphasis omitted) (quoting *Kobrin*, 444 Mass. at 843) (internal quotation marks omitted); Sierra Br. 13 ("could or should have been brought forward"). That rule measures the reach of one cause of action; it does not manufacture identity between two. *See Heacock*, 402 Mass. at 24 (the doctrine "applies only where both actions were based on the same claim"). The transactional test is not "whether a second claim could have been brought in a prior suit, but whether the underlying facts . . . were the same or substantially similar." *Manego* v. *Orleans Bd. of Trade*, 773 F.2d 1, 6 (1st Cir. 1985). Nor does either brief explain how later-arising claims could have been brought in that action. The complaint pleads that El-Bayeh "obtained complete knowledge" of the Snow stop on December 20, 2022, after both complaints in that action

were filed, and of the Blair stop on January 13, 2025, after the 2024 decision. AC ¶¶ 100, 102, 141–142, 146. Before then, he "did not have the incentive and opportunity to bring" the claims. AC ¶ 104. That is the standard Sierra's own authority sets, confining the bar to claims the "litigant had the opportunity and incentive to fully litigate . . . in an earlier action." Sierra Br. 23 (quoting *In re Sonus Networks, Inc., S'holder Derivative Litig.*, 499 F.3d 47, 56 (1st Cir. 2007)). Neither brief identifies a contrary allegation. *Kobrin* itself refused preclusion where the later disciplinary action was based solely on convictions that "had not yet occurred" when the first decision issued, so the board "could not previously have litigated this issue." 444 Mass. at 844.

The party element fails as to prior-suit nonparty District Attorney Ryan. Sierra offers a conclusion, Sierra Br. 23–24, and the Commonwealth a "collective enforcement obligation," CW Br. 24, which is privity by interest-alignment alone. The Commonwealth's own authority adopts a minimum of aligned interests, plus a party that "understood herself to be acting in a representative capacity" or a court that "took care to protect the interests of the nonparty." *Degiacomo*, 476 Mass. at 48 (quoting *Taylor* v. *Sturgell*, 553 U.S. 880, 900 (2008)). The

paragraph the Commonwealth quotes for a collective obligation runs on a disjunctive: "Noble, Sierra, Ogilvie, and/or Ryan." AC ¶ 207; Trial Court Rule VII(c)(1), (5) (contempt initiated and prosecuted in the disjunctive). Setting that aside, alignment alone remains the "virtual representation" *Taylor* disapproved. *Taylor*, 553 U.S. at 901, 904.

### *C. No Claim Accrued on August 4, 2021*

As an affirmative defense, the statute of limitations can carry affirmance of a Rule 12(b)(6) dismissal only where "the facts establishing the defense [are] clear on the face of the plaintiff's pleadings," *Trans-Spec Truck Serv., Inc.* v. *Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (internal quotation marks omitted), leaving "no doubt that an asserted claim is time-barred." *LaChapelle* v. *Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998). The district court never reached limitations. In that posture this Court has left the defense to the district court in the first instance. *See Delgado-Caraballo* v. *Hosp. Pavia Hato Rey, Inc.*, 889 F.3d 30, 38 (1st Cir. 2018) (declining a limitations ground urged "as an alternative basis for affirmance"); *United States ex rel. Duxbury* v. *Ortho Biotech Prods., LP*, 579 F.3d 13, 32 n.7 (1st Cir. 2009) (leaving a

limitations ground "to the district court to address it in the first instance").

A § 1983 claim borrows the forum state's personal-injury limitations period, three years in Massachusetts. Mass. Gen. Laws ch. 260, § 2A; *Nieves* v. *McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). Accrual, however, is "a question of federal law," *Wallace* v. *Kato*, 549 U.S. 384, 388 (2007), and the standard rule is that a claim accrues when the plaintiff has "a complete and present cause of action," that is, when he can "file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund* v. *Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). In this Court's formulation for § 1983 claims, that means "when all of the acts comprising the specific constitutional violation have been completed." *Ouellette* v. *Beaupre*, 977 F.3d 127, 136 (1st Cir. 2020). No claim here was complete and present on August 4, 2021.

A selective-enforcement claim cannot be stated unless and until the plaintiff, "compared with others similarly situated, [has been] selectively treated." *Rubinovitz*, 60 F.3d at 910. On August 4, 2021, there were no others: the Snow stop came on March 30, 2022, the Blair stop on October 2, 2022. AC ¶¶ 34, 63. A claim accrues when the last of its elements

occurs, whichever it is. *See Green* v. *Brennan*, 578 U.S. 547, 554–55 (2016) (constructive-discharge claim "accrues only after an employee resigns," not when the employer discriminates, because "[o]nly after both elements are satisfied can he file suit to obtain relief"). The comparator is to a selective-enforcement claim what the resignation is to a constructive-discharge claim: the element that completes it. Sierra protests that the 2022 conduct "was not directed at Mr. El-Bayeh," and that the claim rests on "how Tpr. Sierra enforced the traffic laws against other citizens." Sierra Br. 26. That is not an objection to a selective-enforcement claim; it is the definition of one.

A limitations period that "commences at a time when the [plaintiff] could not yet file suit" is "inconsistent with basic limitations principles." *Bay Area Laundry*, 522 U.S. at 200. Sierra's notice date, Sierra Br. 25–26, therefore did not start the limitations clock. Because the earliest conceivable accrual date for Counts I and II is March 30, 2022, the action was timely commenced on February 27, 2025. Doc. No. 1.

The appellees raise the discovery rule as a fallback, the Commonwealth arguing that the claims' factual basis was not "inherently unknowable" and that El-Bayeh "could have ascertained" the

relevant facts sooner. CW Br. 27–28; Sierra Br. 26. Neither brief points to any allegation that explains how El-Bayeh could have discovered the facts of stops that had not yet occurred, much less one leaving no doubt that a complete and present cause of action existed on August 4, 2021. *LaChapelle*, 142 F.3d at 509. The only affirmative showing either brief attempts is the Commonwealth's 421-warnings argument, and it proves nothing: the pleadings offer the dataset as supporting pattern evidence, AC ¶¶ 93–98, not as proof of any similarly situated motorist treated differently for an impermissible reason. Nothing pleaded suggests there was any relevant comparator to find before March 30, 2022. AC ¶ 99. Nor has El-Bayeh sought the equitable tolling Sierra argues against, Sierra Br. 26–27; a period that had not begun cannot be tolled.

The defense also reaches, at most, one branch of relief, and so cannot carry affirmance of the judgment. The only damages sought are against Trooper Sierra in his individual capacity. AC Prayer ¶ F. The remaining claims run against the defendants in their official capacities, who are not answerable in damages under § 1983, *Will*, 491 U.S. at 71 & n.10, and ask only that "future enforcement or prosecutorial action" be barred. AC ¶¶ 16–20; AC Prayer ¶¶ D–E; *see supra* Section II. In

"equitable suits arising under federal law, we normally do not borrow a limitations period from state law," and a borrowed period does not reach a "freestanding federal equitable claim unassociated with any concurrent federal legal remedy." *Algonquin Gas Transmission, LLC* v. *Weymouth, Mass.*, 919 F.3d 54, 60, 61 (1st Cir. 2019); *see In re Valente*, 360 F.3d 256, 266 n.7 (1st Cir. 2004) (no concurrent remedy where the party "never had a remedy at law").

On Count III, even if the defense could reach it, the Commonwealth's timeliness answer is a single conclusory sentence that the claim could have been asserted "at the time the 2021 Citation was issued." CW Br. 28. Count III pleads that El-Bayeh "did not know and could not have known" of the want of fair notice "[p]rior to the issuance of the 2024 memorandum and order," AC ¶¶ 150–152, and a claim that turns on a 2024 decision, AC ¶ 146, could not have been pleaded in 2021.

### *D. Personal Immunities Reach Damages Only, and Sierra Proves Neither*

The district court reached neither personal immunity, and neither, if it applied, could carry the judgment. Each shields against damages alone: absolute immunity bars "a civil suit for damages," *Imbler* v.

*Pachtman*, 424 U.S. 409, 431 (1976), and qualified immunity protects "from liability for civil damages." *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982). And both are personal to Sierra, so neither is relevant to the equitable claims. *See Hafer*, 502 U.S. at 25.

*i. Prosecutorial Immunity*

Officials seeking absolute immunity "must bear the burden of showing that public policy requires an exemption of that scope," *Malley* v. *Briggs*, 475 U.S. 335, 340 (1986) (quoting *Butz* v. *Economou*, 438 U.S. 478, 506 (1978)), and "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns* v. *Reed*, 500 U.S. 478, 486–87 (1991). Sierra claims absolute immunity on a single theory: that issuing the citation was the "discretionary act that initiated the proceeding," Sierra Br. 28, and that initiating proceedings is what prosecutors do. Sierra Br. 27–28.

Sierra initiated no proceeding. The officer's part is to "record the occurrence of automobile law violations upon a citation," sign it, and give a copy to the violator, Mass. Gen. Laws ch. 90C, § 2, and for a civil infraction he "shall indicate on the citation the scheduled assessment."

§ 3(A)(1). Nothing the officer does invokes a tribunal, and the sanction is self-executing. AC ¶¶ 32–33. If the violator pays, the payment "shall be an admission of responsibility and shall operate as a conviction for purposes of any action by the registrar." § 3(A)(3). If the violator does nothing, the Registrar mails a notice, and thirty days later his license is "suspended by operation of law and without further notice or hearing." § 3(A)(6)(a). A civil citation goes to the Registrar, not a court. § 2. A hearing occurs only if the violator contests responsibility "by requesting a noncriminal hearing before a magistrate of the district court" and pays the filing fee, § 3(A)(2), (4). Sierra himself concedes the citation "provided for a remedy through a civil proceeding." Sierra Br. 28. One does not initiate another's remedy. El-Bayeh initiated his. AC ¶¶ 170–171.

That structure is why *Butz* does not shield him. *Butz* protects "those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication," and it does so "[b]ecause the legal remedies already available to the defendant in such a proceeding provide sufficient checks on agency zeal." 438 U.S. at 516. The premise of *Butz* was that administrative adjudication "shares enough of the characteristics of the judicial process" to warrant the immunity. *Id.* at

513. *Imbler* adds the prosecutor's "amenability to professional discipline by an association of his peers." 424 U.S. at 429. None of these checks attended Sierra's act. The penalty disposition he indicated required no proceeding whose safeguards substitute for damages; his function was administrative. The Supreme Court has held qualified immunity sufficient "to effect the balance between the opposing considerations" for sanctioning officials with "no identification with the judicial process of the kind and depth that has occasioned absolute immunity." *Cleavinger* v. *Saxner*, 474 U.S. 193, 206 (1985). Nor can the hearing El-Bayeh later initiated supply what Sierra's act lacked. In *Buckley* v. *Fitzsimmons*, 509 U.S. 259, 275–76 (1993), "the prosecutors later called a grand jury to consider the evidence" their investigation had produced, but that "d[id] not retroactively transform that work from the administrative into the prosecutorial."

The common law "has never granted police officers an absolute and unqualified immunity," *Pierson* v. *Ray*, 386 U.S. 547, 555 (1967), and the Supreme Court has denied it to an act closer to the judicial process than Sierra's. The officer in *Malley*, who applied to a judge for an arrest warrant, argued, as Sierra does, that his "discretionary judgment" was

like that of "a prosecutor who asks a grand jury to indict a suspect." 475 U.S. at 341. The *Malley* Court found no "comparable tradition of absolute immunity for one whose complaint causes a warrant to issue," and found the analogy "untenable" regardless, because the officer's act, "while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment." *Id.* at 342–43. Sierra's act is further removed still; it went to no judge at all.

Sierra's argument is also conditional: "If Tpr. Sierra was acting in the role of a prosecutor, as Plaintiff suggests." Sierra Br. 27. But whether an act is protected "is to be determined by its character, and not by the character of the agent," *Forrester* v. *White*, 484 U.S. 219, 228 (1988) (quoting *Ex parte Virginia*, 100 U.S. 339, 348 (1880)). Nor does his "discretionary" label, Sierra Br. 28, show his entitlement to absolute immunity. Discretion is the threshold for either immunity, *Harlow*, 457 U.S. at 812–13, 816, and the rule Sierra quotes for qualified immunity is itself a rule for "government officials performing discretionary functions." *Id.* at 818.

*ii. Qualified Immunity*

The district court decided nothing independent here. Its one remark on the defense assumes the dismissal under review: Sierra "would likely enjoy qualified immunity without a plausible allegation of a constitutional violation," and the court "limits its discussion in the text to Rule 12(b)(6)." Doc. No. 53 at 10 n.10. This Court faced the same request in *Maldonado-González* v. *P.R. Aqueduct & Sewer Auth.*, 158 F.4th 27, 41 (1st Cir. 2025), where the appellee sought affirmance "on other grounds," qualified immunity, after the district court dismissed under Rule 12(b)(6) and "did not reach" the defense. The Court "decline[d] to resolve" it "in the first instance and remand[ed] to the district court," vacating the dismissal the appellee had defended on that ground. *Id.*; *see also Alexis* v. *McDonald's Rests. of Mass., Inc.*, 67 F.3d 341, 353 n.10 (1st Cir. 1995) ("any such defense is for the district court in the first instance").

If the Court nonetheless takes the question itself, the defense fails. On the pleadings, the inquiry is "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the

defendant's alleged violation." *Guadalupe-Báez* v. *Pesquera*, 819 F.3d 509, 517 (1st Cir. 2016) (internal quotation marks omitted). The burden is Sierra's: "[b]ecause qualified immunity is an affirmative defense to liability, the burden is on the defendants to prove the existence of circumstances sufficient to bring the defense into play." *Alston*, 997 F.3d at 50 (citing *DiMarco-Zappa* v. *Cabanillas*, 238 F.3d 25, 35 (1st Cir. 2001)). His failure to carry it is dispositive.

Sierra's affirmative defense is mainly a bootstrap running on two premises from two different proceedings, and each fails on its own terms. The first is that it "was established through Plaintiff's state action that Tpr. Sierra did not violate his civil rights." Sierra Br. 29. That action established nothing about the conduct this claim challenges. Nothing on the two pages of the Superior Court's memorandum on Sierra's motion, which the 2024 decision incorporated, addresses selective enforcement. The rulings there are that Sierra's "initiation of a traffic stop . . . was not unjustified," and, on qualified immunity, that El-Bayeh had not alleged that "Trooper Sierra's traffic stop violated any clearly established constitutional right." Doc. No. 24-10 at 17–18; *Mass. Dep't of Transp.*, 2024 WL 3517636, at *2. The complaint does not contest the stop; it

contests what Trooper Sierra did with the drivers he had already stopped. Sierra's second premise, drawn instead from the CMVI appeal, is that probable cause was "conclusively determined." Sierra Br. 29–30; *see Dep't of State Police*, 2026 WL 849996, at *2. Even if that were true, nothing turns on that finding: "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment." *Whren* v. *United States*, 517 U.S. 806, 813 (1996). Probable cause is neither an element of nor a defense to the selective-enforcement claim pleaded.

Borrowing those rulings is no answer to the complaint, and what remains of his defense is more of the same: probable cause, from his own account of the stop. He reasons from "the information available to him at the time" and "the specific facts known to him at the time he acted," Sierra Br. 30, unpleaded assertions about the extent of his knowledge. From this, he concludes that El-Bayeh is "unable to make out a violation of his Fourteenth Amendment rights." Sierra Br. 31 (citing Doc. No. 53 at 12–13). That conclusion never engages the claims the complaint pleads, which are made out above and in the opening brief. *See supra* Section I; Br. 11–51.

Decided on the pleadings, Sierra's defense fails on probable cause as the wrong premise. Decided on the unpleaded knowledge Sierra says it turns on, it is not a "ground supported by the record," Sierra Br. 22, but the kind of qualified-immunity question "often decided after some factual development or at summary judgment." *Irish* v. *Maine*, 849 F.3d 521, 523 (1st Cir. 2017).

As to the second prong, Sierra repeatedly recites the clearly established standard, Sierra Br. 28–31, and asserts its conclusion, without once identifying the right he contends was not clearly established, or why. He did no more below. Doc. No. 17 at 13–15; Doc. No. 29 at 10. The equal protection right at issue, which he never names, is "the right not to be treated differently from others similarly situated for improper reasons." *Yerardi's Moody St. Rest. & Lounge, Inc.* v. *Bd. of Selectmen of Randolph*, 878 F.2d 16, 20 (1st Cir. 1989) (reviewing an immunity defense to a selective-treatment claim) (citing *Yick Wo* v. *Hopkins*, 118 U.S. 356 (1886)). A perfunctory assertion is a waived one. *See United States* v. *Zannino*, 895 F.2d 1, 17 (1st Cir. 1990); *Alston*, 997 F.3d at 50 (declining to hold officials entitled to qualified immunity given their "superficial presentation"). In *DiMarco-Zappa*, the defendants

"based their immunity argument primarily on the contention that no clearly established right was involved," yet never addressed the right actually at stake "at either the trial or the appellate level." "Any such argument is thus doubly waived." 238 F.3d at 36.

### *E. Notice of the Sign Is Not Notice That It Binds*

Count III was dismissed solely on jurisdictional grounds, without reaching its merits, and the opening brief asks for the proper relief from that posture: remand for the district court to address the claim in the first instance. Br. 62; *see United States ex rel. Est. of Cunningham* v. *Millennium Labs. of Cal., Inc.*, 713 F.3d 662, 675–76 (1st Cir. 2013) (vacating and remanding where "the district court never reached those questions since it dismissed the complaint on jurisdictional grounds"). The Commonwealth nonetheless argues the merits as an alternative ground for affirmance. If reached, that ground fails.

The "future injury" point, CW Br. 31, restates the attenuation argument of CW Br. 15, and fails with it. *See supra* Section II.C; Br. 52–57.

The ignorance-of-the-law maxim presupposes fair notice: it applies to "a duly promulgated and published regulation." *United States* v. *Int'l*

*Minerals & Chem. Corp.*, 402 U.S. 558, 563 (1971); CW Br. 31. Its premise is law that is "definite and knowable." *Cheek* v. *United States*, 498 U.S. 192, 199 (1991). Notice is what the state owes under that maxim, "required before property interests are disturbed, before assessments are made, before penalties are assessed," *Lambert* v. *California*, 355 U.S. 225, 228 (1957). The complaint identifies Gulliver, who "had an obligation to provide fair notice of the MassDOT Division of Highway's statutory and regulatory interpretations governing the conduct of regulated parties," and provided no advance interpretation from which the 55-mph limit could reasonably be known to be "enforceable and not unenforceable." AC ¶¶ 18, 216–217; *see* AC ¶¶ 150–152, 154–155.

The Commonwealth answers that El-Bayeh "received notice of the speed limit via posted signs." CW Br. 32. But notice of the number on the sign is not notice that the number binds: state law makes the sign the last link in a chain. The underlying special speed regulation is not "effective" until state officials, "acting jointly, shall have certified in writing that such regulation is consistent with the public interests." Mass. Gen. Laws ch. 90, § 18 (version effective to Apr. 1, 2023). Every link that gives the posted number legal force — the adopting body, the

special speed regulation, the joint certification — is invisible from the roadway, and the sign carries no statutory presumption of enforceability. *See id.* (authorizing removal of a sign "purporting to establish a speed limit, which has not been erected in accordance with the foregoing provisions"). The penalty hangs on the same chain: El-Bayeh was given notice that a special regulation carried exposure to a fine for its violation only if "lawfully made under the authority of section eighteen." Mass. Gen. Laws ch. 90, § 20.

The Commonwealth contends that no notice-of-enforceability requirement exists and that imposing one "would be inconsistent" with the "strong presumption of validity" afforded state safety regulations. CW Br. 32 (quoting *Kassel* v. *Consol. Freightways Corp. of Del.*, 450 U.S. 662, 670 (1981) (plurality opinion)). *Kassel* is a dormant Commerce Clause case, and its presumption is the burden "[t]hose who would challenge" a safety regulation's validity must overcome. 450 U.S. at 670. Count III mounts no such challenge. It contests notice, not validity, and it depends not on a freestanding rule but on what MassDOT published and when the interpretation actually enforced became public.

Where an agency "issues contradictory or misleading public interpretations" of its own regulation, "there may be sufficient confusion for a regulated party to justifiably claim a deprivation of fair notice," and notice may equally fail where a regulation's meaning can be resolved only by "deferring to the agency's own interpretation" and the agency "failed to provide a sufficient, publicly accessible statement of that interpretation before the conduct in question." *United States* v. *Lachman*, 387 F.3d 42, 57 (1st Cir. 2004). *Anzalone*, in which "[t]his court recognized a similar rule," *Lachman*, 387 F.3d at 57, found the ambiguity there "created by the government itself" and held that the "application of criminal sanctions . . . violates the fair warning requirements of the due process clause." *United States* v. *Anzalone*, 766 F.2d 676, 681–82 (1st Cir. 1985). The requirement is not confined to criminal cases. Laws that regulate "must give fair notice of conduct that is forbidden or required," and the Supreme Court has set agency orders aside in civil enforcement "on fair notice grounds under the Due Process Clause." *FCC* v. *Fox Television Stations, Inc.*, 567 U.S. 239, 253, 258 (2012). *General Electric*, in the D.C. Circuit line *Lachman* distilled, set aside a fine where the agency's interpretation was "permissible" but the regulations "did not

provide GE with fair warning of the agency's interpretation." *Gen. Elec. Co.* v. *EPA*, 53 F.3d 1324, 1325 (D.C. Cir. 1995); *see Lachman*, 387 F.3d at 57.

That is what the complaint pleads, and the interpretation at issue was MassDOT's own. Its published Procedures conditioned an enforceable regulatory speed limit on "a thorough traffic engineering study" and declared a limit adopted otherwise to be in violation of § 18 and "therefore considered unenforceable." Doc. No. 24-3 at 6. In 2021, the Appeals Court cited the Procedures by name, called them "[t]hose regulations," and memorialized MassDOT's concession that it "must comply with its own regulations" in promulgating speed limits. *El-Bayeh* v. *Mass. Dep't of Transp.*, 99 Mass. App. Ct. 1122, 168 N.E.3d 372, 2021 WL 1713099, at *1–2 (2021) (unpublished). Before the August 2021 citation, no public source stated that a limit adopted without that study was enforceable; the Commonwealth points to none. That interpretation was not announced until after the citation; in 2024 the same court, without referencing its 2021 order, held that the "procedures reside at a sub-regulatory level and are not a regulation" and sustained the special speed regulation. *Mass. Dep't of Transp.*, 2024 WL 3517636, at *1–2.

Count III does not challenge that construction; the construction completes the claim. Before the 2021 citation issued, no public source gave fair notice of the interpretation the citation enforced. AC ¶¶ 137–140, 217.

## CONCLUSION

For these reasons and those stated in the opening brief, the judgment should be reversed and the case remanded.

Respectfully Submitted,

/s/ Mikhael El-Bayeh

Mikhael El-Bayeh
*pro se*
10 Dewey Ave
Woburn, MA 01801
(508) 789-2605
mikhael.e@gmail.com

Date: September 14, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned certifies as follows:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), as modified by this Court's order of August 19, 2026 granting leave to file a reply brief of up to 9,500 words, because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), it contains 9,480 words, as counted by the word-count function of Microsoft Word.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated: September 14, 2026

/s/ Mikhael El-Bayeh

Mikhael El-Bayeh
*pro se*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2026, I electronically filed the foregoing Reply Brief of Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 14, 2026

/s/ Mikhael El-Bayeh

Mikhael El-Bayeh
*pro se*

**No. 26-1067**

# United States Court of Appeals
# For The First Circuit

MIKHAEL EL-BAYEH,

*Plaintiff-Appellant,*

v.

MASSACHUSETTS DEPARTMENT OF STATE POLICE, *et al.*,

*Defendants-Appellees.*

**ADDENDUM TO REPLY BRIEF OF PLAINTIFF-APPELLANT**

## TABLE OF CONTENTS

Mass. Gen. Laws ch. 90, § 18 (version effective to Apr. 1, 2023) ............ 1

Mass. Gen. Laws ch. 90, § 20 ........................................................ 3

Mass. Gen. Laws ch. 260, § 2A........................................................ 8

**Mass. Gen. Laws ch. 90, § 18 (version effective to Apr. 1, 2023)**

*Special regulations, speed and use of vehicles.*

*Version effective to April 1, 2023.*

The city council, the transportation commission of the city of Boston, the board of selectmen, park commissioners, a traffic commission or traffic director, or the department, on ways within their control, may make special regulations as to the speed of motor vehicles and may prohibit the use of such vehicles altogether on such ways; provided, however, that except in the case of a speed regulation no such special regulation shall be effective unless it shall have been published in one or more newspapers, if there be any, published in the town in which the way is situated, otherwise in one or more newspapers published in the county in which the town is situated; nor until after the department, and in the case of a speed regulation the department and the registrar, acting jointly, shall have certified in writing that such regulation is consistent with the public interests; provided, however, that nothing herein contained shall be construed as affecting the right of the metropolitan district commission or of the department of environmental management to make rules and regulations governing the use and operation of motor vehicles on lands, roadways and parkways under its care and control. No such rule or regulation shall prohibit the use of passenger or station wagon type motor vehicles whose gross weight is less than five thousand pounds and which are registered for commercial use on ways where noncommercial passenger type motor vehicles are permitted to operate. No such regulation shall be effective until there shall have been erected, upon the ways affected thereby and at such points as the department and the registrar, acting jointly, may designate, signs, conforming to standards adopted by the department, setting forth the speed or other restrictions established by the regulation, and then only during the time such signs are in place. Any sign, purporting to establish a speed limit,

which has not been erected in accordance with the foregoing provisions may be removed by or under the direction of the department.

Any person, corporation, firm or trust owning a private parking area or owning land on or abutting a private way, or any person, corporation, firm or trust controlling such land or parking area, with the written consent of the owner, may apply in writing to the city council, the traffic commission of a city or town having a traffic commission, the transportation commission of the city of Boston or the board of selectmen in any town in which the private way or parking area lies, to make special regulations as to the speed of motor vehicles and as to the use of such vehicles upon the particular private way or parking area, and the city council with the approval of the mayor, the traffic commission of a city or town, the transportation commission of the city of Boston or the board of selectmen, as the case may be, may make such special regulations with respect to said private way or parking area to the same extent as to ways within their control and such special regulations shall not be subject to approval by the department or the registrar; provided, however, that any traffic signs, signals, markings or devices used to implement such special regulations shall conform in size, shape and color to the most current manual on uniform traffic control devices.

**Mass. Gen. Laws ch. 90, § 20**

*Penalties and punishments.*

*Effective: February 4, 2016.*

A person convicted of a violation of any provision of this chapter the punishment for which is not otherwise provided, or of a violation of any rule or regulation of the registrar made under authority of section thirty-one, shall be punished by a fine of not more than thirty-five dollars for the first offense, not less than thirty-five nor more than seventy-five dollars for a second offense, and not less than seventy-five nor more than one hundred and fifty dollars for subsequent offenses committed during any twelve-month period; provided, however, that any person convicted of operating a motor vehicle without having been issued a license by the registrar shall be punished by a fine of not more than $500 for a first offense, by a fine of not less than $500 nor more than $1,000, for a second offense and by a fine of not less than $1,000 nor more than $2,000, for any subsequent offense; provided, however, that any person convicted of operating or permitting the operation of a school bus carrying passengers in excess of the number authorized under section seven B shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days, or both, and that any person convicted of violating any of the provisions of section sixteen shall be punished by a fine of not less than twenty nor more than one hundred dollars, and that any person convicted of operating a motor vehicle, trailer, semitrailer, semitrailer unit or tandem unit in violation of section nineteen shall be punished by a fine of not more than one hundred dollars and that any person convicted of knowingly operating a motor vehicle, trailer, semitrailer, semitrailer unit or tandem unit or any owner or bailee convicted of requiring or permitting the operation thereof in violation of section nineteen A or of the terms of any permit issued under sections thirty and thirty A of chapter eighty-five shall be punished by a

fine of forty dollars for each one thousand pounds of weight or fraction thereof by which the gross weight of such motor vehicle, trailer, semitrailer, semitrailer unit or tandem unit as operated exceeds either that permitted by said section nineteen A or by permit issued for such motor vehicle, trailer, semitrailer, semitrailer unit or tandem unit under sections thirty and thirty A of chapter eighty-five, whichever is greater; provided, further, that if the total of such excess weight is greater than ten thousand pounds, the fine shall be eighty dollars for each one thousand pounds or fraction thereof over said ten thousand pounds; and, provided further, that in a case of so-called irreducible loads, if the owner or bailee of the motor vehicle, trailer, semitrailer, semitrailer unit or tandem unit, or his agent, servant or employee did not have reasonable means or opportunity to ascertain the weight of the load prior to applying for the permit, then the fine shall be ten dollars for each one thousand pounds of weight by which the gross weight of such motor vehicle, trailer, semitrailer, semitrailer unit or tandem unit as operated exceeds either that permitted by said section nineteen A or section thirty A or the gross weight specified in such permit but in no event more than five hundred dollars.

Any person convicted of a violation of the provisions of section seventeen, or of a violation of a special regulation lawfully made under the authority of section eighteen shall be punished by a fine of not less than fifty dollars. Where said conviction is for operating a vehicle at a rate of speed exceeding ten miles per hour over the speed limit for the way upon which the person was operating, an additional fine of ten dollars for each mile per hour in excess of the ten miles per hour shall be assessed.

Any person convicted of a violation of the provisions of section seventeen while operating any motor vehicle, trailer, semitrailer, semitrailer unit or tandem unit under a permit issued under sections thirty and thirty A of chapter eighty-five and while the weight of such motor vehicle, trailer, semitrailer, semitrailer unit or tandem unit

exceeds the limits provided in section nineteen A, exclusive of the additional limits provided in such permit, shall be punished by a fine of not more than one hundred dollars for the first offense, not less than one hundred nor more than one hundred and fifty dollars for a second offense committed in any twelve-month period, and not less than one hundred and fifty nor more than three hundred dollars for subsequent offenses committed in any twelve-month period, and complaints of such violations, notwithstanding the subsequent provisions of this section shall not be placed on file by the court.

There shall be a surcharge of $50 on a fine assessed against a person convicted or found responsible of a violation of section 17 or a violation of a special regulation lawfully made under the authority of section 18. The first $50.00 of each surcharge shall be transferred by the registrar of motor vehicles to the state treasurer for deposit into the Head Injury Treatment Services Trust Fund. The remaining amount shall be transferred by the registrar to the state treasurer for deposit in the General Fund.

Upon a third or subsequent conviction in the same twelve month period of a violation of section sixteen or section seventeen or of a regulation made under section eighteen said violation having occurred in the same year, the registrar shall forthwith revoke the license of the person convicted, and no new license shall be issued to such person for at least thirty days after the date of such revocation, nor thereafter except in the discretion of the registrar; provided, however that a holder of a learner's permit who is convicted of a violation under section 17 or section 17A, or under a special regulation under section 18, shall, in addition to any other penalty, fine, suspension, revocation or requirement that may be imposed for such violation, have his learner's permit suspended for 90 days for a first offense and for 1 year for a subsequent offense and the person shall be required to reapply for his learner's permit before he may be issued a license to operate a motor vehicle pursuant to section 8; and provided further, that a holder of a junior operator's license who is

convicted of a violation under section 17 or section 17A, or under a special regulation under section 18 shall, in addition to any other penalty, fine, suspension, revocation or requirement that may be imposed for such violation, have such license suspended for 90 days for a first offense and 1 year for a subsequent offense and the junior operator shall also be required to complete the state courts against road rage program sponsored by the trial court and the department of the state police. The registrar shall impose a $500 reinstatement fee upon a junior operator who seeks to have his license reinstated following a suspension under this paragraph. A junior operator whose license is suspended pursuant to this paragraph shall not be eligible for license reinstatement until he also completes a program selected by the registrar that encourages attitudinal changes in young drivers who have committed a violation of the motor vehicle laws and until he successfully completes a driving test as required by the registrar. In addition to any reinstatement fee, there shall be a surcharge of $50 assessed against a person who seeks to have the person's license reinstated following a revocation or suspension under this paragraph. The surcharge shall be transferred by the registrar of motor vehicles to the state treasurer for deposit into the Thomas P. Kennedy Spinal Cord Injury Trust Fund established pursuant to section 59A of chapter 10.

Any person who operates and any person who owns or permits to be operated a motor vehicle or trailer that fails to meet the safety standards established by the registrar pursuant to section 7A shall be punished by a fine of $25. Any person who owns and fails to have inspected a motor vehicle owned by him, as required pursuant to section 7A or 7V of this chapter or sections 142J and 142M of chapter 111 or any person who operates or permits a motor vehicle owned by him to be operated without a certificate of inspection or a certificate of rejection displayed in accordance with the provisions of said section 7A or 7V or said sections 142J or 142M and the rules and regulations promulgated thereunder shall be punished by a fine of $50. Any motor vehicle which

is required to be inspected pursuant to the provisions of said section 7A and said section 142J or 142M and fails to meet the requirements of such inspection and has not been issued a certificate of waiver under the provisions of clause (b) of the first paragraph of said section 7V or said section 142M shall be subject to suspension or revocation of the certificate of registration as may be prescribed by the registrar under section 22.

There shall be a surcharge of $5 on a fine assessed against a person convicted of or found responsible for a motor vehicle violation pursuant to this chapter or a violation of a special regulation lawfully made under the authority of this chapter. The surcharge shall be transferred by the registrar of motor vehicles to the state treasurer for deposit into the Public Safety Training Fund established in section 2JJJJ of chapter 29.

**Mass. Gen. Laws ch. 260, § 2A**

*Tort, contract to recover for personal injuries, and replevin actions.*

Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues.